**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| MVMT Labs, Inc., | Case No. 26-11113 (TMH) |
| Debtor.[1] | |

**DEBTOR'S APPLICATION FOR AUTHORIZATION TO
EMPLOY AND RETAIN RELIABLE COMPANIES d/b/a RELIABLE
AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE**

The above-captioned debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case (this "Chapter 11 Case") seeks entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the Debtor to employ and retain Reliable Companies d/b/a Reliable ("Reliable") as the claims and noticing agent (the "Claims and Noticing Agent") in this Chapter 11 Case.  In support of this application (the "Application"), the Debtor respectfully states as follows:

**JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this subchapter V case, the Debtor, property of the Debtor's estate, and this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

2.      Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor consents to the entry of a final judgment or order with respect to this Application if it is determined

---

[1]  The last four digits of the Debtor's federal tax identification number are 5217.  The Debtor's service address is c/o Legalinc Corporate Services Inc., 131 Continental Drive, Suite 305, Newark, New Castle County, DE 19713.

that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      Venue of this Chapter 11 Case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are section 156(c) of title 28 of the United States Code, sections 503 and 1107 of title 11 of the United States Code (the "Bankruptcy Code"), rule 2002(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2002-1(f).

## GENERAL BACKGROUND

5.      On the date hereof (the "Petition Date"), the Debtor commenced this Chapter 11 Case as a debtor defined in Bankruptcy Code section 1182(1) and the Debtor elected to proceed under Subchapter V of chapter 11 of the Bankruptcy Code pursuant to the Small Business Reorganization Act of 2019, as amended.

6.      No request for the appointment of a trustee or an examiner has been made, and no official committee or Subchapter V trustee (the "Subchapter V Trustee") has been appointed in this case.  The Debtor is operating its business as debtor in possession (as defined in Bankruptcy Code section 1182(2)) pursuant to section 1184 of the Bankruptcy Code.

7.      Additional detail regarding the Debtor, its business, the events leading to commencement of this case, and the facts and circumstances supporting the relief requested herein is set forth in the *Declaration of David Dunn in Support of MVMT Labs, Inc.'s Chapter 11 Petition and First Day Motions* (the "First Day Declaration"), which is incorporated herein by reference.[2]

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

**RELIEF REQUESTED**

8.      The Debtor seeks entry of the Proposed Order appointing Reliable to act as the Claims and Noticing Agent in the Debtor's subchapter V Chapter 11 Case to assume full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Debtor's Chapter 11 Case effective as of the Petition Date.  The terms of Reliable's proposed retention are set forth in that certain Standard Services Agreement between Reliable and the Debtor, dated as of July 9, 2026 (the "Engagement Agreement"), a copy of which is attached hereto as **Exhibit 1** to the Proposed Order.  Notwithstanding the terms of the Engagement Agreement, the Debtor is seeking to retain Reliable solely on the terms set forth in this Application and the Proposed Order.

9.      Although the Debtor has not yet filed its schedules of assets and liabilities, it anticipates that there will be in excess of 200 individuals and entities to be noticed.  Local Rule 2002-1(f) provides that "[i]n all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file [a] motion [to retain a claim and noticing agent] on the first day of the case or within seven (7) days thereafter."  In view of the number of anticipated claimants and the complexity of the Debtor's business, the Debtor submits that the appointment of a claims and noticing agent is required by Local Rule 2002-1(f) and is otherwise in the best interest of the Debtor's estate and its creditors.

10.     The Debtor seeks entry of an order (a) authorizing the Debtor to employ and retain Reliable as the Claims and Noticing Agent in this Chapter 11 Case effective as of the Petition Date; and (b) granting related relief.  In support of this application, the Debtor submits the *Declaration of Justin K. Edelson in Support of the Debtor's Application for Authorization to*

*Employ and Retain Reliable Companies d/b/a Reliable as Claims and Noticing Agent Effective as of the Petition Date* (the "Edelson Declaration"), attached hereto as **Exhibit B**.

## RELIABLE'S RETENTION

11.     The terms of retention and employment of Reliable are set forth in the Engagement Agreement.  The Debtor's selection of Reliable to act as the Claims and Noticing Agent satisfies the Court's *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)* (the "Claims Agent Protocol"), in that the Debtor has obtained and reviewed engagement proposals from at least two other Court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtor submits, based on all engagement proposals obtained and reviewed, that Reliable's rates are competitive and reasonable given Reliable's quality of services and expertise.

12.     Although the Engagement Agreement contemplates that Reliable will provide services for the Debtor outside the scope of 28 U.S.C. § 156, the Debtor will seek authorization by separate application to retain and employ Reliable as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for those services, if necessary.

## RELIABLE'S QUALIFICATIONS

13.     Reliable is a leading chapter 11 administrator and comprises industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Reliable has acted as the official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide.  Reliable's recent cases in this district include:  *In re Zurvita Holdings, Inc.*, Case No. 24-12823 (MFW) (Bankr. D. Del. Dec. 23, 2024); *In re Parlement Technologies, Inc.*, Case No. 24-10755 (CTG) (Bankr. D. Del. May 23, 2024); *In Re: Etta Scottsdale LLC*, Case No. 24-10063 (KBO) (Bankr. D. Del. Mar. 1, 2024); and *In re Clover Fast Food, Inc.* Case No. 23-11812 (BLS) (Bankr. D. Del. Nov. 9, 2023).

4

14.     By appointing Reliable as the Claims and Noticing Agent in this Chapter 11 Case, the distribution of notices and the processing of claims will be expedited, and the Office of the Clerk of the Bankruptcy Court for the District of Delaware (the "Clerk") will be relieved of the administrative burden of processing any such claims.

**SERVICES TO BE PROVIDED BY RELIABLE**

15.     This application pertains only to the work to be performed by Reliable under the Clerk's delegation of duties as permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f).  Any work to be performed by Reliable outside of this scope is not covered by this Application or by any order of the Court granting approval hereof.

16.     Subject to the Court's approval, at the request of the Debtor, and to the extent necessary, Reliable will perform the following tasks in its role as the Claims and Noticing Agent in this Chapter 11 Case (collectively, the "Claims and Noticing Services"), as well as all quality control relating thereto:

(a)     prepare and serve required notices and documents in this Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor or the Court, including, without limitation:  (i) notice of the commencement of this Chapter 11 Case and the initial meeting of creditors under section 341(a) of the Bankruptcy Code; (ii) notice of any claims bar date; (iii) notices of transfers of claims; (iv) notices of objections to claims and objections to transfers of claims; (v) notices of any hearings on a disclosure statement and confirmation of the Debtor's chapter 11 plan or plans, including under Bankruptcy Rule 3017(d); (vi) notice of the effective date of any plan; and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtor or Court may deem necessary or appropriate for an orderly administration of this Chapter 11 Case;

(b)     maintain an official copy of the Debtor's schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtor's known creditors and the amounts owed thereto;

(c)     maintain a:  (i) list of all potential creditors, equity holders, and other parties in interest and (ii) "core" service list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k), and those parties that have filed a

notice of appearance pursuant to Bankruptcy Rule 9010 and update said lists and make said lists available upon request by a party in interest or the Clerk;

(d)     furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify such potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)     maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)     for all notices, motions, orders, or other pleadings or documents served, prepare and file, or cause to be filed, with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes: (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served; (ii) a list of persons to whom it was served (in alphabetical order) with their mailing or email addresses as appropriate; (iii) the manner of service; and (iv) the date served;

(g)     process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h)     maintain an electronic interface for filing proofs of claim;

(i)     maintain the official claims register for the Debtor (the "Claims Register") on behalf of the Clerk, and, upon the Clerk's request, provide the Clerk with a certified, duplicate, unofficial Claims Register;

