**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>MVMT Labs, Inc.,<br><br>Debtor.[1] | Chapter 11 (Subchapter V)<br><br>Case No. 26-11113 (TMH)<br><br>**Hearing Date: August 18, 2026 at 2:00 p.m. (ET)**<br>**Obj. Deadline: August 11, 2026 at 4:00 p.m. (ET)** |

**DEBTOR'S MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363 FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO CONTINUE TO PERFORM AND HONOR THE DEBTOR'S CONTRACTUAL OBLIGATIONS UNDER THE FENIX AGREEMENT BY ENTERING INTO NEW TOKEN DELIVERY AGREEMENTS IN CONNECTION THEREWITH**

The above-captioned debtor and debtor-in-possession (the "Debtor" or "Labs"), by and through its undersigned proposed counsel, hereby files this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the Debtor to continue to perform and honor its contractual obligations in the ordinary course of business under the Termination and Settlement Agreement, dated December 2, 2025 (the "Fenix Agreement"),[2] by and among the Debtor, Movement Network Foundation and Movement Limited (Movement Network Foundation and Movement Limited together, the "Foundation Entities"), by allowing the Debtor to enter into new token undertaking agreements (each, a "TUA"). In support of this Motion, the Debtor respectfully states as follows:

## INTRODUCTION

1. Although the Debtor believes it is unnecessary, out of an abundance of caution, the Debtor seeks authority to continue to perform and honor outstanding ordinary-course contractual obligations under the Fenix Agreement by being permitted to enter into new TUAs. As the Court

---

[1] The last four digits of the Debtor's federal tax identification number are 5217. The Debtor's service address is c/o Legalinc Corporate Services Inc., 131 Continental Drive, Suite 305, Newark, New Castle County, DE 19713.

[2] A copy of the Fenix Agreement was previously filed on the docket of the Debtor's chapter 11 case under seal at Docket No. 20.

and other parties in interest are aware, the Debtor seeks to assume the Fenix Agreement in connection with the final order (the "Final DIP Order") approving the *Debtor's Motion for Entry of (I) Interim and Final Orders (A) Authorizing the Debtor to (1) Obtain Postpetition Financing and (2) Grant Liens, Including Senior Secured Liens, and Superpriority Administrative Expense Claims; and (B) Modifying the Automatic Stay; (II) An Order Authorizing the Assumption of the Fenix Agreement with Movement Network Foundation Pursuant to Sections 365 and 363; (III) An Order Approving the Settlement Between the Debtor and the Foundation Parties Pursuant to Bankruptcy Rule 9019; (IV) An Order Scheduling a Final Hearing with Respect to the Foregoing; and (V) An Order Granting Related Relief* [Docket No. 19] (the "DIP Motion"). Accordingly, through this Motion, the Debtor requests entry of the Proposed Order to provide full disclosure to the Court and parties in interest and to provide the Debtor and other parties with additional comfort that the Debtor is authorized to continue to perform its contractual obligations under the Fenix Agreement in the ordinary course of business by entering into new TUAs, which will allow the Foundation Entities to honor Valid Token Delivery Obligations (as defined in the DIP Motion), until such time as the Fenix Agreement is assumed pursuant to the Final DIP Order.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the District of Delaware (this "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is core within the meaning of 28 U.S.C. § 157(b), and, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. The statutory predicates for the relief sought herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

### I. Procedural Background

4. On July 15, 2026 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code (this "Chapter 11 Case"), and the Debtor elected to proceed under Subchapter V of chapter 11 of the Bankruptcy Code pursuant to the Small Business Reorganization Act of 2019, as amended.

5. No request for the appointment of a trustee or examiner has been made, and no official committee has been appointed in this Chapter 11 Case. On July 16, 2026, Jeffrey Schwendeman was appointed as the Subchapter V trustee in this Chapter 11 Case (the "Subchapter V Trustee"). The Debtor is operating its business as debtor in possession pursuant to sections 1182 and 1184 of the Bankruptcy Code.

