**Potter Anderson & Corroon LLP**
1313 N. Market Street, 6th Floor
Wilmington, DE 19801-6108
302.984.6000
potteranderson.com

Potter Anderson

Jeremy W. Ryan
Partner
Direct 302.984.6108

August 14, 2026

Judge Horan,

We write to raise several discovery issues, outlined below, that have arisen in connection with the *Debtor's Motion for Entry of (I) Interim and Final Orders (A) Authorizing the Debtor to (1) Obtain Post-Petition Financing and (2) Grant Liens, Including Senior Secured Liens, and Superpriority Administrative Expense Claims; and (B) Modifying the Automatic Stay; (II) an Order Authorizing the Assumption of the Fenix Agreement with Movement Network Foundation Pursuant to Sections 365 and 363; (III) an Order Approving the Settlement Between the Debtor and the Foundation Parties Pursuant to Bankruptcy Rule 9019; (IV) an Order Scheduling a Final Hearing with Respect to the Foregoing; and (V) an Order Granting Related Relief* [Docket No. 19] (the "DIP Motion").

Rushikesh Rajendra Manche ("Mr. Manche") has indicated through counsel that he intends to object to the DIP Motion and, late in the evening on Friday, August 7, 2026, served the following discovery, all of which is attached to this letter:

(i) a deposition notice to Michael Robinson in his personal capacity (Mr. Robinson serves as the Debtor's CRO) noticing a deposition for August 13, 2026;

(ii) a deposition notice to Cooper Scanlon in his personal capacity (Mr. Scanlon is the Debtor's former CEO and a current consultant under a 1099 arrangement) noticing a deposition for August 14, 2026;

(iii) a 30(b)(6) deposition notice to the Debtor noticing a deposition for August 18, 2026; (iv) a 30(b)(6) deposition notice to the Foundation Parties[1] noticing a deposition for August 19, 2026;

(iv) twenty (20) requests for the production of documents to the Debtor seeking production on August 12, 2026; and

(v) nine (9) requests for the production of documents to the Foundation Parties seeking production on August 12, 2026.

[1] Terms not defined in this letter shall have the meaning ascribed to them in the DIP Motion or the *Declaration of Michael Robinson in Support of MVMT Labs, Inc.'s Chapter 11 Petition and First Day Motions* [Docket No. 21] (the "First Day Declaration"), as applicable.

The Debtor served a deposition notice on Mr. Manche on August 10, 2026, noticing his deposition for August 17, 2026. The Debtor intends to serve requests for the production of documents on Mr. Manche. The Debtor's forthcoming discovery is intended to (i) inquire as to whether Mr. Manche is in fact a valid creditor of the Debtor, as this would impact his standing to litigate the DIP Motion, (ii) inquire into areas which the Debtor believes Mr. Manche may be making factual assertions, or contradicting the Debtor's factual record in support of the DIP Motion, and (iii) should the Court rule that certain issues Mr. Manche seeks to raise are relevant to the DIP Motion, seek reciprocal discovery on those topics from Mr. Manche.

**<u>Scope of DIP Motion</u>**

The Debtor believes the discovery requests must be viewed in light of the actual relief being sought in the DIP Motion. There are three requests for relief:

- A request under section 364 of the Bankruptcy Code to incur post-petition financing. The applicable standard of review for that request is deference to the Debtor's exercise of business judgment and the narrow and specific evidentiary record required by section 364 of the Bankruptcy Code.

- A request to assume an executory contract, the Fenix Agreement, under section 365 of the Bankruptcy Code. The applicable standard of review for that request is, again, deference to the Debtor's exercise of business judgment. In the Fenix Agreement, the Debtor released all claims against the Foundation Parties other than (i) go-forward obligations between the parties; and (ii) fraud and willful misconduct.

- A request under Bankruptcy Rule 9019 to enter into the Global Resolution, the terms of which are set forth in the DIP Term Sheet. The Debtor believes the particular objection that Manche appears to have is the granting of global releases to the Foundation Parties that supplement the releases already granted to the Foundation Parties under the terms of the Fenix Agreement. The additional releases requested in the DIP Motion include (i) releases for any conduct which was carved out of the releases granted under the Fenix Agreement; and (ii) releases for any claims based on conduct following entry into the Fenix Agreement, whether in the performance of the Fenix Agreement or otherwise. The applicable standard of review is that the Global Resolution be within the lowest range of reasonableness and satisfy the *Martin* factors.

