McCarter & English

Kate Roggio Buck
Wilmington Office Co-Managing Partner

T. 302-984-6323
F. 302-984-6399

kbuck@mccarter.com

McCarter & English, LLP

Renaissance Centre
405 N. King St.
8th Fl
Wilmington, DE 19801

www.mccarter.com

August 14, 2026

**VIA ECF**

The Hon. Thomas M. Horan
824 North Market Street, 3rd Floor
Wilmington, DE 19801

**Re: In re MVMT Labs, Inc., Case No. 26-11113 (TMH)**

Dear Judge Horan:

I, along with my co-counsel Samuel P. Hershey of White & Case LLP, represent Rushikesh Manche in connection with the above-referenced proceeding. I write regarding certain discovery disputes in connection with the *Debtor's Motion for Entry of (I) Interim and Final Orders (A) Authorizing the Debtor to (1) Obtain Postpetition Financing and (2) Grant Liens, Including Senior Secured Liens, and Superpriority Administrative Expense Claims; and (B) Modifying the Automatic Stay; (II) an Order Authorizing the Assumption of the Fenix Agreement with Movement Network Foundation Pursuant to Sections 365 and 363; (III) an Order Approving the Settlement between the Debtor and the Foundation Parties Pursuant to Bankruptcy Rule 9019; (IV) an Order Scheduling a Final Hearing with Respect to the Foregoing; and (V) an Order Granting Related Relief* [D.I. 19] (the "**DIP Motion**"). I will explain forth some context for the disputes and then address the disputes themselves.

By the Debtor's own account, Mr. Manche is by far the Debtor's largest creditor, with a claim of approximately $1.7 million. *See* Petition [D.I. 1] at 6. Indeed, if all of the creditors identified in the Debtor's petition formed a class, Mr. Manche's claim would constitute nearly 2/3 of that class. *Id.* Mr. Manche's claim is supported by a June 12, 2026 order of Vice Chancellor Laster, which overruled exceptions and adopted the report and recommendation of Magistrate Wright granting summary judgment for Mr. Manche on his claims against the Debtor for advancement, fees-on-fees and prejudgment interest. *See Manche v. Mvmt Labs, Inc.*, No. 2025-1407-CDW, 2026 WL 1729492 (Del.Ch. June 12, 2026) (adopting report and recommendation at *Manche v. MVMT Labs, Inc.*, No. 2025-1407-CDW, 2026 WL 631291 (Del. Ch. Mar. 6, 2026)). Despite Mr. Manche's claim being supported by a final court order, the Debtor classifies Mr. Manche's claim as contingent, unliquidated and disputed. Petition [D.I. 1], at 6. By characterizing Mr. Manche's claim (and other claims, including Delaware state tax claims) in this way, the Debtor purports to qualify for a subchapter V election, which will enable the Debtor to confirm a plan without an impaired accepting class and avoid the absolute priority rule.

Through the DIP Motion, the Debtor seeks $5.7 million of DIP financing. Of that amount, $3.3 million will be used to "complete the winding down of [the Debtor's]

affairs." DIP Motion at 2. The DIP Motion does not explain why the Debtor needs $3.3 million to do what a chapter 7 trustee could do for a small fraction of that price. Indeed, the Debtor seeks to borrow an amount roughly equivalent to the subchapter V cap, which it will use to pay not its prepetition creditors but rather its postpetition professionals and consultants.

Additionally, the Debtor seeks $2.4 million to establish a trust to pursue certain litigation claims—which apparently none of the "15 potential alternative sources of post-petition financing" that the Debtor contacted found credible enough to invest in. It is not clear whose interests are served by the Debtor borrowing $2.4 million to pursue these claims, given that the Debtor's creditor pool supposedly totals less than that amount. Indeed, rather than pay Mr. Manche's claim, the Debtor is borrowing an amount greater than Mr. Manche's claim with which to sue him.

The DIP also requires the Debtor to assume an agreement, known as the "Fenix Agreement," which the Debtor entered into with Movement Network Foundation ("**Foundation**") and Movement Limited ("**ML**") in December 2025—*i.e.*, during the preference period for insider transactions. The Fenix Agreement provides releases to, among others, the "Foundation Parties," a broadly defined term that encompasses "Foundation, its affiliates (including Movement Limited) and their current or future officers, employees, directors, agents (and the employers of any independent directors), representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates and predecessors in interest, each in their capacity as such." *See* DIP Motion at 57.

The releases provided in the DIP Motion, which are based on the Fenix Agreement, are not the sort of releases that one typically finds in DIPs. Releases in DIPs are generally limited in scope, cover only the DIP Lender and are subject to a challenge period. The releases in the DIP Motion are none of those things. They provide that "the Debtor and its estate, on their own behalf and on behalf of each of their predecessors, successors and assigns, to the maximum extent permitted by law, unconditionally, irrevocably, fully, and forever release, remise, acquit, relinquish, waive and discharge the DIP Lender and each of [the Foundation Parties] from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorney's fees, costs, expenses or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, including without limitation all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, that exist on the date hereof, whether arising out of the prior conduct of the Foundation Parties or any interaction or relationship (alleged or otherwise) of the Debtor or any other person with any Foundation Party." *See* DIP Motion at 57-58.

The Debtor offers these broad releases despite the fact that there is an ongoing DOJ investigation regarding the Debtor. Worse, the DIP Motion allows one set of insiders to buy a release by financing the Debtor's claims against a different

set of insiders. It is not clear how such a DIP (which is really a *sub rosa* plan) could be legal, much less in the best interest of creditors.