(j)     specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.); (vi) the applicable Debtor; and (vii) any disposition of the claim;

(k)     provide public access to the Claims Register, including copies of proofs of claim with attachments, if any, without charge;

(l)     implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

(m)    record all transfers of claims and provide any notices of such transfers, as required by Bankruptcy Rule 3001(e);

6

(n)     relocate, by messenger or overnight delivery, all of the Court-filed proofs of claim to the offices of Reliable, not less than weekly;

(o)     upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk a copy of the Claims Register for the Clerk's review (upon the Clerk's request);

(p)     monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on or changes to the Claims Register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(q)     assist in the dissemination of information to the public and respond to requests for administrative information regarding this Chapter 11 Case as directed by the Debtor or the Court, including through the use of a case website or call center;

(r)     if this Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of Reliable receiving notice of entry of the order converting the case;

(s)     thirty (30) days prior to the close of this Chapter 11 Case, to the extent practicable, request that the Debtor submit to the Court a proposed order dismissing Reliable as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of this Chapter 11 Case; and

(t)     within seven (7) days of notice to Reliable of entry of an order closing this Chapter 11 Case provide to the Court the final version of the Claims Register, a digital version of all claims, and the creditor mailing matrix as of the date immediately before the close of this Chapter 11 Case.

17.     The Claims Register shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Reliable.

### RELIABLE'S COMPENSATION

18.     The Debtor respectfully requests that the undisputed fees and expenses incurred by Reliable in the performance of the Claims and Noticing Services in accordance with the terms of the Engagement Agreement be treated as administrative expenses of the Debtor's estate pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.

19.     Reliable agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred.  Reliable further agrees to serve monthly invoices on the Debtor, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), the Subchapter V Trustee, any standing trustee appointed to this chapter 11 case, proposed counsel for the Debtor, and any party-in-interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or the monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute.  If a resolution is not achieved, the parties may seek resolution of the matter from the Court.

20.     Additionally, under the terms of the Engagement Agreement, the Debtor has agreed to indemnify, defend, and hold harmless Reliable and its members, officers, employees, representatives, and agents (the "Indemnified Parties") under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Reliable's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or any order authorizing the employment and retention of Reliable.  The Debtor believes that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a claims and noticing agent in this Chapter 11 Case.

**RELIABLE'S DISINTERESTEDNESS**

21.     Although the Debtor does not propose to employ Reliable under section 327 of the Bankruptcy Code pursuant to this application, Reliable has nonetheless reviewed its conflicts system to determine whether it has any relationships with the creditors and parties in interest provided by the Debtor, and the Debtor has been advised that, to the best of Reliable's knowledge, information and belief, and except as disclosed in the Edelson Declaration, Reliable has represented that it neither holds nor represents any interest materially adverse to the Debtor's estate in connection with any matter on which it would be employed.

22.     Moreover, in connection with its retention as Claims and Noticing Agent, Reliable represents in the Edelson Declaration, among other things, that:

(a)     Reliable is not a creditor of the Debtor;

(b)     Reliable is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code;

(c)     Reliable will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this Chapter 11 Case;

(d)     by accepting employment in this Chapter 11 Case, Reliable waives any rights to receive compensation from the United States government in connection with this Chapter 11 Case;

(e)     in its capacity as the Claims and Noticing Agent in this Chapter 11 Case, Reliable will not be an agent of the United States and will not act on behalf of the United States;

(f)     Reliable will not employ any past or present employees of the Debtor in connection with its work as the claims and noticing agent in this Chapter 11 Case;

(g)     in its capacity as the Claims and Noticing Agent in this Chapter 11 Case, Reliable will not intentionally misrepresent any fact to any person;

(h)     Reliable shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

(i)     Reliable will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     none of the services provided by Reliable as the claims and noticing agent in this Chapter 11 Case shall be at the expense of the Clerk.

23.     If any new facts or circumstances are discovered that require additional disclosure, Reliable will supplement its disclosure to the Court.

9

**BASIS FOR RELIEF**

**I.      Retention and Employment of Reliable as Claims and Noticing Agent Is Permitted**.

24.      Bankruptcy Rule 2002 generally regulates what notices must be given to creditors and other parties in interest in bankruptcy cases.  Fed. R. Bankr. P. 2002(f).  Under Bankruptcy Rule 2002(f), the Court may direct that some person other than the Clerk give notice of the various matters described below.  Moreover, section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the Clerk for administration of bankruptcy cases.  28 U.S.C. § 156(c).  Specifically, the statute states, in relevant part:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.  The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

25.      In addition, Local Rule 2002-1(f) provides:

> Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c).  In all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven (7) days thereafter.  The notice and/or claims clerk shall comply with the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. 156(c) (which can be found on the Court's website) and shall perform the [Claims and Noticing Services].

Del. Bankr. L.R. 2002-1(f).  Accordingly, Bankruptcy Rule 2002, Local Rule 2002-1(f), and section 156(c) of title 28 of the United States Code empower the Court to utilize outside agents

and facilities for notice and claims purposes, provided that the Debtor's estate bears the cost of such services.

26.     Accordingly, for all of the foregoing reasons, the Debtor believes that the retention of Reliable as the Claims and Noticing Agent in this Chapter 11 Case is necessary and in the best interests of the Debtor, its estate and creditors, and all parties in interest.  Furthermore, the Debtor respectfully submits that the fees and expenses that would be incurred by Reliable under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures of professionals.

27.     By separate application, the Debtor may seek authorization to retain and employ Reliable as the administrative agent in this Chapter 11 Case, if such services are needed, pursuant to section 327(a) of the Bankruptcy Code, as the administration of this Chapter 11 Case may require Reliable to perform duties outside the scope of 28 U.S.C. § 156(c).

**II.     Relief Effective as of the Petition Date is Appropriate**.

28.     Pursuant to the Debtor's request, Reliable has agreed to serve as the Claims and Noticing Agent on and after the Petition Date with assurances that the Debtor would seek approval of its employment and retention effective as of the Petition Date, so that Reliable may be compensated for its services prior to approval of this Application.  The Debtor believes that no party in interest will be prejudiced by granting the employment effective as of the Petition Date, as provided in this Application, because Reliable has provided and continues to provide valuable services to the Debtor's estate in the interim period.

**<u>NOTICE</u>**

29.     Notice of this Application will be provided to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) the holders of the twenty (20) largest unsecured claims against the Debtor; (c) the Subchapter V Trustee; (d) the DIP Lender; (e) the Internal Revenue

Service; (f) the United States Attorney's Office for the District of Delaware; (g) the state attorneys general for all states in which the Debtor conducts business; (h) the Delaware State Treasury; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Application is seeking "first day" relief, within forty-eight (48) hours of the entry of an order with respect to this Application, the Debtor will serve copies of this Application and any order entered with respect to this Application as required by Local Rule 9013-1(m).  The Debtor respectfully submits that, in light of the nature of the relief requested, no further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter the Proposed Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  July 15, 2026

By:    */s/ Michael Robinson*
Name: Michael Robinson
Title:  Chief Restructuring Officer

## EXHIBIT A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| MVMT Labs, Inc., | Case No. 26-11113 (TMH) |
| Debtor.[1] | |

**ORDER AUTHORIZING THE DEBTOR TO EMPLOY**
**AND RETAIN RELIABLE COMPANIES d/b/a RELIABLE AS**
**CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE**

Upon the application (the "Application")[2] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of an order (this "Order") for authority to employ and retain Reliable Companies d/b/a Reliable ("Reliable") as claims and noticing agent (the "Claims and Noticing Agent") in this Chapter 11 Case effective as of the Petition Date, all as more fully set forth in the Application; and upon the First Day Declaration and the Edelson Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that the Debtor's notice of the Application and opportunity for a hearing on the Application were appropriate under the

---

[1] The last four digits of the Debtor's federal tax identification number are 5217. The Debtor's service address is c/o Legalinc Corporate Services Inc., 131 Continental Drive, Suite 305, Newark, New Castle County, DE 19713.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor; it is HEREBY ORDERED THAT:

1.      The Application is APPROVED as set forth herein.

2.      The Debtor is authorized, pursuant to 28 U.S.C. § 156(c) and Local Rule 2002-1(f), to retain Reliable, and Reliable is appointed as the Claims and Noticing Agent, effective as of the Petition Date, under the terms and conditions of the Engagement Agreement, attached hereto as **Exhibit 1**. Notwithstanding any terms of the Engagement Agreement, the Application is approved solely as set forth in this Order.