6. Additional factual background regarding the Debtor, including its business operations, corporate and capital structure, and the events leading to the filing of this Chapter 11 Case is set forth in the *Declaration of Michael Robinson in Support of MVMT Labs, Inc.'s Chapter 11 Petition and First Day Motions* [Docket No. 21] (the "First Day Declaration").[3]

### II. The Fenix Agreement

7. As set forth in more detail in the First Day Declaration, the key events precipitating this Chapter 11 Case relate to, among other things, the launch of the $MOVE token and subsequent dilution of the token price, alleged wrongful market activity in connection therewith, and related

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration or DIP Motion, as applicable.

counterparty actions. One of the ultimate consequences of those events is that the Tripartite Agreement between the Debtor and the Foundation Entities was breached, leaving the Debtor in default and no longer eligible to receive the $MOVE tokens needed to satisfy or honor its Valid Token Delivery Obligations.

8. To resolve Labs's valid $MOVE token delivery obligations to the greatest extent possible, pursuant to the Fenix Agreement, the Foundation Entities generally agreed to deliver $MOVE tokens to counterparties pursuant to valid (and not fraudulent) and undisputed token delivery agreements with Labs. In addition to the Foundation Entities being satisfied that the token delivery obligations are valid, the obligations of the Foundation Entities to deliver tokens is contingent upon the completion of certain know-your-customer ("KYC") and know-your-business ("KYB") checks in a manner that is satisfactory to the Foundation Entities, as well as and the entry into a form of TUA among the Foundation Entities and the Debtor in the form annexed as Exhibit A to the Fenix Agreement.

9. Although the Debtor is now in bankruptcy, its goals remain the same—to maximize the value of its assets for the benefit of its estate and all stakeholders. To do so, it is critical that the Debtor be authorized to continue to perform and honor its contractual obligations under the Fenix Agreement, including authorization to enter into new TUAs. Not only would the Debtor's breach of the Fenix Agreement be an event of default under the DIP Loan Documents, which would undermine the Debtor's ability to administer this Chapter 11 Case, preserve valuable claims and causes of actions, and wind down its affairs, but the Fenix Agreement is also the only mechanism through which the Debtor can ensure that counterparties to valid (and not fraudulent) and undisputed token delivery agreements with the Debtor receive the $MOVE tokens they are rightfully owed.

10. To that end, the Debtor and the Foundation Entities are currently in a position to enter into new TUAs with certain counterparties to valid token delivery agreements. While the Debtor believes that entry into and performance under TUAs are within the ordinary course of its business following the entry into the Fenix Agreement and the winding down of its affairs, the Debtor has decided to refrain executing any TUAs until it has express authority from the Court to do so. Although the Debtor believes such relief is unnecessary because (i) it is not using, selling, or leasing property of the estate, and (ii) even if it was, the Debtor's performance under the Fenix Agreement and execution of TUAs thereunder is in the ordinary course of business pursuant to an existing prepetition contract that the Debtor does not believe is avoidable and that the Debtor is seeking to assume pursuant to the Final DIP Order, it seeks entry of the Proposed Order out of an abundance of caution.

## BASIS FOR RELIEF

### I. Entry into New TUAs Qualifies as an Ordinary Course Transaction and is Authorized Pursuant to Section 363(c) of the Bankruptcy Code.

11. Section 363(c)(1) of the Bankruptcy Code provides that a debtor in possession "may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Section 363(c)(1)'s ordinary course of business standard was intended to allow a debtor in possession the flexibility to run its business. *See, e.g., In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("The framework of section 363 is designed to allow a trustee (or a debtor in possession) the flexibility to engage in ordinary transactions without unnecessary creditor and bankruptcy court oversight, while protecting creditors by giving them an opportunity to be heard when transactions are not ordinary."); *see also In re Sportsman's Warehouse, Inc*, 457 B.R. 372, 399 (Bankr. D. Del. 2011);

*In re Amaravathi Ltd. P'ship*, 416 B.R. 618, 628 (Bankr. S.D. Tex. 2009) ("Generally, a debtor-in-possession . . . is free to use, sell or lease property of the bankruptcy estate in the operation of the debtor's business. . . .") (citation omitted). A debtor in possession may, therefore, use, sell, or lease property of the estate without the need for prior court approval if the transaction is in the ordinary course of business. *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (holding that ordinary course of business use of estate property does not require a prior hearing).