**<u>Scheduling Issues</u>**

On August 6, 2026, counsel for Mr. Manche sent the undersigned an email (the "<u>August 6 Request</u>") requesting an extension of Mr. Manche's deadline to file an objection to the DIP Motion from August 20, 2026, to August 24, 2026. The Debtor interpreted the request to be in the nature of agreeing to a modified schedule in advance of the hearing on, among other things, the DIP Motion scheduled for August 27, 2026. While Mr. Manche's counsel had previously raised the possibility of seeking discovery, the August 6 Request neither mentioned seeking

discovery nor mentioned a schedule for expedited discovery. Accordingly, the Debtor interpreted the August 6 Request to mean that Mr. Manche was not seeking discovery prior to an extended objection deadline.

Based on that interpretation, the Debtor obtained the consent of the DIP Lender and determined to agree to an extension until August 24, 2026, subject to three conditions. First, that Mr. Manche provide an issues list outlining his objections by August 19, 2026. Second, that Mr. Manche not attempt to engage in expedited discovery requests following the filing of any objection, meaning to the Debtor that there would not be any discovery from Mr. Manche. Third, that if Mr. Manche did file an objection, he would need to sit for a deposition in Delaware on August 26, 2026.

The undersigned in a telephonic conversation with Mr. Manche's counsel on August 7, 2026 only relayed the first and third conditions and failed to mention the second condition or the underlying assumption for the second condition—that there was not going to be discovery in advance of an objection.

Late in the evening on Friday, August 7, 2026, Mr. Manche's counsel confirmed acceptance of the two conditions that were relayed and separately served the discovery requests. Upon reviewing both the acceptance email and the expedited discovery requests, the undersigned realized he had not conveyed the second condition or the Debtor's interpretation of Mr. Manche's scheduling request and, by email that night, informed Mr. Manche's counsel that there had been an additional condition to the extension.

At a meet and confer on August 9, 2026, the Debtor relayed what its interpretation of the extension email had been (*i.e.*, no pre-objection discovery) and that the undersigned had failed to relay the additional condition and that there was not client authority nor DIP Lender consent to proceed without that condition. The undersigned further stated that had the Debtor appreciated Mr. Manche was seeking expedited discovery, the entirety of the Debtor's response would have been different. At the meet and confer, the Debtor informed Mr. Manche that it would note Mr. Manche's deposition for August 17, 2026. Counsel for Mr. Manche objected based on the belief the parties had agreed otherwise.

The Debtor believes there was no meeting of the minds for an agreement. The Debtor interpreted the August 6 Request, which did not state an intent to seek discovery nor seek a schedule for discovery, to mean that Mr. Manche would not seek discovery in advance of his objection. Mr. Manche believed the intent to seek expedited discovery was implied in the request based on prior correspondence. While both interpretations are reasonable, the Debtor's conditions for an extension would have been different had it understood Mr. Manche's interpretation. On August 13, 2026, the Debtor and counsel for Mr. Manche held a second meet and confer to discuss the discovery dispute and narrow the scope of open issues. Although the discussion was productive, the parties agree that certain issues remain that should be addressed by the Court.

The Debtor is willing to abide by the central agreement and the only written request from Mr. Manche's counsel, an extension of the objection deadline to August 24, 2026. The Debtor would

still require an issues list by August 19, 2026. The only changed condition is that Mr. Manche's deposition occur prior to the objection deadline. And, for the reasons set forth below, the Debtor believes it is essential that Mr. Manche's deposition take place first.

**<u>Deposition of Mr. Manche</u>**

1. <u>Necessity of Mr. Manche's Deposition</u>

In 2025, following his termination as an employee and officer of the Debtor and his removal from the board, Mr. Manche initiated an action under section 225 of the DGCL against the Debtor. The Debtor issued requests for production and interrogatories to Mr. Manche. No documents were produced and Mr. Manche, in large part, either did not respond to the interrogatories or provided incomplete answers. Mr. Manche was facing a motion to compel from the Debtor to provide discovery responses under oath. Mr. Manche also became aware of the federal government's investigation into the market making activities surrounding the launch of the $MOVE token. Mr. Manche did not provide discovery responses under oath but instead chose to dismiss the 225 action with prejudice.