In light of these concerns, Mr. Manche served the Debtor with discovery regarding the DIP Motion. Counsel to Mr. Manche and counsel to the Debtor met and conferred several times and Mr. Manche agreed to narrow his requests to matters pertaining solely to the DIP Motion. Nonetheless, the below disputes remain. Mr. Manche respectfully asks the Court for its assistance in resolving them.

**1) The Debtor's efforts to deny Mr. Manche DIP discovery and evade his objection**

On May 6, 2025, the Debtor "recei[ved] a grand jury subpoena [] from the United States Attorney's Office for the Northern District of California ("DOJ"), concerning an investigation into [certain] market making activities . . . for which [the Debtor] asserted . . . that Manche was responsible." *Manche v. MVMT Labs, Inc.*, No. 2025-1407-CDW, 2026 WL 631291, at *3 (Del. Ch. Mar. 6, 2026). Mr. Manche has not been charged with, much less convicted of, any crime.

The Debtor has not yet served discovery on Mr. Manche in connection with the DIP Motion. However, the Debtor has told Mr. Manche that it intends to do so. It is not clear what discovery relevant to the DIP Motion Mr. Manche could possess. Absent a legitimate basis, the effort would merely serve to manufacture a situation in which Mr. Manche will invoke his Fifth Amendment rights. It appears the Debtor will then use Mr. Manche's invocation of his Fifth Amendment rights for two purposes: (i) to try to deny him discovery, and (ii) to seek an adverse inference that can somehow be used to disallow his claim and exclude him from these proceedings. To this end, the Debtor has sought to delay the deposition of its own witnesses so that Mr. Manche can be deposed—and pushed to invoke his Fifth Amendment rights—first.

This is improper for at least three reasons. First, Mr. Manche is not aware of any authority—and the Debtor has not identified any—holding that a creditor's invocation of his constitutional rights excuses the Debtor from producing discovery regarding a contested motion. The Debtor carries the burden on the DIP Motion, and it cannot obtain Court approval for that Motion by strategically avoiding discovery. Nor should Mr. Manche be denied his rights as a creditor because he has invoked his rights as a U.S. citizen.

Second, the Debtor has refused to produce any discovery not related to the DIP. At the same time, the Debtor seeks discovery from Mr. Manche, who self-evidently lacks discovery related to the DIP, as a pretext to force Mr. Manche to invoke his Fifth Amendment rights. Similarly, Mr. Manche sought information from the Debtor regarding the DOJ investigation, which the Debtor has refused to produce due to the sensitivities. If the Debtor refuses to produce information that is either not relevant to the DIP or relevant to the DOJ investigation, Mr. Manche should be allowed to do the same.

Third, even if the Debtor managed to force Mr. Manche to invoke his Fifth Amendment rights, it is not clear what adverse inference would result, much less how the Debtor could use it to disallow Mr. Manche's claim. Mr. Manche's claim arises from expenses he incurred in connection with a DOJ investigation. The Delaware Chancery Court has ruled that Mr. Manche is entitled to payment of those expenses. The Debtor cannot obtain an adverse inference through DIP discovery and use it to nullify the Chancery Court's order regarding an unrelated proceeding.

**2) The Debtor's efforts to conceal drafts of the Fenix Agreement**

The Debtor initially refused to produce drafts of the DIP agreement or the Fenix Agreement. The Debtor has since agreed to produce drafts of the DIP agreement but continues to refuse to produce drafts of the Fenix Agreement. The Debtor asserts that, under section 365, drafts of contractual agreements are irrelevant.

But this is not a standard motion to assume an executory contract under section 365. Rather, the Debtor's assumption of the Fenix Agreement is a condition to funding imposed by the DIP Lender. It would be a convenient way to avoid DIP discovery if debtors could put key terms in extrinsic documents and then refuse to produce drafts of those documents. But they cannot. The Fenix Agreement is a key component of the DIP that gives broad releases to the Debtor's insiders, and Mr. Manche is entitled to understand how it was negotiated and agreed.

**3) Historical transactions between the various Movement entities**

The Debtor seeks a finding that the DIP is "fair, reasonable, in good faith, negotiated at arm's length, [and] reflects the Debtor's exercise of prudent business judgment consistent with its fiduciary duties." DIP Motion at 59. It is the Debtor's burden to prove that it deserves this finding.

The Debtor, Foundation and ML all have variations of the same name and together formed the organizational structure through which the Debtor operated its cryptocurrency business. Nonetheless, the Debtor contends that Foundation and ML are not affiliates of the Debtor and the DIP is not an insider DIP. To test that assertion, Mr. Manche seeks discovery regarding the historical relationship between the Debtor, Foundation and ML. That discovery will show (i) whether this is an insider DIP, and (ii) whether a DIP is really necessary, as Foundation may have historically funded the Debtor without the requirements imposed by the DIP. This discovery will also show what estate claims and causes of action, including preference and fraudulent transfer claims, the Debtor may be releasing by assuming the Fenix Agreement as part of the DIP. The Debtor has offered no evidence on any of these points.

**4) Foundation's attempts to deny Mr. Manche discovery**

Despite receiving sweeping releases through the DIP Motion, Foundation has not appeared in these cases and has refused to produce discovery. Specifically, on August 8, 2026, Mr. Manche served discovery on Foundation's counsel.

Foundation's counsel responded that they are not authorized to accept service on Foundation. As a result, Mr. Manche must serve Foundation, a Grand Cayman entity, through the Hague Convention. That cannot be achieved before the conclusion of this chapter V case, much less before the final DIP hearing. Indeed, Foundation's position leaves unclear whether Mr. Manche can obtain meaningful discovery from Foundation before his objection is due.

* * *

Mr. Manche thanks the Court for its attention to this matter and will be prepared to address these topics further at the August 17 hearing.

Respectfully submitted,

*/s/ Kate Roggio Buck*

cc: All counsel of record via ECF