3.      Reliable, as the Claims and Noticing Agent, is directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in this Chapter 11 Case (if any), and all related tasks, all as described in the Application (collectively, the "Claims and Noticing Services").

4.      Reliable shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in this Chapter 11 Case (if any) and is authorized and directed to maintain the official Claims Register for the Debtor and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

5.      Reliable is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim (if

2

necessary).  Reliable shall provide public access to the Claims Register, including proofs of claim with attachments, if any, without charge.

6.  Reliable is authorized to take such other action to comply with all duties set forth in the Application and this Order.

7.  The Debtor is authorized to compensate and reimburse Reliable in accordance with the terms and conditions of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the Claims and Noticing Services provided by Reliable and the rates charged for each, and to reimburse Reliable for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Reliable to file fee applications or otherwise seek this Court's approval for the compensation of its Claims and Noticing Services and reimbursement of expenses.

8.  Notwithstanding the Application or Engagement Agreement, to the extent the Debtor wishes to expand the scope of Reliable's services beyond those Claims and Noticing Services set forth in the Application and Engagement Agreement, the Debtor shall be required to seek further approval from this Court.

9.  Reliable shall maintain records of all services performed, showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on (a) the Debtor, (b) the U.S. Trustee, (c) counsel to the Debtor, (d) the Subchapter V Trustee, (e) counsel to any official committee appointed to monitor the expenses of the Debtor in this Chapter 11 Case, and (f) any party in interest who specifically requests service of the monthly invoices.

10.  The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices, and the parties may seek resolution of such matter from this Court if resolution is not achieved.

3

11.     Without further order of the Court, pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the reasonable fees and expenses of Reliable under this Order shall be an administrative expense of the Debtor's estate.

12.     The Debtor shall indemnify the Indemnified Parties under the terms of the Engagement Agreement, as modified pursuant to this Order.

13.     The Indemnified Parties shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services other than the Claims and Noticing Services, as provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefore is approved by this Court.

14.     Notwithstanding anything to the contrary in the Engagement Agreement, the Debtor shall have no obligation to indemnify the Indemnified Parties, or provide contribution or reimbursement to the Indemnified Parties, for any losses, claims, damages, judgments, liabilities or expense that are either:  (a) judicially determined (the determination having become final) to have arisen from the Indemnified Parties' gross negligence, willful misconduct, or fraud; (b) for a contractual dispute in which the Debtor alleges the breach of the Indemnified Parties' contractual obligations, if this Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217 (3d Cir. 2003); or (c) settled prior to a judicial determination under subsection (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which the Indemnified Party should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order.

15.     Before the earlier of:  (a) the entry of an order confirming a chapter 11 plan in this Chapter 11 Case (that order having become a final order no longer subject to appeal); and (b) the

4

entry of an order closing this Chapter 11 Case, should the Indemnified Party believe that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution, or reimbursement obligations under the Engagement Agreement (as modified by this Order), including, without limitation, the advancement of defense costs, the Indemnified Party must file an application in this Court, and the Debtor may not pay any such amounts to the Indemnified Party before the entry of an order by this Court approving such application and the payment requested therein.  This paragraph is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by the Indemnified Parties for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify the Indemnified Parties.  All parties in interest shall retain the right to object to any demand by the Indemnified Parties for indemnification, contribution, or reimbursement.

16.     In the event Reliable is unable to provide the Claims and Noticing Services, Reliable will immediately notify the Clerk and the Debtor's attorney and cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtor's counsel.

17.     After entry of an order terminating Reliable's services, upon the closing of this Chapter 11 Case, or for any other reason, Reliable shall be responsible for transmitting to the Clerk all claims in an electronic format, a digital version of all claims, and the creditor mailing matrix as of the date immediately before the close of this Chapter 11 Case, if applicable, and shall be compensated by the Debtor in connection therewith.

18.     The Debtor may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code or any applicable law, for work that is to be performed by Reliable but is not specifically authorized by this Order.

19.     Notwithstanding any term in the Engagement Agreement to the contrary, during this Chapter 11 Case, Reliable's liability will not be limited to the amount paid or billed to the Debtor.

20.     Reliable shall not cease providing claims processing services during this Chapter 11 Case for any reason, including nonpayment, without an order of this Court.

21.     The Debtor and Reliable are authorized to take all steps necessary or appropriate to carry out this Order.

22.     In the event of any inconsistency between the Engagement Agreement, the Application, and this Order, the terms of this Order shall govern.

23.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

24.     Notwithstanding any term in the Engagement Agreement to the contrary, this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

## EXHIBIT 1

**Engagement Agreement**

**BANKRUPTCY CLAIMS ADMINISTRATION AGREEMENT**

AGREEMENT (this "Agreement") made as of June 17, 2026, by, between and among Reliable Companies d/b/a Reliable (the "Company"), and MVMT Labs Inc., the debtor in the Bankruptcy Case (as defined below) (collectively, the "Client").

W I T N E S S E T H:

WHEREAS, the Client desires to retain the Company to perform the Services (as defined below) for the Client in its Chapter 11 Bankruptcy case (the "Bankruptcy Case") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); and

WHEREAS, the Company desires to provide the Services to Client in accordance with the terms and conditions set forth in this Agreement.

NOW, THEREFORE, the parties hereto, intending to be legally bound, agree as follows:

1.  <u>Company Services</u>. The Company agrees to provide the following services (collectively, the "Services") as requested in writing by the Client or its authorized representatives, including, but not limited, its bankruptcy counsel (which writing may be an email): certain data collection, claims processing and management, noticing, administration and/or other bankruptcy administration and support services.  The Client agrees and understands that the Services are administrative only and do not constitute legal advice or legal services.

2.  <u>Term and Termination</u>.

    a.  <u>Term</u>. The term of this Agreement shall commence on the date hereof and shall continue until performance in full of the Services, unless earlier terminated as set forth herein. The Company shall be entitled to an administrative claim in the Bankruptcy Case for all undisputed fees and expenses due and owing under this Agreement in connection with its performance of the Services outstanding at the time of termination of this Agreement.

    b.  <u>Termination for Convenience</u>.  This Agreement may be terminated in writing (which writing may be an email) at any time by Client upon notice to the Company. This Agreement may be terminated in writing (which writing may be an email) at any time by the Company upon not less than thirty (30) days' notice to the Client.