12. Neither the Bankruptcy Code nor its legislative history provides a framework for analyzing whether particular transactions are in the ordinary course of a debtor's business for the purpose of Section 363. *Roth Am.*, 975 F.2d at 952. The term ordinary course of business generally has been accepted to embrace the reasonable expectations of interested parties of the nature of transactions that the debtor would likely enter in the course of its normal, daily business. *See Quality Constr. & Prod. LLC v. Collins*, Case No. 6:19-CV-01308, 2021 WL 318489, at *4 (W.D. La. Jan. 29, 2021). A debtor's prepetition conduct and business practices are important factors as to whether a transaction is within the ordinary course of business. *Id*. A transaction may be within the ordinary course of business even if it does not occur frequently. *Id*. The ordinary course of business standard embodied in this provision is intended to allow a debtor in possession the flexibility to run its business during its chapter 11 proceedings. *In re Nellson Nutraceutical, Inc*., 369 B.R. 787, 804 (Bankr. D. Del. 2007) (*citing Roth American*, 975 F.2d at 952).

13. The Third Circuit has adopted a two-step approach to determining whether a transaction is made in the "ordinary course": a "vertical dimension" test and a "horizontal dimension" test. *Roth Am.*, 975 F.2d at 952; *Sportsman's Warehouse*, 457 B.R. at 399. The test analyzes the transaction on both a vertical and a horizontal basis—the "vertical dimension" test

considers "whether the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit." *Sportsman's Warehouse, Inc*., 457 B.R. at 399. The "horizontal dimension" test considers "whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry." *Id*. The primary focus thus is on the debtor's pre-petition business practices and conduct, although a court must also "consider the changing circumstances inherent in the hypothetical creditor's expectations." *Id.*

14. Other debtors across a various range of industries have been authorized to perform under similar agreements pursuant to section 363 of the Bankruptcy Code. *See, e.g.*, *In re The Rockport Co, LLC*, Case No. 23-10774 (BLS) (Bankr. D. Del. July 14, 2023) [Docket No. 207] (approving performance of obligations under the transition services agreement on a final basis); *Kidde-Fenwal, Inc*., Case No. 23-10638 (LSS) (Bankr. D. Del. May 16, 2023) [Docket No. 59] (approving shared services agreement on an interim basis); *Lincoln Power LLC*, Case No. 23-10382 (LSS) (Bankr. D. Del. Apr. 4, 2023) [Docket No. 54] (approving shared services agreement on an interim and final basis); *TECT Aerospace Group Holdings, Inc.*, Case No. 21-10670 (KBO) (Bankr. D. Del. May 5, 2021) [Docket No. 129] (final order authorizing continued performance under shared services agreements); *In re EV Energy Partners, L.P., et al*., Case No. 18-10814 (CSS) (Bankr. D. Del. Apr. 25, 2018) [Docket No. 129] (final order authorizing continued performance under shared services agreements); *In re GenOn Energy, Inc., et al*., Case No. 17-33695 (DRJ) (Bankr. S.D. Tex. July 14, 2017) [Docket No. 254] (final order authorizing continued performance under certain intercompany arrangements, including under a transition services agreement).

15. The Debtor's continued performance under the Fenix Agreement, including performance under and entry into TUAs, in the ordinary course of business on a postpetition basis, comports with section 363(c) of the Bankruptcy Code. Courts consider whether the transaction subjects counterparty to economic risk of a nature different from those he accepted when he decided to extend credit. *Sportsman's Warehouse*, 457 B.R. at 399. The Debtor and the Foundation Entities have agreed to perform under the terms of the Fenix Agreement, which includes certain transition services and obligations of the Debtor that are consistent with the prepetition business transactions between the parties and the Debtor's remaining ordinary course operations. Importantly, the Debtor has not subjected itself to greater economic risk by agreeing to continue to enter into and perform under new TUAs. Rather, performance allows the Foundation Entities to deliver tokens to counterparties to valid token delivery agreements with the Debtor. That in turn removes from the Debtor's estate the obligation to make such token deliveries, which is particularly important because the Debtor has no means by which it could deliver $MOVE tokens without the assistance of the Foundation Entities.

16. Accordingly, for the reasons set forth herein and in the First Day Declaration, the Debtor seeks authority to continue to perform and honor its contractual obligations under the Fenix Agreement to facilitate ordinary course operations postpetition and to ensure that the value of the Debtor's estate is maximized in this Chapter 11 Case.