The Debtor seeks the deposition of Mr. Manche to, among other things, test the standing of Mr. Manche to appear before this Court and participate as an active litigant in this chapter 11 case.[2] Mr. Manche's counsel indicated that Mr. Manche would likely invoke the Fifth Amendment if he were called to testify under oath. The Debtor has sought formal confirmation from Mr. Manche on this point and, at the request of Mr. Manche's counsel, informed Mr. Manche that any deposition would inquire into Mr. Manche's involvement with the market making manipulation that is currently the subject of a federal criminal investigation. The Debtor did so to provide ample notice and information to allow Mr. Manche to determine whether he would invoke the Fifth Amendment on those topics. If Mr. Manche confirms in writing he will invoke the Fifth Amendment in any deposition or in response to document requests, the Debtor can avoid the time and expense of issuing discovery and convening a deposition.

The import of Mr. Manche invoking the Fifth Amendment, along with some additional evidence of his conduct, is that under federal evidentiary law, the Debtor will be entitled to a negative inference with respect to Mr. Manche's involvement in the market making manipulation. *See Adkins v. Sogliuzzo*, 625 Fed. Appx. 565, 571 (3d Cir. 2015) (affirming the District Court's grant of an adverse inference against the defendant and holding that "[u]nlike the rule in criminal cases . . . reliance on the Fifth Amendment in civil cases may give rise to an adverse inference against the party claiming its benefits.")(quoting *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir.1994)); *In re Winstar Commc'ns, Inc.*, 348 B.R. 234, 280 (Bankr. D. Del. 2005), *aff'd*, 2007 WL 1232185 (D. Del. Apr. 26, 2007), *aff'd in part, modified in part*, 554 F.3d 382 (3d Cir. 2009) (holding that "[t]he Fifth Amendment does not forbid adverse inferences against parties to civil

[2] Mr. Manche is also seeking discovery regarding the Debtor's entry into the Fenix Agreement and the Transfer Agreement in 2025. The Debtor does not believe those issues are relevant to the relief requested in the DIP Motion. Should the Court allow such discovery, however, the Debtor would seek discovery from Mr. Manche to establish the necessity of entering into those agreements. The Debtor asserts that Mr. Manche's participation in the market making manipulation is the sole cause of the Debtor's insolvency, and that conduct precipitated (i) the need to orderly winddown the Debtor's business which are the primary purpose of both agreements and (ii) the filing of this chapter 11 case.

actions when they refuse to testify in response to probative evidence offered against them.") (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).

That negative inference has a consequence under Delaware law regarding advancement and indemnification of corporate officers and directors. Delaware law provides that an officer or director who engages in criminal conduct is not entitled to advancement or indemnification. *InterMune, Inc. v. Harkonen*, 2023 WL 3337212 at *2 (Del. Ch. May 10, 2023) (holding that a corporate officer convicted of wire fraud could not be indemnified, recognizing that "Section 145 prohibits a Delaware corporation from indemnifying bad faith conduct."); *see also Hermelin v. K-V Pharm. Co.*, 54 A.3d 1093, 1112 (Del. Ch. 2012) ("[I]f the prosecution or the plaintiff in the underlying proceeding established that the indemnitee acted in bad faith, particularly through a showing that the indemnitee knew that his actions were damaging to the company or that his conduct was unlawful, 'that would be conclusive evidence that the [indemnitee] is not entitled to indemnification.'"). Delaware further provides that if a court determines that an officer or director was not entitled to indemnity, the officer or director must repay all funds advanced to the person. *See InterMune, Inc. v. Harkonen*, 2024 WL 3619692, at *1 (Del. Ch. Aug. 1, 2024) (ordering that the advanced sums be repaid due to the litigation being found to be non-indemnifiable under Section 145 and noting that "one might conceive that the bad faith determination itself vitiated [the officer's] right to indemnification.") (citing *Evans v. Avande, Inc.,* 2021 WL 4344020, at *6 (Del. Ch. Sept. 23, 2021) (finding that a director "adjudged to have acted in bad faith . . . can hardly assert that he is entitled to indemnification for a claim where that integrity was found lacking")). Because Mr. Manche's sole claim against the Debtor is one for indemnification, his standing as a creditor would therefore be in serious question.

2. <u>Timing of Mr. Manche's Deposition</u>

The consequences that flow from Mr. Manche invoking the Fifth Amendment are why the Debtor seeks Mr. Manche's deposition at the outset of discovery if he is unwilling to confirm his invocation in advance. There is no reason to undergo the burden and expense of responding to the extensive, expedited discovery Mr. Manche seeks from the Debtor and numerous third parties.