3.  <u>Compensation; Retainer; and Expenses</u>.

    a.  <u>Compensation</u>. As compensation for the Services to be provided by the Company under this Agreement, the Client agrees to pay the Company the fees set forth on Exhibit A.  Billing rates set forth on Exhibit A may be adjusted annually by the Company in its reasonable discretion provided that thirty (30) days notice will be given to Client prior to any new rates being implemented.

b.  <u>Expenses</u>. In addition to the compensation set forth above, the Client shall reimburse the Company for all its documented out-of-pocket expenses reasonably incurred by the Company in connection with the performance of the Services. Reimbursable out-of-pocket expenses hereunder include, but are not limited to, postage, long- distance communications, costs of messenger and delivery service, filing fees, and other similar expenses.  Any applicable tax applicable to this Agreement, including sales, use, and excise taxes on the Services and the expenses shall also be paid by the Client.

c.  <u>Billing and Payment</u>. The Company shall invoice the Client for its fees and expenses on a monthly basis. All invoices are due and payable promptly upon receipt, unless otherwise required under applicable bankruptcy law.

4.  <u>Client Supplied Information</u>. The Client is responsible for the accuracy of all data and other information it submits to the Company (including all information for balloting preparation) and for the output of such data and information. The Client agrees to maintain backup copies of all data or other information provided to the Company.   In the event the Client supplies the Company with any erroneous information or data, the Client shall be responsible for any resulting Services or expenses incurred by the Company to make the appropriate corrections. The Company may undertake to place that data and information into certain systems and programs. Client is solely responsible for the accuracy of data and information it provides to Company and its output. Any data, programs, storage media or other materials furnished by the Client to the Company in connection with this Agreement may be retained by the Company until all amounts billed for Services and expenses have been paid in full.  In the event the Client requests the Company to dispose of any data and or storage media, the Client shall pay the Company a reasonable service fee and all out of pocket expenses incurred.  Company may dispose of Client data upon termination of this agreement by providing not less than thirty (30) days advanced notice.

5.  <u>Independent Contractor</u>. It is understood and agreed that the Company shall perform or cause its agents to perform the Services as an independent contractor. Neither the Company nor any of its employees or agents is intended by the parties to be partners, joint venturers, or employees of the Client.

6.  <u>Confidential Information</u>.

a.  <u>Mutual Confidentiality</u>.  In connection with this Agreement, either party ("Discloser") may disclose to the other party ("Recipient") information which the Discloser does not wish to become public ("Information").  Such Information may include, but is not limited to, computer processes, computer programs, computer technology, trade secrets, know how, inventions, techniques, business processes, technical processes, procedures, software in various stages of development, computer codes, schematics, data, flow charts, designs, contracts, customer lists,

2

financial information, business plans, sales and marketing plans, pricing and business information.  Such Information may be disclosed:  (i) in writing; (ii) by delivery of items; or (iii) by authorized access to Information, such as may be contained in a data base. The Recipient (x) shall hold all Information in confidence and will use such information only for the purposes of fulfilling the Recipient's obligations hereunder and for no other purpose, and (y) shall not disclose, provide, disseminate or otherwise make available any Information to any third party other than for the purposes of fulfilling the Recipient's obligations hereunder. No obligation under this Agreement shall apply to Information that is:

(1)    publicly available at the time of disclosure, or which becomes publicly available thereafter through no fault or action of the Recipient;

(2)    already in the possession of the Recipient, or subsequently received by the Recipient from a third party, without similar restrictions and without breach of this Agreement or another confidentiality or non-disclosure agreement; or

(3)    developed by employees or agents of the Recipient independently of and without reference to any Information of the Discloser.

The Recipient may disclose Information to the extent it is required to do so by law, but the Recipient must first use good faith efforts to provide the Discloser written notice sufficiently in advance to allow the Discloser a reasonable opportunity to take appropriate action in response.

b.    <u>Protection of Company Intellectual Property</u>.  The Client acknowledges that in connection with the Services the Client may become acquainted with certain Company's intellectual property, including, without limitation, the Company's inventions (whether or not patentable), software programs, processes, trade secrets and know how which are of importance to the Company. Accordingly, the Client agrees to use its best efforts to protect such intellectual property, and shall not, either during the term of this Agreement or subsequent to its termination, utilize, reveal or disclose any of such intellectual property. The Client understands that the software programs and other materials utilized or furnished by the Company pursuant to this Agreement and/or developed during the course of this Agreement by the Company are the sole property of the Company. The term "program" shall include, without limitation, data processing programs, check printing programs, specifications, applications, routines, sub-routines, procedural manuals, and documentation. The Client further agrees that any ideas, concepts, know-how or techniques relating to the claims management software used or developed by the Company during the course of this Agreement shall be the exclusive property of the Company. This Agreement does not grant the Client any license to use the Company's Information, materials or intellectual property other than under this

3

Agreement.

c.  Survival.  The obligations set forth in this Section shall survive the termination of this Agreement.  The parties agree that the breach of the provisions of this section by a Recipient will cause the Discloser irreparable damage for which recovery of money damages would be inadequate.  The Discloser will, therefore, be entitled to obtain timely injunctive relief to protect the Discloser's rights under this Agreement in addition to any and all remedies available hereunder or at law

7.  Limitation on Warranties; Indemnification.

a.  **THE SERVICES AND RESULTING WORK PRODUCT OF THE SERVICES ARE PROVIDED "AS IS", WITHOUT ANY EXPRESS OR IMPLIED WARRANTIES, REPRESENTATIONS OR GUARANTIES OF ANY KIND.  THE COMPANY (1) DISCLAIMS ANY AND ALL WARRANTIES AND REPRESENTATIONS REGARDING THE SERVICES; AND (2) MAKES NO WARRANTIES EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS OR ADEQUACY FOR A PARTICULAR PURPOSE, USE, QUALITY, PRODUCTIVENESS OR CAPACITY.**

b.  The Client hereby indemnifies and holds harmless the Company and its members, managers, directors, officers, employees, affiliates and agents ("Indemnified Party") against any and all claims, actions, suits, liabilities, losses, damages (including consequential damages) costs, charges, penalties, attorney's fees and other expenses of any nature to which any Indemnified Party may become subject or involved in any capacity arising out of or in connection with or related to this agreement and services provided herein including but not limited to (a) any action or inaction by the Client, its employees, agents or representatives, or any misrepresentations made by such persons to third parties in connection with the Company's rendition of the Services; (b) any breach of this Agreement by any of the Client; or (c) any erroneous instructions or information provided to the Company by the Client.  Notwithstanding any provision in this Agreement to the contrary, the Client has no obligation to indemnify the Company (or any Indemnified Party), for any claims, losses or damages directly resulting from the fraud, gross negligence or willful misconduct of the Company (or Indemnified Party).

8.  Jurisdiction; Governing Law. This Agreement is subject to the approval of the Bankruptcy Court which shall retain jurisdiction over all matters regarding this Agreement.  Subject to the foregoing, this Agreement will be governed by and construed in accordance with the laws of the State of Delaware (without reference to its conflict of laws provisions).

4

9. Force Majeure. Whenever performance by the Company of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock-out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reason of any other matter beyond the Company's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

10. Non-Solicitation. Client agrees that it shall not hire, or solicit to hire, either directly or indirectly, or cause any of its subsidiaries or affiliates to solicit or hire, any employee of Reliable or its subsidiaries or affiliates during the term of this agreement and for a period of twelve (12) months following termination of the agreement.

11. Notice. Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid, and by electronic mail. Any such notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in the United States mail, or, if sent by electronic mail, one business day after delivery, as follows:

if to the Company, to:

Reliable Companies
Nemours Building
1007 Orange Street, Suite 110
Wilmington, DE  19801
Attn: President

and if to the Client, to:

MVMT Labs Inc.
166 Geary St. Ste 1500 #1853
San Francisco, CA 94108

12. Severability. All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

13. Assignment. This Agreement and the rights and obligations of the Company and the Client hereunder shall bind and inure to the benefit of any successors or assigns thereto.