**II. Performance Under the Fenix Agreement Is a Reasonable Exercise of the Debtor's Business Judgment and Should be Approved Pursuant Section 363(b) of the Bankruptcy Code.**

17. The Debtor also submits that performance of its obligations under the Fenix Agreement is a sound exercise of its business judgment and authorized pursuant to section 363(b) of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property

of the estate." 11 U.S.C. § 363(b). Although section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts have required that such use, sale or lease be based upon the sound business judgment of the debtor. *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (internal citation omitted); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070- 71 (2d Cir. 1983); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147-48 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of Lionel Corp.); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (holding that the Third Circuit adopted the "sound business judgment" test in Abbotts Dairies); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (same); *In re Phx. Steel Corp*., 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (stating that judicial approval under section 363 of the Bankruptcy Code requires a showing that the proposed action is fair and equitable, in good faith, and supported by a good business reason).

18. Not only does the Debtor believe entering into and performing under TUAs pursuant to the Fenix Agreement is in the ordinary course of business and arguably does not involve the use, sale, or lease of property of the estate, the Debtor's continued performance under and ability to execute TUAs pursuant to the Fenix Agreement is also a sound exercise of its business judgment because, among other things, the Fenix Agreement is a critical component of the Global Resolution (and the DIP Facility that travels with it) and is therefore essential to the Debtor's postpetition operations and ability to maximize the value of its estate during this Chapter 11 Case. Following entry into the Fenix Agreement in December 2025, the Debtor and the Foundation Entities have historically supported each other with certain administrative tasks and transition services with the goal of honoring valid token delivery rights.

19. The DIP Lender also supports the Debtor's continued entry into and performance under TUAs pursuant to the Fenix Agreement, as evidenced by the condition to borrowing that the Fenix Agreement be assumed and the DIP Lender's approval of certain payments reflected in the Approved DIP Budget that facilitate the Debtor's ability to fulfill its contractual obligations under the Fenix Agreement.

20. Other debtors have been authorized to perform under similar agreements pursuant to section 363(b) of the Bankruptcy Code. *See, e.g.*, *In re The Rockport Co, LLC*, Case No. 23-10774 (BLS) (Bankr. D. Del. July 14, 2023) [Docket No. 207] (approving performance of obligations under the transition services agreement on a final basis); *Lincoln Power LLC*, Case No. 23-10382 (LSS), Docket. No. 54, (Bankr. D. Del. Apr. 4, 2023) (approving shared services agreement on an interim and final basis); *TECT Aerospace Group Holdings, Inc.*, Case No. 21-10670 (KBO), Docket No. 129 (Bankr. D. Del. May 5, 2021) (final order authorizing continued performance under shared services agreements); *In re EV Energy Partners, L.P., et al*., Case No. 18-10814 (CSS), Docket No. 129 (Bankr. D. Del. Apr. 25, 2018) (final order authorizing continued performance under shared services agreements); *In re GenOn Energy, Inc., et al.*, Case No. 17-33695 (DRJ), Docket No. 254 (Bankr. S.D. Tex. July 14, 2017) (final order authorizing continued performance under certain intercompany arrangements, including under a transition services agreement).

21. For the reasons set forth above, the Debtor believes its continued performance under the Fenix Agreement is a sound exercise of its business judgment that will facilitate ordinary course operations postpetition and maximize the value of the Debtor's estate. Accordingly, the Debtor submits that section 363(b) of the Bankruptcy Code provides sufficient authority for the requested relief and the Motion should be approved.

## NOTICE

22. Notice of this Application has been or will be provided to: (a) the U.S. Trustee; (b) the Subchapter V Trustee, (c) counsel to the DIP Lender; (d) the holders of the twenty (20) largest unsecured claims against the Debtor; (e) the United States Securities and Exchange Commission; (f) the Office of the United States Attorney for the District of Delaware; and (g) all parties entitled to notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, and grant such other and further relief as the Court deems just and proper.

Dated: August 4, 2026
Wilmington, Delaware

POTTER ANDERSON & CORROON LLP

*/s/ Gregory J. Flasser*

Jeremy W. Ryan (No. 4057)
Gregory J. Flasser (No. 6154)
Sameen Rizvi (No. 6902)
Halley S. Dannemiller (No. 7562)
Wenting Wu (No. 7679)
1313 North Market Street, Sixth Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email: jryan@potteranderson.com
gflasser@potteranderson.com
srizvi@potteranderson.com
hdannemiller@potteranderson.com
wwu@potteranderson.com

*Proposed Counsel to the Debtor and Debtor in Possession*