Mr. Manche also has a history, noted above, of abandoning litigation against the Debtor if he is required to answer discovery under oath. The Debtor's concern is that Mr. Manche's strategy is to obtain discovery to which he would not otherwise be entitled without his having any actual intent to litigate any of the substantive (at this point narrow) matters at issue on the motion.[3] The Debtor believes he will either repeat his prior performance and not even sit for a deposition or produce documents, or he will assert his Fifth Amendment rights. For those reasons, the Debtor believes Mr. Manche's deposition and discovery responses should occur first. If Mr. Manche is willing to fully participate in discovery, then the rest of discovery should proceed.

---

[3] To be completely clear, the Debtor believes this is Mr. Manche's personal strategy to manipulate the process, not his counsel's strategy or intent. The Debtor's concerns about Mr. Manche should not be imputed to his counsel. Mr. Manche's counsel is zealously and appropriately representing Mr. Manche.

The Debtor also notes that Mr. Manche's counsel stated a deposition of Mr. Manche cannot occur on August 17, 2026 because counsel is on vacation the entire week. However, that same counsel noticed three separate depositions for that same week.

**Scanlon Deposition**

Mr. Manche noticed the deposition of Mr. Scanlon in his personal capacity without any reference to his current relationship with the Debtor. The Debtor does not have the ability to command attendance or to accept service on Mr. Scanlon's behalf in his individual capacity.

**Proposed Resolution**

Based on the representation that Mr. Manche's lead counsel is not available for depositions next week, the Debtor proposes the following:

a) Mr. Manche provide the Debtor, the DIP Lender, and any party from whom he seeks discovery an issues list on or before August 19, 2026.
b) Mr. Manche be deposed on or before August 24, 2026.
c) Mr. Manche's objection to the DIP Motion be due on August 25, 2026.
d) Mr. Robinson be deposed on August 24, 2026.
e) Mr. Manche and his counsel can either agree with other parties to use August 25, 2026, for depositions or double track depositions on August 26, 2026.

**Requests for Production and Permissible Scope of Discovery**

The Debtor and Mr. Manche have worked through issues on many of the requests for production and Mr. Manche has agreed that many of the requests do not require a response by the Debtor for prosecution of the DIP Motion. Below are what the Debtor believes are the open issues.

1. <u>Requests relating to entry into and negotiation of the Fenix and Transfer Agreements</u>.

The Debtor does not believe entry into a pre-petition contract can be put at issue in the context of a motion to assume a contract under section 365 of the Bankruptcy Code. The Debtor is unaware of any authority that a motion to assume a contract allows an objector to challenge the entry into the contract *ex post facto*.

2. <u>All Payments to or from the Foundation Parties</u>

The Debtor believes this is overbroad and not tailored to the relief requested in the DIP Motion. As noted above, the only historical claims the Debtor might have against the Foundation Parties were for fraud or willful misconduct. The proposed releases under the Global Resolution would release those historical claims and any claims arising after entry into the Fenix Agreement. The applicable standard is whether the proposed settlement falls within the lowest range of reasonableness and satisfying the *Martin* factors. Requesting discovery to do a full forensic accounting of transactions between the parties lacks proportionality to the issues presented to the

Court. The Debtor is willing to produce historical financial records between the Debtor and the Foundation Parties from entry of the Fenix Agreement on December 2, 2025 to present.

All Documents Identifying Formal or Informal Agreements Between the Debtor and Cooper Scanlon, the DIP Lender, or the Foundation Parties

The Debtor raises the same objection as above with respect to the Foundation Parties based on the relief being sought in the DIP Motion, but has produced the Fenix Agreement and the Transfer Agreement. Mr. Scanlon is not receiving a release in the DIP Motion.

3. All Documents Relating to or Provided to the Department of Justice Relating to the Ongoing Criminal Investigation

This request is not relevant to the DIP Motion and appears to be an improper attempt by Mr. Manche to obtain discovery in this Court regarding the scope of a separate, ongoing criminal investigation that may relate to Mr. Manche's conduct.

**Scope of 30(b)(6) Deposition of the Debtor and Deposition of Mr. Robinson**

Mr. Manche's 30(b)(6) deposition notice to the Debtor lists 26 topics of examination which largely mirror the requests for production. The Debtor believes the parties have agreed that Mr. Robinson will sit as both a 30(b)(6) designee and a 30(b)(1) witness within the scope of his authority as an officer of the Debtor. The Parties have further agreed that the scope of the deposition be consistent with the scope of the agreed upon requests for production as may be modified by this Court's ruling on the issues set forth above.

Respectfully,

*/s/ Jeremy W. Ryan*

Jeremy W. Ryan
Partner