14. General. This Agreement supersedes and replaces any existing agreement entered into by the Company and the Client relating generally to the same subject matter, and may be

modified only in a writing signed by the Company and the Client. The paragraph headings in this Agreement are included only for convenience, do not in any manner modify or limit any of the provisions of this Agreement and may not be used in the interpretation of this Agreement. Failure to enforce any provision of this Agreement shall not constitute a waiver of any term hereof. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. The Client shall file an application with the Bankruptcy Court seeking approval of this Agreement. If an order is entered approving this Agreement, any discrepancies between this Agreement and the order approving this Agreement shall be controlled by such order.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year set forth above.

**Reliable Companies**

Signed by:

By: _Justin Edelson_

Justin K. Edelson

Title: Director, Corporate Restructuring

**Client**

Signed by:

By: _Joseph Golding_

Joseph Golding-Ochsner

Title: General Counsel

6

**EXHIBIT B**

**Edelson Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| MVMT Labs, Inc., | Case No. 26-11113 (TMH) |
| Debtor.[1] | |

**DECLARATION OF JUSTIN K. EDELSON
IN SUPPORT OF DEBTOR'S APPLICATION FOR AUTHORIZATION
TO EMPLOY AND RETAIN RELIABLE COMPANIES d/b/a RELIABLE
AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE**

I, Justin K. Edelson, being duly sworn, state the following under penalty of perjury:

1.      I am the Director of Corporate Restructuring at Reliable Companies d/b/a Reliable ("Reliable"), with offices located at 1007 North Orange St., Suite 110 Wilmington, Delaware 19801.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This declaration (this "Declaration") is made in support of the *Debtor's Application for Authorization to Employ and Retain Reliable Companies d/b/a Reliable as Claims and Noticing Agent Effective as of the Petition Date* (the "Application").[2]

3.      Reliable has years of experience in noticing and claims processing.  Reliable has a proprietary claims management system in which claims are effectively managed for the Clerk. Accordingly, I believe that Reliable is well qualified to provide experienced claims and noticing services in connection with this Chapter 11 Case.

---

[1]  The last four digits of the Debtor's federal tax identification number are 5217.  The Debtor's service address is c/o Legalinc Corporate Services Inc., 131 Continental Drive, Suite 305, Newark, New Castle County, DE 19713.

[2]  Capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to them in the Application.

1

4.      Reliable has provided claims and noticing services for debtors in this District, including in, most recently, *In re Zurvita Holdings, Inc.*, Case No. 24-12823 (MFW) (Bankr. D. Del. Dec. 23, 2024); *In re Parlement Technologies, Inc.*, Case No. 24-10755 (CTG) (Bankr. D. Del. May 23, 2024); *In Re: Etta Scottsdale LLC*, Case No. 24-10063 (KBO) (Bankr. D. Del. Mar. 1, 2024); and *In re Clover Fast Food, Inc.* Case No. 23-11812 (BLS) (Bankr. D. Del. Nov. 9, 2023).

5.      As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), Reliable will perform at the request of the Clerk's office the noticing and claims-related services specified in the Application.  In addition, at the Debtor's request, Reliable will perform such other noticing, claims, technical, administrative, and support services specified in the Application, subject to 28 U.S.C. § 156(c) and the Claims Agent Protocol.  The rates to be charged by Reliable for its claims and noticing services are attached hereto as **Exhibit 1**.

6.      Reliable represents, among other things, the following:

(a)      Reliable is not a creditor of the Debtor;

(b)      Reliable is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code;

(c)      Reliable will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the claims and noticing agent in this Chapter 11 Case;

(d)      by accepting employment in this Chapter 11 Case, Reliable waives any rights to receive compensation from the United States government as claims and noticing agent;

(e)      in its capacity as the claims and noticing agent in this Chapter 11 Case, Reliable will not be an agent of the United States and will not act on behalf of the United States;

(f)      Reliable will not employ any past or present employees of the Debtor in connection with its work as the claims and noticing agent in this Chapter 11 Case;

2

(g)     in its capacity as claims and noticing agent in this Chapter 11 Case, Reliable will not intentionally misrepresent any fact to any person;

(h)     Reliable will be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)     Reliable will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     none of the services provided by Reliable as claims and noticing agent will be at the expense of the Clerk's office.

7.     Although the Debtor does not propose to retain Reliable under section 327 of the Bankruptcy Code pursuant to the Application,[3] I caused to be submitted for review by our conflicts system the names of all known potential parties in interest (the "Potential Parties in Interest") in this Chapter 11 Case.  The list of Potential Parties in Interest, attached hereto as **Exhibit 2**, was provided by the Debtor and included, among other things, the Debtor, non-Debtor affiliates, significant equity holders, the Debtor's current and former directors and officers, top unsecured creditors, vendors, and other parties.  The results of the conflicts check were compiled and reviewed by Reliable professionals under my supervision and Reliable has identified no connections with the Potential Parties in Interest.  At this time, and as set forth in further detail herein, Reliable is not aware of any relationship that would present a disqualifying conflict of interest.  Should Reliable discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Reliable will use reasonable efforts to promptly file a supplemental declaration.

8.     To the best of my knowledge and based solely upon information provided to me by the Debtor, and except as provided herein, neither Reliable, nor any of its professionals, has any adverse connection to the Debtor, its creditors, or other relevant parties.  Reliable may have

---

[3]  As stated in the Application, such retention may be sought by separate application.

relationships with certain of the Debtor's creditors as vendors or in connection with cases in which Reliable serves or has served in a neutral capacity as claims and noticing agent or administrative advisor for another chapter 11 debtor.

9.      Reliable has and will continue to represent clients in matters unrelated to this Chapter 11 Case.  In addition, Reliable and its personnel have and will continue to have relationships in the ordinary course of its business with certain vendors, professionals and other parties in interest that may be involved in this Chapter 11 Case.  Reliable may also provide professional services to entities or persons that may be creditors or parties in interest in this Chapter 11 Case, which services do not directly relate to, or have any direct connection with, this Chapter 11 Case or the Debtor.

10.      To the best of my knowledge, neither Reliable nor any of its employees represent any interest materially adverse to the Debtor's estate with respect to any matter upon which Reliable is to be engaged.  Based on the foregoing, I believe that Reliable is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated:  July 15, 2026                                          Respectfully submitted,

*/s/ Justin K. Edelson*
Justin K. Edelson
Director of Corporate Restructuring

4

**<u>Exhibit 1</u>**

**Fee Structure**

## **Fee Structure**

| Position | Hourly Rate |
|---|---|
| *Analyst* | *$ 35-50* |

The Analyst processes incoming mail, including proofs of claim, ballots, creditor correspondence and undeliverable/returned mail. Analyst also assists with execution of mail services.

| *Consultant/Senior Consultant* | *$ 65-165* |
|---|---|

The Consultant is the daily contact for mailings, prepares and files affidavits of service. The consultant also responds to creditor and counsel inquiries, and processes claim objections and notices of transfer.

The Senior Consultant directs and oversees the various collection and noticing processes as well as the preparation of the creditor matrix and Chapter 11 reporting requirements.

| *Technology Consultant* | *$ 65-90* |
|---|---|

The Technology Consultant assists with custom website updates and provides database support for complex mailings and unique reporting requests.

| *Director* | *$ 175* |
|---|---|

The Director is the primary contact for the client and its professionals and oversees and supports all aspects of the services provided during the engagement.

| *Solicitation Consultant* | *$ 190* |
|---|---|

The Solicitation Consultant is the daily contact for plan solicitation and balloting services. The Solicitation Consultant manages the service process, provides support on all voting, tabulation, and Schedule and SOFA services, and prepares detailed reports of the results.

| *Director of Solicitation* | *$ 195* |
|---|---|

The Solicitation Director directs and oversees all activities involving the plan solicitation process. The Director of Solicitation advises on all solicitation and noticing programs, voting, tabulation, and Schedule and SOFA services.

**Printing and Noticing Services**

| | |
|---|---|
| *Printing* | *$ .10 per Page (volume discounts may apply)* |
| Customization/Envelope Printing | $ .25 per Envelope |
| Document Folding/Inserting | $ included |
| Postage/Overnight Delivery | $ Preferred Rates* |
| E-Mail Noticing | $50 |
| Fax Noticing | $ .05 per Page |
| Publication Noticing | $ Quoted at time of request |

**Document Management/Imaging**

| | |
|---|---|
| *Electronic Imaging* | *$ .10 per image* |
| *Virtual Data Room* | *$ Quoted upon request* |

 * Postage cost must be pre-paid prior to mailing;

** Waived for small volumes..larger volumes (over 100), will be quoted;

**<u>Exhibit 2</u>**

**Parties in Interest List**

**List of Potential Parties in Interest**

**Debtor**
MVMT Labs Inc.

**Debtors' Affiliates**
N/A

**Non-Debtor Affiliates**
N/A

**Banks / Credit Cards**
American Express National Bank, c/o Becket and Lee LLP
Capital One, N.A.
Choice Financial Group
Discover Bank
Ramp Business Corporation
Mercury Technologies, Inc.

**Current & Former Directors & Officers**
Cooper Scanlon
Joseph Golding-Ochsner
Matt Kahn
Rushikesh Manche

**Equity Holders**
Cooper Scanlon
Lucas Vinzon
Rushikesh Manche

**DIP Lender**
MNF DIP SPV LTD

**Top 20 Unsecured Creditors**
Anchorage Digital Bank NA
Delaware Division of Corporations
Groom Lake Private Military Corporation, LLC/ GLPMC, LLC
Ironclad
Move Industries
Notifi
Ottersec
Rushikesh Manche
Vinit Parekh

**Holders of Token Obligations**
.xyz management group LLC
0xSun
0x 易经
1470621 B.C. Ltd
3EKV LLC
4RC Ventures II LP
ABCD SPV I, LLC
Abhimanyu Bansal
Absoluta (Zolotarova Svitlana)
Adam Smith
Ader Group Limited
Ahboyash
Ai 姨
Ajit Kumar Tripathi
Ajit Tripathi
Albert Kim Than
Alex Chan
Alexander Lin
Alexander Opeagbe
Alexander Phua  (ALEXANDER PHUA YEW CHUAN)
Altasia Investments Limited
Alwan Zaidan
Alwan Zaidan
Ambush Capital Liquid Cayman
Andrew Cavanaugh
Ankr PBC
Ansem Holdings LLC
Anthony Lesoismier (Anthony Lesoismier Geniaux)
Anuke Ganegoda
Any Labs
Archetype Crypto II LP
artemis research
Artichoke Capital Fund LLP
Artur Felk
Asgard Digital Assets Fund LTD
Ashish Kumar
Avalanche Fund LP (Assigned Blizzard BVI Ltd.)
Avalaunch Platform Corp. (Paul Mak)
Aves Lair S23 Fund LLC
Aylo

bankeradao
Batuhan Dasgin
Bekhzod Khatamov
Ben Rahnema
Ben Rahnema
Ben Wee
Bilge Tanyeri
Bilge Tanyeri
BILI
Bill Stoke
Binayak Pande
BinmengLuo
BITWU
Block Space Force One Ltd
Blockchain Investors Group, LLC
Blocmates
bo lin
Bo Wu
Bo Zan Lin
"Borderless Cross-chain Ecosystem Fund LP
PROFILE COMPLETE FOR: Borderless
Cross-Chain Ecosystem Fund LP"
"Borderless Liquid Multi Strategy Fund LP
PROFILE COMPLETE FOR: Borderless
Multi-Strategy Fund V LP"
BQ
Brandon Suzuki
Brian Johnson
Brian Retford
Bruno Faviero
Bui Duc Huy
bushizhe
BVC Digital Opportunities Master Fund I,
LTD
CABRIT CAPITAL LTD
Cal
Calvin Chu
Calvin Liu
Canghai Ji
"CAP MAVEN MARKETING
MANAGEMENT--
changed to individual, Onkar Tiwari"
Chan Ho Fung
Chang Chi Chang
Charles Moscoe
chen jian

CHEN PENGZHOU
Chen Qijan
CHEN WEINIAN
Choi won jun
Christian Sullivan
Cimpean Rares Eugen
CitizenX Crypto Ventures Fund II, LP
Clayton Menzel
COLONY LAB LTD
COLONY LAB LTD
Constellation VP Pte Ltd
Continue Asset Management Ltd
Continue Asset Management Ltd
Crypto.com Capital
CryptologSpace
cryptosmart
CVP
CZ Labs Management Ltd.
Daan aan de Stegge
Dan Mgbor
Daniel Abelon
Daniel E. Simerman
Daniel Hans Tan
Daniel Nunes
Daniel Que
Daniel Que
Danilo Carucci
Danny Christ**
Dao5 (assigned to bastion)
Dao5 (assigned to bastion)
Data Strategy Innovations Limited
David Hulshof
Davinci Jeremie
DeFi Saint
Delta747 Limited
Dennison Bertram
Diederick Jacobs
Digital Consensus Fund SA**
Ding Xiao
Ding Xiao
Dipanshu
Djamaladine Souleyman
Djamaladine Souleyman
DocXBT
Donghyeon Jo
DONGYEON LEE

Dovey Wan (ENTITY PROFILE CREATED AND VERIFIED FOR PV TECHNOLOGY LLC)
Dusty Brockland
Eisuke Watanabe
eli5defi
Elizabeth
Emilio Maglione-Fulco
Enigmafund LLC
Eric Gansman
Eser Uyanik
Eterna Blockchain Fund II
Ethan Choi
Eugene Attalah
EunseongBoo
EV3 Ventures LLC
Everest TM Limited
exTerra Ventures
FACTBLOCK Corp.
Feng Liu
Fernando Trespalacios
Fiyes Yu
Fjodor Agranat
Flowdesk
Foresight Resarch PTE Ltd
Foresight Research Pte Ltd.
Francis White
Fund III, LP
Gabriel Tramble
Gann Liquid Investments LLC
Gareth Christopher Lai
Garrison Yang
Gate Ventures Capital Corp.
GC
George Alexander
George Burke
George Lambeth
Georgios Vlachos
Gibbeum Lee
Golden Financial Innovation Ltd
Gordon Lau
GuanxiDAO Pte. Ltd.
Gun
Hack VF 2022 LP
Hackapreneur
Hae Min Park

Hae Min Park
Hamzah Khan
Hansen Niu
Harald Foslien Løvstad
Harald Foslien Løvstad
HC Capital
HE JIE
HE YANGJIAN
hebi
hellosuoha
ho ka hon
HON WENG TUANG
HU XIUHONG
Huage
Hugo Cesmat
Hypersphere Parallel Network Master Fund
Hyun Kwon
Igor Lymar
Inanc Salman
Inderpreet Singh
Inderpreet Singh
Interop Ventures Fund 1 LP
Inwon jung
J17 Pioneer Fund L.P.
jack
Jacob Kowalewski
Jacob_Huzi
Jai Ku Sun
Jan Stastny
Jang Won Sok
Jason Yanowitz
Jayendra Jog
jaypeg
JE YOUNG SEO
Jeffrey Feng
Jerry Liu (280 Capital Ltd)
Jia Yaoqi
Jian Li
Jin Shang
jinki kim
Joe Chen / Chi Yu Chen
Joe Takayama
Joint Knowledge Labs Inc.
Jonathan Brosseau
Jonathan West
Jonathan West

Jongmin Kim
Jordi Alexander
Josh Hesketh
Joshua Shihnz
Juliet
Jung Joon Park
Jung-Yung Jonathan Lim Chang
junhyuk rhee
JUNKI KATO
Justin Wu
JUYEONG KIM
K2 kai
K300 Ventures
Kaiyuan Feng
Kang Zeng
kazuhiro ooishi
Keone Hon
KIE KATO (FIG)
Kim Minsoo
Kim YoungTaek
KimDongGeon
kirara
Kirby Fine
Kirby Ong
Kittipoom aksornsua
Ko Beng Hin
Ko Beng Hin
koichi kitamura
kwak jisung
Kwangsung Park
La Gold Cartel LLC
Lai Hong Phong
Lanhu
Lavra Holdings Limited
Layth Kal
Leesoon Kim
Leon Liu
Léonard Dupuis - IGMI Capital Ltd
Leung Ka Ho Carl
Levi Magill
Lewis Phey
LI MINGCHAN
Liew Ashton
Limbo
LINSHENGPENG
LIU AIJIA

lubiyangjia
Luca Schnetzler / La Gold LLC
Lucas Dantur
Luna Ventures FZCO
Machine Identity LLC
MAI OKUBO
Mark Cullen
Mark Santin
Matthew Mery
Matthew Paik
MAVEN 11 BLOCKCHAIN VENTURE
FUND 2 LP (acting through its GP: MAVEN
11 GP BVF 2)
Mawson Consultants Limited (Assigned to
Neil Kapoor)
Mehdi Devillers
Mehdi Farooq
memory
Mentat Group LTD
Merkle Tech Capital
MH Technologies Ltd**
Michael Heinrich
Michael Shafer
Michael Wurzinger
Mile High Blockchain
Minh Pham
Minhui Chen
Mitchell Chase
Mithai Services S.A., Mithai Trust, Digital
Incubation Group
Mo Shaik
MOONLIGHT
Moyukh Sen
Mugiwara Capital Ltd. Alex Malosse
Mulan
NacionCrypto (assigned to individual- Juan
Calderon)
Neer Capital LTD
Newtribe Capital Pte Ltd
Ng Wei Hao Michael
Nhan Ngo
Ni Sen
Nilseh Global Ltd,
Nomad Group
Not My Circus Capital LLC
Not My Circus Not My Capital LLC

Nox
Oai Lam
Oai Lam
OIG Capital Corp
OKG Ventures Limited
Oleg Pavletsov
Oliver Bickell
PANONY LIMITED
Paul Kim
Paul Kim
Pavanveer Singh Heer
Pavanveer Singh Heer -
pav27s.crypto@gmail.com
Pedro Gomes
Peter Wang
Phronesis Limited
Polkassembly LLC
Polychain Master Fund I LP
Polychain Parallel Fund I LP
Proof Capital Special Situations Fund S-3
Protagonist LP
Public Works LP
PV Technology LLC
QFi 元宇宙阿 Q
Qinghua LI
Rached Rayeh
Radostin Minchev
Rahed Rayeh
Recursive Group LLC
Redefinition Ltd. | Jung-Yung Jonathan Lim
Chang
Ricadano Capital LLC
Richard May
ROBERTO FLORENTIN MUNTEANU
Robin Dirickx
Rokubunnoni Inc.
Root Liu
Roxi
RPMA | LLC
Sagaar Mandavia
Sally wang/wang jia
SALMON PINK
Samantha Bohbot
SANGHEON OH
sanghyuk cho
Saxon Ventures FZCO

Scott Moses Sunarto
SeedHorizon Group / Wise3 Ventures
Corporation
Sera Partners Limited
SEUNGYUN LEE
Shak Capital Inc.
shifeng
Shiny Pony LLC
Shitij Gupta
Shiyi Yu
Shuichi Yoshida
Silvermine Capital Advisors, LLC
Silvermine Capital Advisors, LLC
Simon Charles Doherty
Simon Jenvey
Simon Jenvey
Sintra FZCO
Sjuul Follings
Skip Technology
Skyfrog Capital
Skyfrog capital (named changed; formerly
AUGR capital)
smol
snowball
Soban Saqib
Sonny Azeez - (legal name Segun Azeez)
Sparta Digital Pte Ltd (assigned to Sparta
Holdings LLC
Sreeram Kannan
SRS Investment Holdings Limited
SU ZHENZHU
SUBIN HONG
Sungyun Jeong
Surekha Tuntiserirat
tai lai
Taikan Okumura
Taisu Ventures Web3 Fund Limited
Partnership
Takahiro Ohtake
Takahito Matsuzawa
Takao Kido
TAKAYUKI NEMOTO
TANUKI STUDIO PTE. LTD.
temari
TheCryptoDog
Third Earth Capital LP

Thomas Yu
Timothy Wang
Toge Gunkel
Token Metrics Advisers
Token Metrics Ventures Fund Ltd
Token Metrics Ventures Fund Ltd
Token Metrics Ventures Ltd
Travis Blane
TRGC SPC Limited
TSS Digital FZCO
Two Square Capital
Unicorn Verse Pte Ltd
Up Top Search
Vanessa sierra
VARYS CAPITAL VENTURES SP1
Varys Capital Ventures SP1  WESTEROS
CAPITAL LTD
Vincent Yu
viperr
Vllaki LP
Vyas Venkatakrishnan
WAGMI 55- WAGMI Master LLC
Wang lei
Wang Siying
web3honey
Wenxin Hong
wiz
Wooyoung Chung
Wu guanggeng
Wuhongliang
Wye Meng Cheong
Xinhai Shu
Xiyan Sun
Yaoyuan Lu
Yerui Zhang
YOHAN LIM
Yomiko Chen
YONGGYU KIM
Yorkville Commodities LLC
Yoshiki Kawai
Youngwoo Jung
Yun Ju Park
YunJe Jeong
YUQING ZHAO
Yusuke Tsuji
Yuta Moxley

Yuta Moxley
Yuyue
YZILabs Management Limited
Zachary Manafort
Zaddy Coin
Zhang Qianyi（Ryan）
Zhang Zeng
Zhao yuqing
Zhixiong Pan
ZK Enpachi Foundation
Zolo Xiong
倪琪
小人物
腦哥 Raizel (Wen Yi Huang)
链上达人
默默

**SAFE Holders**
280 Capital Ltd
3EKV LLC
4RC Ventures II LP
ABCD SPV I, LLC
Abhimanyu Bansal
Absoluta
Adam Smith
Ajit Kumar Tripathi
Alexander Opeagbe
Alexander Phua
Altasia Investments Limited
Alwan Zaidan
Ambush Capital Liquid Cayman
Ankr PBC
Ansem Holdings LLC
Anthony Lesoismier
Anuke Ganegoda
ANY LABS
Archetype Crypto II LP
Artichoke Capital Fund I LP
Asgard Digital Assets Fund LTD
AUGR Capital
Avalaunch Platform Corp
Aves Lair S23 Fund LLC
Batuhan Dasgin
Bekhzod Khatamov
Ben Rahnema
Bilge Tanyeri

Binayak Pande
Block Space Force One Ltd
Blockchain Investors Group, LLC
Blocmates
Blue Summit Digital Limited
Borderless Cross-chain Ecosystem Fund LP
Borderless Liquid Multi Strategy Fund LP
Brian Johnson
Brian Retford
Bruno Faviero
BVC Digital Opportunities Master Fund I, Ltd
Cabrit Capital Ltd
Calvin Liu
CAP Maven Marketing Management
Chen Qijian
Christian Sullivan
CitizenX Crypto Ventures Fund II, LP
Clayton Menzel
Continue Asset Management Ltd
Covalent / Silota Research and Development Inc
CryptologSpace
CVP LLC
Dan Eskow
Dan Mgbor
Daniel Abelon
Daniel Hans Tan
Daniel Nunes
Daniel Que
Danilo Carlucci
Danny Christ
dao5 capital fund LP
DeFi Dad (Travis Blane)
DeFI Saint
Delta747 Limited
Dennison Bertram
Digital Consensus Fund SA
Ding Xiao
Djamaladine Souleyman
DocXBT
Emilio Maglione-Fulco
Enigmafund LLC
Eser Uyanik (entity: BAD Investment Group)
Eterna Blockchain Fund II
Eugene Attalah

EV3 Ventures LLC
Everest TM Limited
exTerra Ventures
Figment Master Fund II, LP
Fjodor Agranat
Flowdesk
FORESIGHTRESEARCH PTE. LTD
Francis White
Gann Liquid Investments LLC
Garrison Yang
Gate Ventures Capital Corp
GC (Guillaume)
George Alexander
George Burke
George Lambeth
Georgios Vlachos
GuanxiDAO Pte. Ltd
Hack VF 2022 LP
Hansen Niu
Hypersphere Parallel Network Master Fund LP
Interop SAS
Interop Ventures Fund 1 LP
J17 Pioneer Fund L.P
Jan Stastny
Jason Yanowitz
Jeffrey Feng
Jia Yaoqi
Joe Takayama
Jonathan Brosseau
Jonathan West
Josh Hesketh
Jung-Yung Jonathan Lim Chang
Kana Labs Ltd
KBL Investment Limited
Keone Hon
Kirby Fine
Ko Beng Hin
Kwangsung Park (A41 inc.)
Lavra Holdings Limited
Luna Ventures FZCO
Machine Identity LLC
Mark Santin
Matthew Mery
Matthew Paik (Paik Capital)

Maven 11 Blockchain Venture Fund 2 LP
(acting through GP Maven 11 GP BVF 2)
Mawson Consultants Limited
Mehdi Farooq
Mentat Group LTD
Merkle Tech Capital
MH Technologies Ltd
Michael Heinrich
Michael Shafer
Michael Wurzinger
Minhui Chen (Mike Chen)
Mitchell Chase
Mo Shaikh
Moyukh Sen
Nacion Crypto
Neer Capital LTD
Ng Wei Hao Michael
Nilseh Global Ltd
Nomad Group (Nomad Capital)
Not My Circus Not My Capital, LLC
Noti
Oai Lam
Oleg Pavletsov
Oliver Bickell
Pavanveer Singh Heer
Pedro Gomes
Peter Wang
Phronesis Limited
Placeholder Fund III, LP
Polkassembly LLC
Proof Capital (Special Situations Fund S-3)
Protagonist LP
Public Works LP
PV Technology LLC
Rached Rayeh
Radostin Minchev
Recursive Group LLC
Roxi
RPMA I LLC
Rubicon Consultants, LLC
Sagaar Mandavia
Samantha Bohbot
Saxon Ventures FZCO
Scott Moses Sunarto
Seed Horizon Group
Sera Partners Limited

Shak Capital Inc
Shiny Pony LLC
Silvermine Capital Advisors, LLC
Simon Charles Doherty
Sintra FZCO
Skip technology
Soban Saqib
Software Dev Integration Ltd
Sonny Azeez
Sreeram Kannan
SRS Investment Holdings Limited
Taisu Ventures Web3 Fund Limited
Partnership
Third Earth Capital LP
Thomas Yu
Timothy Wang
Toge Gunkel
Token Metrics Ventures Fund Ltd
Token Metrics Ventures Ltd
TRGC SPC Limited
TrueBridge Blockchain I Holdings, L.P
TSS Digital FZCO
Two Square Capital Inc
Vllaki LP
Vyas Venkatakrishnan
WAGMI 55 - WAGMI Master LLC
We Win Win
Wenxin Hong
Yorkville Commodities
Yuta Moxley
ZK Enpachi Foundation

**Vendors**
Accelera Talent
Anchorage Digital
Artemis
Audit Peers, Inc.
Bardic Studio
Carta
Chainalysis
Cision
CLPR Agency
Daisy Pay, Inc.
Diollo Limited
Dukas Linden Public Relations
Entropy Tech Ltd

Factblock Corp
Fireblocks
Fit Freaks LLC
Foxtail Studios
GLPMC LLC
Godwit Travel LLC
Google
H2 Strategy Partners LLC
Halborn
Industrious
Integer IT Systems SRL
Intuition Machines, Inc.
Ironclad
JPG
JuneHomes, LLC
Michelle Alana, LLC
MRSAKAHN II, LLC (Matt Kahn)
Notifi Network
OpenAI
Otter Audits
Quantdesign LLC
Scrib3 Agency Inc.
Search on Dora Inc.
Slim Moe Bob LLC
Squarespace
Startup Artclub
Strange Loop Labs AG
The Brass Factor
The Digital Chamber
Tiny Wins, LLC
Torabi Enterprises
TransPerfect Document Management, Inc.
Tristar Office
Up Top Search
Vercel
Volcano House
Web3 Technologies
Winnsolutions
Wonderstruck

**Litigation Counterparties**
Lihuimei Lei
Metaverse Technology Company FZE
Michael Curcio
Rushi Mache

**Professionals**
Burkland Associates
CBIZ, Inc.
Cleary Gottlieb Steen & Hamilton LLP
Crowell & Moring LLP
Dentons Rodyk and Davidson LLP
FTI Consulting
Horizons Law
Maples Group
Marcum LLP
Perkins Coie LLP
Pilot.com, Inc.
Rippling (People Center, Inc.)
Teknos Associates

**Lenders' Professionals**
Allen Overy Shearman Sterling US LLP
Young Conaway Stargatt & Taylor, LLP

**Debtors' Bankruptcy Professionals**
Potter Anderson & Corroon LLP
Province, LLC

**Taxing & Regulatory Authorities**
AZ Dept. of Revenue
CA Franchise Tax Board
Commonwealth of Massachusetts
Delaware State Treasury
Department of Justice
Internal Revenue Service
NYS Dept. of Taxation & Finance
Secretary of State
Securities and Exchange Commission
State of Arizona
State of California
State of Montana
State of New Jersey
State of New York
State of Virginia

**Bankruptcy Judges & Clerks**
Barksdale, Nickita
Batts, Cacia
Bello, Rachel
Brady, Claire
Capp, Laurie

Gadson, Danielle
Haney, Laura
Hrycak, Amanda
Hurt, Xavier
Johnson, Lora
Chief Judge John T. Dorsey
Judge Brendan L. Shannon
Judge Craig T. Goldblatt
Judge J. Kate Stickles
Judge Karen B. Owens
Judge Mary F. Walrath
Judge Laurie Selber Silverstein
Judge Thomas M. Horan
Lopez, Marquietta
Lugano, Al
O'Boyle, Una
Subda, Paula
Walker, Jill
Washington, Nikki
Yeager, Demitra

Sierra-Fox, Rosa
Thomas, Elizabeth
Vara, Andrew R.
Wynn, Dion

**United States Trustee's Office**
Attix, Laruen
Bates, Malcolm M.
Bu, Fang
Casey, Linda
Cudia, Joseph
Dice, Holly
Dortch, Shakima L.
Fox, Jr., Timothy J.
Giordano, Diane
Girello, Michael
Green, Christine
Hackman, Benjamin
Jones, Nyanquoi
Konde, Hawa
Leamy, Jane
Lipshie, Jonathan
McCollum, Hannah M.
McMahon, Joseph
Nyaku, Jonathan
O'Malley, James R.
Richenderfer, Linda
Schepacarter, Richard
Seliber, Megan
Serrano, Edith A.