**Exhibit B**

**(Blackline)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>MVMT Labs, Inc.,<br><br>Debtor.[1] | Chapter 11 (Subchapter V)<br><br>Case No. 26-11113 (TMH)<br><br>**Re: Docket No. 19** |

**SECOND INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO (A) OBTAIN POSTPETITION FINANCING AND (B) GRANT LIENS, INCLUDING SENIOR SECURED LIENS, AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; AND (II) MODIFYING THE AUTOMATIC STAY**

Upon the motion (the "Motion") of MVMT Labs, Inc., [2] as debtor and debtor in possession (the "Debtor") in the above-captioned case (the "Chapter 11 Case") under subchapter V of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), seeking entry of an interim order (this ", which was entered on July 20, 2026 [Docket No. 33] (the "First Interim DIP Order"), and a final order (the "Final DIP Order"), pursuant to sections 105, 362, 363, 364, 503, 506 and 507 of the Bankruptcy Code, Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-1, 4001-2 and 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), which was supplemented in accordance with the record of the hearings held by the Court on August 27, 2026, September 3, 2026, and September 11, 2026, including a request for the entry of a second interim order (this "Second

[1] The last four digits of the Debtor's federal tax identification number are 5217. The location of the Debtor's corporate headquarters is 166 Geary Street, Suite 1500, #1853, San Francisco, CA 94108Debtor's service address is c/o Legalinc Corporate Service Inc., 131 Continental Drive, Suite 305, Newark, New Castle County, DE 19713.

[2] Capitalized terms used but not otherwise defined herein have the meanings set forth in the Motion or the DIP Loan Documents, as applicable.

Interim DIP Order" and, together with the First Interim DIP Order, the "Interim DIP Orders")

that, among other things:

(i) authorize the Debtor to obtain postpetition financing on a superpriority senior secured basis, consisting of a new-money multi-draw term loan facility in an aggregate amount of up to $5.7 million5,700,000 (the "DIP Facility") on the terms and conditions set forth in the Amended and Restated Senior Secured, Superpriority Debtor-in-Possession Loan and Security Agreement, a copy of which is annexed hereto as Exhibit 1 (as further amended or otherwise modified from time to time in accordance with its terms, the "DIP Credit Agreement" and, together with any related documents, the "DIP Loan Documents"),[2][3] between the Debtor, as borrower, and MNF DIP SPV Ltd, as lender (the "DIP Lender"), comprising: (a) a new-money term loan in the principal amount of $750,000 (the "First Interim DIP Loan"), which shall be funded as a single disbursement within seven days after the entry of the First Interim DIP Order, subject to the satisfaction of all conditions set forth in Section 3.1 of the DIP Credit Agreement; (b) subject to entry of the Final DIP Order, a new-money, delayed-draw term loan in the aggregate principal amount of up to $2.55 million, which will be funded in two disbursements, the first3,450,000 (the "Second Interim DIP Loan") and, together with the First Interim DIP Loan, the "Interim DIP Loans"), which shall be funded within seven days after the entry of the Finalthis Second Interim DIP Order, subject to the satisfaction of all conditions set forth in Section 3.1 of the DIP Credit Agreement, and the second (the "Third DIP Loan" and, collectively with the Interim DIP Loan and the Second DIP Loan, the "Initial DIP Loans") no later than 90 days following the Petition Date (as defined below), subject to the satisfaction of all conditions set forth in Section 3.1 of the DIP Credit Agreement; and (c) subject to entry by this Court of an order, in form and substance acceptable to the DIP Lender in its sole discretion, confirming a plan under subchapter V of chapter 11 of the Bankruptcy Code, a new-money, delayed-draw term loan in the principal amount of $2.4 million1,500,000, which loan will be funded in a single disbursement on the date upon which all conditions set forth in Sections 3.1 and 3.2 of the DIP Credit Agreement have been satisfied (the "Final DIP Loan" and, together with the InitialInterim DIP Loans, the "DIP Loans");

(ii) authorize the Debtors to enter into the DIP Credit Agreement, which amends and supersedes in its entirety the credit agreement approved in the First Interim DIP Order (the "Original DIP Credit Agreement").

(iii) (ii) approve the terms of the DIP Credit Agreement, and authorize the Debtor to execute, deliver and perform under the DIP Loan Documents;

[2] Capitalized terms used but not otherwise defined herein have the meaning set forth in the Motion or the DIP Loan Documents, as applicable[3] A redline showing revisions contained in the DIP Credit Agreement relative to the Original DIP Credit Agreement is annexed hereto as Exhibit 2.

(iv) ~~(iii)~~ authorize the Debtor to incur the obligations due or payable to or for the benefit of the DIP Lender under the DIP Loan Documents (collectively, the "DIP Obligations") and pay such DIP Obligations when due and payable under the DIP Loan Documents and this Second Interim DIP Order, including without limitation the DIP Fees (as defined below), each of which will be paid-in-kind rather than in cash, and to perform such other acts as may be required or appropriate in connection therewith;

(v) ~~(iv)~~ authorize and direct the Debtor to use the proceeds of the DIP Loans (the "DIP Proceeds") and the DIP Cash Collateral (as defined below) in accordance with the DIP Loan Documents to (a) fund the postpetition working capital needs of the Debtor; (b) pay fees, costs and expenses of the DIP Facility on the terms and conditions described in this Second Interim DIP Order and the DIP Loan Documents; and (c) pay the allowed administrative costs and expenses of the Chapter 11 Case, in each case, solely in accordance with the DIP Loan Documents, the Approved Budget (as defined below), and this Second Interim DIP Order;

(vi) ~~(v)~~ provide that, subject to the terms and conditions of the DIP Loan Documents and the Subchapter V Plan (as defined below), the DIP Loans will convert (the "Exit Conversion") to an exit facility on the terms set forth in the DIP Credit Agreement and the other DIP Loan Documents (the "Exit Facility") upon substantial consummation of a confirmed plan of reorganization, in form and substance acceptable to the DIP Lender, in its sole discretion (the "Subchapter V Plan");

(vii) ~~(vi)~~ authorize the Debtor to grant to the DIP Lender, subject only to the Carve-Out and the Permitted Prior Liens (each as defined below): (a) allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code; and (b) valid, binding, continuing, enforceable, non-avoidable, and automatically and fully perfected security interests and liens (the "DIP Liens") on the DIP Collateral (as defined below) and all proceeds thereof, including without limitation all DIP Proceeds and any property that would comprise "cash collateral" of the DIP Lender in accordance with section 363(a) of the Bankruptcy Code (the "DIP Cash Collateral"), pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, to secure all DIP Obligations;

(viii) ~~(vii)~~ authorize the DIP Lender and the Debtor to take all commercially reasonable actions to implement and effectuate the terms of this Second Interim DIP Order and the DIP Loan Documents;

(ix) ~~(viii)~~ modify the automatic stay imposed by section 362(a) of the Bankruptcy Code to the extent set forth herein and as necessary to permit the Debtor and the DIP Lender to implement and effectuate the terms and provisions of the DIP Loan Documents and this Second Interim DIP Order, and authorize the DIP Lender, upon the occurrence and continuation of an Event of Default (as defined in the DIP Credit Agreement), and subject to the Remedies Notice Period (as defined

below), to exercise rights and remedies, as contemplated hereby and by the DIP Loan Documents, without further order of the Court;

(x) ~~(ix)~~ waive any applicable stay (including under Bankruptcy ~~Rules 6003 and~~Rule 6004) and provide for immediate effectiveness of this Second Interim DIP Order;

(xi) ~~(x)~~ subject to entry of the Final DIP Order (but retroactive to the Petition Date (as defined below)), grant waivers of (a) the Debtor's and its estate's right to surcharge against the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code and (b) the equitable doctrine of marshaling with respect to the DIP Collateral; and

(xii) ~~(xi)~~ schedule a final hearing to consider entry of the Final DIP Order and final approval of the DIP Facility (the "Final Hearing").

This Court having considered the Motion, the DIP Credit Agreement, the *Declaration of Michael Robinson in Support of MVMT Labs, Inc.'s Chapter 11 Petition and First Day Motions* [Docket No. ~~[●~~21], the papers filed with this Court, the evidence submitted and arguments made at the hearing held before this Court on July 20, 2026 (the "First Interim Hearing") and at the hearings held before this Court on August 27, 2026, September 3, 2026 and September 11, 2026 (collectively, the "Second Interim Hearing" and, together with the First Interim Hearing, the "Interim Hearings"), and upon the record of the Chapter 11 Case; and adequate notice having been given in accordance with Bankruptcy Rules 2002, 4001, and 9014 and all applicable Local Rules, and no other or further notice being required~~ under the circumstances~~; and all objections with respect to the entry of this Second Interim DIP Order, if any, having been withdrawn, resolved or overruled by this Court; and this Court having found that granting the relief requested in the Motion is fair and reasonable and in the best interests of the Debtor, its estate, creditors and other parties in interest, and is essential for the continued operation of the Debtor and the preservation of the value of the Debtor's assets, and represents a sound exercise of the Debtor's business judgment; and after due deliberation and consideration, having found good and sufficient cause therefor,

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW BASED UPON THE MOTION, THE REPRESENTATIONS OF COUNSEL AND THE EVIDENCE SUBMITTED DURING THE INTERIM ~~HEARING~~HEARINGS.**[34]

A. **Petition Date**. On July 15, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code in this Court, commencing this Chapter 11 Case.

B. **Debtor in Possession**. The Debtor is operating its business and managing its property as a debtor in possession pursuant to sections 1182 and 1184 of the Bankruptcy Code.

C. **Jurisdiction and Venue**. This Court has jurisdiction over the Chapter 11 Case and the Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this Chapter 11 Case and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Court has authority to enter this Second Interim DIP Order consistent with Article III of the United States Constitution.

D. **Appointment of Subchapter V Trustee / Committee Formation**. On July 16, 2026, Jeffrey Schwendeman was appointed as subchapter V trustee in the Chapter 11 Case (the "Subchapter V Trustee"). The Court has not ordered the appointment of any official committee in this Chapter 11 Case pursuant to section 1102(a)(3) of the Bankruptcy Code.

E. **Notice**. Sufficient and adequate notice ~~under the circumstances~~ has been given of the Motion and entry of this Second Interim DIP Order pursuant to Bankruptcy Rule 9013 and Local Rule 9013-1(m) to all entities entitled thereto, and no other or further notice of the Motion or of the entry of this Second Interim DIP Order need be provided to any entity.

[34] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014, and shall take effect and be fully enforceable immediately upon entry hereof. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

F. **No Credit Available on More Favorable Terms**. Given its current financial condition and the circumstances of the Chapter 11 Case, the Debtor is unable to obtain financing from sources other than the DIP Lender on terms more favorable than the DIP Facility. The Debtor is unable to procure sufficient financing in the form of unsecured credit allowable as an administrative expense. The Debtor is also unable to obtain sufficient secured credit without granting to the DIP Lender the DIP Liens and the DIP Superpriority Claims (as defined below), subject and subordinate to the Carve-Out and the Permitted Prior Liens, as set forth herein and in the DIP Loan Documents.

G. **Good Cause**. Good cause has been shown for the entry of this Second Interim DIP Order, and the relief requested in the Motion and the entry of this Second Interim DIP Order are in the best ~~interest~~interests of the Debtor, its estate, its creditors and other parties in interest.

H. **Need for Postpetition Financing**. The Debtor does not have sufficient and reliable sources of working capital to continue to operate its business in the ordinary course without the financing requested in the Motion. The financing provided pursuant to this Second Interim DIP Order and the DIP Loan Documents will permit the Debtor, among other things, to: (i) pay the fees, costs, and expenses incurred in connection with the Chapter 11 Case; (ii) fund any obligations benefiting from the Carve-Out; (iii) continue the orderly operation of its business; (iv) make payroll; and (v) satisfy other working capital and operational needs. In addition, subject to the terms set forth in the DIP Credit Agreement, the DIP Lender has agreed to the Exit Conversion, which affords the Debtor the assurance of having funding of the Subchapter V Plan.

I. **Willingness to Provide Financing**. The DIP Lender has committed to provide financing to the Debtor subject to: (i) entry of this Second Interim DIP Order; (ii) approval of

the terms and conditions of the DIP Facility and the DIP Loan Documents; (iii) satisfaction of the closing conditions set forth in the DIP Loan Documents; and (iv) findings by this Court that the DIP Lender is extending credit to the Debtor pursuant to this Second Interim DIP Order and the DIP Loan Documents in good faith, and that the DIP Lender's claims, superpriority claims, security interests, liens, and other protections granted pursuant to this Second Interim DIP Order and the DIP Loan Documents will have the protections provided by section 364(e) of the Bankruptcy Code. The DIP Lender is an affiliate of Movement Network Foundation ("Foundation"), which is the entity responsible for overseeing the $MOVE ecosystem that the Debtor helped to develop. Neither Foundation nor its affiliates are affiliates of the Debtor but have been contract counterparties with the Debtor. ~~In addition, Foundation is responsible for overseeing the $MOVE ecosystem, which the Debtor helped to develop.~~ The DIP Lender's willingness to provide DIP Loans, other than the Interim DIP ~~Loan~~Loans, is conditioned on the Final DIP Order providing that the Debtor and its estate, on their own behalf and on behalf of each of their predecessors, successors and assigns, to the maximum extent permitted by law, unconditionally, irrevocably, fully, and forever release, remise, acquit, relinquish, waive and discharge the DIP Lender and each of Foundation, its affiliates (including Movement Limited) and their current or future officers, employees, directors, agents (and the employers of any independent directors), representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates and predecessors in interest, each in their capacity as such (collectively, the "Foundation Parties"), from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorney's fees, costs, expenses or judgments of every

type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, including without limitation all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, that exist on the date hereof, whether arising out of the prior conduct of the Foundation Parties or any interaction or relationship (alleged or otherwise) of the Debtor or any other person with any Foundation Party, including without limitation (a) any so-called "lender liability" or equitable subordination claims or defenses; (b) any and all Avoidance Actions (as defined below) or other claims and causes of action arising under the Bankruptcy Code; and (c) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, and avoidability of the DIP Liens and the DIP Obligations; *provided, however*, that such releases shall not include any rights of the Debtor with respect to any breach by a Foundation Party of its obligation under the Fenix Agreement (as defined in the Motion) (the "DIP Releases"). For the avoidance of doubt, in the event that the DIP Lender assigns or participates any portion of its rights and obligations under the DIP Facility to any person or entity that is not a Foundation Party, no such assignee or participant shall benefit from the DIP Releases.

J. **DIP Budget and Reporting**. The Debtor prepared and delivered to the DIP Lender and its advisors an initial budget, which was updated pursuant to the DIP Loan Documents and is annexed hereto as Exhibit ~~2~~3 (including as ~~it~~such may be updated from time to time pursuant to the DIP Credit Agreement with the approval of the DIP Lender, the "Approved Budget"). The Approved Budget reflects the Debtor's projected expenses for the ~~four-month~~eighteen-week period beginning on the Petition Date and shall be updated every four weeks on a rolling basis, with reconciliation on a line-item basis of actual results to projections,

and with narrative explanations prepared by the Debtor of any material variances exceeding the permitted variance (other than variances in the line item for the fees and expenses of the DIP Lender's professional advisors) of 25% (the "Permitted Variance"), to be certified by an authorized person of the Debtor and approved in form and substance by the DIP Lender. The ~~Debtor shall be required~~DIP Lender relied, in part, upon the Debtor's agreement to comply with the Approved Budget ~~in all material respects for purposes of the DIP Facility in accordance with this Interim DIP Order, subject only~~, subject to the Permitted Variance, in making its determination to enter into the DIP Facility and consent to the use of the DIP Cash Collateral as provided in this Second Interim DIP Order. The Approved Budget as prepared by the Debtor, its management and its advisors, is found by this Court to be reasonable under the circumstances. Each subsequent Approved Budget shall be filed with this Court and provided to counsel to the United States Trustee and the Subchapter V Trustee. ~~The Approved Budget has been prepared by the Debtor, its management and its advisors, and is found by this Court to be reasonable under the circumstances. The DIP Lender is relying, in part, upon the Debtor's agreement to comply with the Approved Budget (subject to the Permitted Variance) and the terms of the DIP Loan Documents in determining to enter into the DIP Facility and to consent to the use of the DIP Cash Collateral as provided in this Interim DIP Order.~~

K. **Use of DIP Proceeds and DIP Cash Collateral**. As a condition to the Debtor's entry into the DIP Loan Documents and the extension of credit under the DIP Facility, the Debtor has agreed that the DIP Proceeds and the DIP Cash Collateral shall be used solely in accordance with the terms and conditions of this Second Interim DIP Order, the DIP Loan Documents, and the Approved Budget (subject to the Permitted Variance).

L. **Good Faith**. Based upon the papers filed and the proceedings of record in this Chapter 11 Case: (i) the extension of credit and financial accommodations under the DIP Facility, as provided by the DIP Loan Documents, is fair, reasonable, in good faith, negotiated at arm's length, reflects the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and is supported by reasonably equivalent value and fair consideration; (ii) the DIP Facility and the DIP Loans thereunder are being provided by the DIP Lender in "good faith" within the meaning of section 364(e) of the Bankruptcy Code in express reliance on the protections offered thereby; and (iii) the liens, claims and other covenants and payments as set forth in the DIP Loan Documents and this Second Interim DIP Order, as well as the protections afforded parties acting in "good faith" under section 364(e) of the Bankruptcy Code, are integral, critical and essential components of the DIP Facility provided by the DIP Lender to the Debtor. Accordingly, the DIP Facility, the DIP Liens and the DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Second Interim DIP Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

M. **Section 506(c) and Marshaling**. As material inducement to the DIP Lender's agreement that its liens and superpriority claims shall be subject to payment of the Carve-Out and the Permitted Prior Liens, upon the entry of the Final DIP Order and effective as of the Petition Date, the DIP Lender is entitled to (i) a waiver of the Debtor's and its estate's right to surcharge against the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code and (ii) a waiver of the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, DIP Liens and the DIP Obligations in favor of the DIP Lender.

N. **Requisite Authority**. Subject to the entry of this Second Interim DIP Order, the Debtor has all requisite corporate or entity power and authority to execute and deliver the DIP Loan Documents to which it is a party and to perform its obligations thereunder.

O. **Immediate Entry**. The Debtor has requested entry of this Second Interim DIP Order pursuant to Bankruptcy Rule 4001(b)(2) and (c) and Local Rule 4001-2. Absent granting the interim relief sought by the Motion, the Debtor's estate could be immediately and irreparably harmed. Thus, sufficient cause exists for immediate entry of this Second Interim DIP Order pursuant to Bankruptcy Rule 4001(b)(2) and (c) and Local Rule 4001-2.

NOW, THEREFORE, based upon the foregoing findings and conclusions, the Motion and the record before this Court, and after due consideration, this Court having found good and sufficient cause therefor,

**IT HEREBY IS ORDERED THAT:**

1. **Motion Granted**. The relief requested by the Motion is granted as set forth herein. Entry into the DIP Credit Agreement and ~~other DIP Loan Documents is authorized and approved, and~~ the use of the DIP Proceeds and the DIP Cash Collateral on an interim basis ~~is~~are authorized, in each case, subject to the terms and conditions set forth in this Second Interim DIP Order and in the DIP Loan Documents, including the Approved Budget (subject to the Permitted Variance). Upon entry into the DIP Credit Agreement, as authorized hereby, the Original DIP Credit Agreement shall cease to be binding on the parties thereto.

2. **Authorization of the DIP Facility**. The Debtor ~~is~~ expressly and immediately is authorized and empowered to execute and deliver the DIP Loan Documents, and to incur and perform the DIP Obligations in accordance with, and subject to, the terms of this Second Interim DIP Order and the DIP Loan Documents, and to execute, deliver and perform under all

instruments, certificates, agreements and documents that may be required or necessary for its performance under the DIP Loan Documents and the creation and perfection of the DIP Liens described in and provided for by this Second Interim DIP Order and the DIP Loan Documents. The Debtor hereby is authorized to pay any principal, interest, fees, expenses and other amounts subject to and in accordance with the DIP Loan Documents and this Second Interim DIP Order, as such amounts become due and owing, without further Court approval (except as otherwise provided herein or in the DIP Loan Documents), including without limitation the DIP Fees and any reasonable and invoiced fees and expenses of counsel to the DIP Lender, as set forth herein and in the DIP Loan Documents, subject to paragraph 25 of this Second Interim DIP Order, and to take any other actions that may be necessary or appropriate, all to the extent provided in this Second Interim DIP Order and the DIP Loan Documents. Upon execution and delivery, the DIP Loan Documents shall represent legal, valid and binding obligations of the Debtor, enforceable against the Debtor and its estate in accordance with their terms. Each officer and director of the Debtor acting individually is authorized hereby to execute and deliver each of the DIP Loan Documents.

3. **DIP Obligations**. The DIP Loan Documents and this Second Interim DIP Order shall constitute and evidence the validity and binding effect of the DIP Obligations. All DIP Obligations shall be enforceable against the Debtor, its estate and any successors thereto, including without limitation the Subchapter V Trustee, or (i) if the Chapter 11 Case remains in chapter 11 of the Bankruptcy Code, but not subject to subchapter V of chapter 11, (ii) in any case under chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Case, or (iii) in any other proceeding superseding or related to any of the foregoing (each, a "Successor Case"). The DIP Obligations shall include, but not be limited to: (a) the payment by the Debtor of the

unpaid principal amount of and all accrued and unpaid interest on the DIP Loans outstanding at any time, together with all fees, expenses and other monetary obligations owed by the Debtor under the DIP Loan Documents and this Second Interim DIP Order, as and when due, whether at maturity, by acceleration, or otherwise, and (b) the payment and performance of all covenants, duties, agreements, obligations and liabilities of the Debtor to the DIP Lender under the DIP Loan Documents and this Second Interim DIP Order. The Debtor and its successors shall be jointly and severally liable for repayment of any funds advanced pursuant to the DIP Loan Documents and the DIP Obligations. The DIP Obligations shall become due and payable, without notice or demand, on the Maturity Date (as defined in the DIP Credit Agreement) or as otherwise set forth in the DIP Loan Documents. No authorized obligation, payment, transfer or grant of collateral as security hereunder or under the DIP Loan Documents (including any DIP Obligation or DIP Lien) to or in favor of the DIP Lender shall be stayed, restrained, voidable, avoidable or recoverable, under the Bankruptcy Code or under any applicable law, or be subject to any disgorgement, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination, claim, counterclaim, charge, assessment, cross-claim, defense or any other liability or challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for any reason.

4. **Authorization to Borrow**. Subject to the terms and conditions set forth in the DIP Loan Documents and this Second Interim DIP Order, the Debtor hereby is authorized to borrow under the DIP Facility, which borrowings shall be used solely for purposes permitted under the DIP Loan Documents, including without limitation to provide working capital for the Debtor and to pay interest, fees, costs, charges and expenses, in each case, in accordance with this Second Interim DIP Order, the DIP Loan Documents and the Approved Budget (subject to

the Permitted Variance). Once repaid, the DIP Loans may not be re-borrowed. Under no circumstances shall the DIP Lender have any obligation to lend any amounts above its commitment to make the DIP Loans pursuant to and subject to the limitations set forth in the DIP Loan Documents.

5. **DIP Collateral**. The term "DIP Collateral" means, collectively, the Debtor's rights, title and interest in, to and under all its assets, including without limitation, in each case, whether now owned or existing or hereafter acquired, created or arising, and wherever located, all of the Debtor's property, whether real or personal, tangible or intangible, including, without limitation, all real estate, inventory, equipment, fixtures, leasehold interests, commercial tort claims, deposit accounts, investment property, documents, accounts, chattel paper (whether electronic or tangible), intercompany loans, general intangibles (including patents, trademarks and other intellectual property), instruments, insurance policies, supporting obligations and proceeds of all of the foregoing and, subject to entry of the Final DIP Order, the proceeds of any causes of action under Bankruptcy Code sections 502(d), 544, 545, 547, 548, 549, 550 and 553 or any other similar state or federal law ("Avoidance Actions"), but not such Avoidance Actions themselves.

6. **Disposition of Collateral**. Notwithstanding anything otherwise provided herein, it shall be deemed an Event of Default if the Debtor sells, transfers, leases, encumbers or otherwise disposes of any portion of the DIP Collateral, other than in connection with the payments contemplated under this Second Interim DIP Order or the Approved Budget (subject to the Permitted Variance), without the prior written consent of the DIP Lender.

7. **DIP Liens**. To secure the DIP Obligations, immediately upon and effective as of the entry of this Second Interim DIP Order, without the necessity of execution, recordation or

filing of any perfection document or instrument, or the possession or control by the DIP Lender of or over any DIP Collateral, and without any further action by the DIP Lender, the DIP Lender hereby is granted valid, binding, continuing, fully perfected, enforceable and non-avoidable security interests and liens on the DIP Collateral as follows, in all respects subject to the Carve-Out:

(i) **First Liens on Unencumbered Property**. Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Lender hereby is granted a valid, binding, continuing, enforceable, non-avoidable, fully perfected first-priority senior security interest in and continuing lien on all of the DIP Collateral to the extent such property is not otherwise subject to Permitted Prior Liens.

(ii) **Liens Junior to Certain Other Liens on Encumbered Property**. Pursuant to Bankruptcy Code section 364(c)(3), the DIP Lender hereby is granted a valid, binding, enforceable, non-avoidable and fully perfected security interest in and continuing lien on all of the DIP Collateral that is subject to a valid, perfected, enforceable and unavoidable lien or security interest on the Petition Date or subject to a valid lien or security interest in existence on the Petition Date that is perfected subsequent thereto as expressly permitted by section 546(b) of the Bankruptcy Code (the "Permitted Prior Liens"), which shall be senior to the security interest and liens in favor of the DIP Lender with respect to such DIP Collateral.

(iii) **DIP Cash Collateral**. For the avoidance of doubt, all of the Debtor's cash, including any cash in deposit accounts, wherever located, whether as original collateral or proceeds of other DIP Collateral, constitutes or shall constitute "cash

collateral" of the DIP Lender within the meaning of section 363(a) of the Bankruptcy Code.

Other than as set forth herein or in the DIP Loan Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Case or any Successor Case, and shall be valid and enforceable against any trustee appointed in the Chapter 11 Case or any Successor Case, upon the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), or upon the dismissal of the Chapter 11 Case or any Successor Case. The DIP Liens shall not be subject to subordination or avoidance, including without limitation under sections 510, 549, or 550 of the Bankruptcy Code.

8. **DIP Superpriority Claims**. Subject to the Carve-Out, the DIP Lender hereby is granted, pursuant to section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in the above-captioned case, regardless of whether it proceeds under chapter 11 or chapter 7 of the Bankruptcy Code (collectively, the "DIP Superpriority Claims") for the DIP Facility, the DIP Obligations, and any other liabilities and obligations of the Debtor under this Second Interim DIP Order and the DIP Loan Documents, with priority over any and all administrative expense claims and unsecured claims against the Debtor or its estate in the above-captioned case, regardless of whether it proceeds under chapter 11 or chapter 7 of the Bankruptcy Code, which DIP Superpriority Claims shall be senior to the rights of the Debtor, its estate and its successors or other representatives to the extent permitted by law.

9. **No Obligation to Extend Credit**. The DIP Lender shall have no obligation to make any loan or advance under the DIP Loan Documents unless (i) all of the applicable conditions precedent and other terms under the DIP Loan Documents and this Second Interim

DIP Order have been satisfied in full or waived by the DIP Lender (in its sole discretion), and (ii) no default (or event that would give rise to a default after the passage of time) shall have occurred and be continuing under the DIP Loan Documents (including this Second Interim DIP Order).

10. **Use of DIP Proceeds**. The Debtor shall be permitted to use DIP Proceeds and the DIP Cash Collateral only for the purposes specifically set forth in this Second Interim DIP Order, the DIP Loan Documents, and the Approved Budget (subject to the Permitted Variance).

11. **No Monitoring Obligation**. The DIP Lender shall not have any obligation or responsibility to monitor the Debtor's use of the DIP Facility, and the DIP Lender may rely upon the Debtor's representation that the use of the DIP Facility at any time is in accordance with the requirements of this Second Interim DIP Order and the DIP Loan Documents, including the Approved Budget (subject to the Permitted Variance).

12. **Authorization to Use DIP Cash Collateral**. Subject to the terms and conditions of this Second Interim DIP Order and the DIP Loan Documents, and in accordance with the Approved Budget (subject to the Permitted Variance), the Debtor is authorized to use the DIP Cash Collateral until the date on which it has received a Termination Declaration Notice (as defined below), subject to the Remedies Notice Period.

13. **Amendment of the DIP Loan Documents**. The Debtor and the DIP Lender may amend, waive or modify the DIP Loan Documents, in each case in accordance with their terms, and no further approval of this Court shall be required for any amendment, waiver or modification (each, a "Non-Material Amendment") that does not materially and adversely affect the Debtor or (i) shorten the maturity of the DIP Facility; (ii) increase the principal amount of, the rate of interest on, or the fees payable in connection with the DIP Facility; or (iii) change any

Event of Default or add or amend any covenants, in each case, so as to be materially more restrictive on the Debtor; *provided*, *however*, that notice of any such Non-Material Amendment shall be provided by the Debtor to ~~the~~ (a) the United States Trustee, (b) the Subchapter V Trustee, and (c) any statutory committee (if appointed), three days in advance of its effectiveness, to the extent reasonably practicable. The United States Trustee and the Subchapter V Trustee each shall retain the right to object to any such Non-Material Amendment on the grounds that the proposed amendment is material and requires further order of this Court. After obtaining the DIP Lender's prior written consent, the Debtor is authorized and empowered, without further notice, hearing or approval of this Court, to amend, modify, supplement or waive any provision of the DIP Loan Documents to reflect a Non-Material Amendment in accordance with the provisions thereof. Upon its effectiveness, any Non-Material Amendment shall be filed with this Court within three (3) business days. Any material amendment of the DIP Loan Documents by the DIP Lender and the Debtor shall be subject to approval by this Court upon notice and a hearing.

14. **DIP Facility Reporting**. The Debtor shall comply with the reporting requirements and obligations set forth in the DIP Loan Documents.

15. **Perfection of DIP Liens**. This Second Interim DIP Order shall be sufficient and conclusive evidence of the creation, validity, perfection and priority of the DIP Liens granted herein, without the necessity of filing or recording any financing statement, mortgage, deed of trust, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens or to entitle the DIP Lender to the priorities granted herein.

Notwithstanding the foregoing, the DIP Lender is authorized, but not required, to file, as it deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens and other similar documents to perfect or otherwise evidence the DIP Liens in accordance with applicable non-bankruptcy law, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided*, *however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens. The DIP Lender may, in its discretion, file an electronic copy or photocopy of this Second Interim DIP Order as a financing statement with any filing or recording office or with any registry of deeds or similar office in addition to or in lieu of such financing statements, notices of lien or similar instruments.

16. **Modification of Automatic Stay**. The automatic stay of section 362 of the Bankruptcy Code hereby is modified to the extent necessary to permit the Debtor and the DIP Lender to accomplish the transactions contemplated by this Second Interim DIP Order, to permit the Debtor to grant the DIP Liens and, subject to the procedures described in paragraph 21 hereof and the Remedies Notice Period, to allow the DIP Lender to enforce its rights and remedies under this Second Interim DIP Order and the DIP Loan Documents.

17. **Proceeds of Subsequent Financing**. If the Debtor, any trustee, any examiner or any responsible officer subsequently appointed in the above-captioned case, regardless of whether it proceeds under chapter 11 or chapter 7 of the Bankruptcy Code, shall obtain credit or incur debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the indefeasible repayment in full in cash of all DIP Obligations (other than unasserted contingent obligations that expressly survive termination of the DIP Loan Documents) and the termination of the DIP Lender's obligation to extend credit

under the DIP Facility, then, after satisfaction of the Carve-Out, and unless otherwise agreed by the DIP Lender, all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender to be distributed in accordance with this Second Interim DIP Order and the DIP Loan Documents.

18. **Payments Held in Trust**. Except as expressly permitted in this Second Interim DIP Order or the DIP Loan Documents, or otherwise ordered by this Court, including in respect of the Carve-Out and the Permitted Prior Liens, in the event that any person or entity receives any payment on account of a security interest in the DIP Collateral or receives any DIP Collateral or any proceeds of DIP Collateral prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Loan Documents and termination of the DIP Facility in accordance with the DIP Credit Agreement, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust and shall immediately turn over all such proceeds to the DIP Lender, for application in accordance with the DIP Credit Agreement and this Second Interim DIP Order.

19. **Maintenance of DIP Collateral**. Until the payment in full of the DIP Obligations, the Debtor shall: (i) insure the DIP Collateral as required under the DIP Loan Documents; and (ii) maintain the cash-management system consistent with the terms and conditions of any order(s) governing the Debtor's cash-management systems and the DIP Loan Documents.

20. **Right to Credit Bid**. Subject to section 363(k) of the Bankruptcy Code, unless the court for cause orders otherwise, the DIP Lender may credit bid all or any portion of its claims, including, without limitation, the DIP Obligations and the DIP Superpriority Claims, in connection with any proposed sale of any, all or substantially all of the Debtor's assets, whether

occurring pursuant to section 363 of the Bankruptcy Code or included as part of a plan under section 1190 of the Bankruptcy Code, including a plan subject to confirmation under section 1191 of the Bankruptcy Code, or a sale or disposition by a chapter 7 trustee for the Debtor under section 725 of the Bankruptcy Code. In connection with any such credit bid by the DIP Lender, the Debtor shall, upon reasonable advance notice by the DIP Lender, provide for the assignment of such DIP Lender's right to purchase the acquired assets to one or more of the applicable DIP Lender's sub-agents or a newly formed acquisition vehicle.

21. **Events of Default; Exercise of Remedies**.

(i) **Event of Default**. Immediately upon the occurrence and during the continuation of an Event of Default (and without the need for any further relief from the automatic stay), the DIP Lender may declare, subject to the Remedies Notice Period, (a) all DIP Loans, other DIP Obligations and any other amounts owing under any DIP Loan Documents to be immediately due and payable; (b) the termination, reduction or restriction of any further commitment to extend credit to the Debtor to the extent any such commitment remains (including, for the avoidance of doubt, any commitment to fund any DIP Loan); (c) the termination of the DIP Facility and any DIP Loan Documents as to any future liability of the DIP Lender, but without affecting any of the DIP Liens, the DIP Loans, any other DIP Obligation or the DIP Releases; and (d) the termination, reduction or restriction on the ability of the Debtor to use DIP Proceeds or DIP Cash Collateral, other than, during the Remedies Notice Period referenced below, for payroll in accordance with the Approved Budget (any such declaration made by the DIP Lender to the Debtor, a "Termination Declaration," and the date which is

~~the earliest to occur of any such Termination Declaration and the Maturity Date, the "Termination Declaration Date~~.").~~.~~

(ii) **Termination Declaration Notice**. The Termination Declaration shall not be effective until notice has been provided by electronic mail to counsel to the Debtor, counsel to any statutory committee (if appointed), the Subchapter V Trustee and counsel to the United States Trustee (the "Termination Declaration Notice").

(iii) **Exercise of Remedies**. Five business days following the receipt of the Termination Declaration Notice by the parties listed above or such extended period ordered by this Court (the "Remedies Notice Period"), the DIP Lender shall have relief from the automatic stay without any further action in the Chapter 11 Case, may foreclose on all or any portion of the DIP Collateral and may pursue any and all remedies available to it under this Second Interim DIP Order, the DIP Loan Documents and applicable law. During the Remedies Notice Period, the Debtor, the Subchapter V Trustee and any statutory committee (if appointed) shall be entitled to seek an emergency hearing before the Court and, with respect to the Debtor only, for the sole purpose of contesting whether an Event of Default has occurred. Unless during such period the Court determines that an Event of Default has not occurred or is not continuing or the Court orders otherwise, the automatic stay shall automatically be terminated as to the DIP Lender at the end of the Remedies Notice Period without further notice or order.

22. **No Waiver by Failure to Seek Relief**. The rights and remedies of the DIP Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP

Lender may have under ~~this~~the Interim DIP ~~Order~~Orders, the DIP Credit Agreement, and other DIP Loan Documents, applicable law or otherwise. The failure or delay on the part of the DIP Lender to seek relief or otherwise exercise available rights and remedies shall not constitute a waiver of any of its respective rights or remedies. Except as expressly set forth herein, none of the rights or remedies of the DIP Lender under this Second Interim DIP Order, the DIP Credit Agreement, or the other DIP Loan Documents shall be deemed to have been amended, modified, suspended or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by the DIP Lender. No consent of the DIP Lender required hereunder shall be implied by any inaction or acquiescence by the DIP Lender.

23. **Carve-Out.**

(i) **Priority of Carve-Out**. The DIP Liens and the DIP Superpriority Claims shall be subject and subordinate to payment of the Carve-Out. The Carve-Out shall be senior to all claims and liens over all assets of the Debtor, including any DIP Collateral, except for any Permitted Prior Liens.

(ii) **Carve-Out**. The term "Carve-Out" shall mean the sum of: (a) statutory fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6), together with interest payable thereon pursuant to applicable law and any fees payable to the Clerk of the Court; (b) reasonable fees and expenses incurred by a trustee and payable under section 726(b) of the Bankruptcy Code in an aggregate amount not to exceed $25,000 (without regard to the Carve-Out Trigger Notice); (c) to the extent allowed, the accrued and unpaid reasonable fees and expenses of the Subchapter V Trustee; (d) to the extent allowed, accrued and unpaid reasonable fees and expenses of professionals employed by the Debtor and any statutory

committee appointed in the Chapter 11 Case, pursuant to sections 327 and 330 of the Bankruptcy Code, not to exceed 125% (accounting for the Permitted Variance) of the total amounts set forth for such professionals, on an aggregate basis, in the Approved Budget; and (e) all allowed professional fees and expenses incurred after delivery of a Carve-Out Trigger Notice (as defined below), in an aggregate amount not to exceed $150,000. Notwithstanding anything to the contrary contained herein or in the DIP Loan Documents, the Carve-Out shall be senior to the DIP Liens and the DIP Superpriority Claims.

(iii) **Carve-Out Trigger Notice**. For purposes hereof, "Carve-Out Trigger Notice" means a written (or electronic) notice delivered by the DIP Lender to the Debtor, the Subchapter V Trustee, counsel to the United States Trustee, and counsel to any statutory committee (if appointed), stating that an Event of Default has occurred and that the DIP Lender is invoking the Carve-Out cap.

(iv) **Carve-Out Account**. On the day that a Carve-Out Trigger Notice is received by the Debtor, the Carve-Out Trigger Notice shall constitute a demand to the Debtor to transfer cash to a segregated account (the "Carve-Out Account") in an amount sufficient to satisfy the Carve-Out. The funds on deposit in the Carve-Out Account shall be available only to satisfy the obligations owed to the persons benefiting from the Carve-Out in accordance with the terms of this Second Interim DIP Order, and the DIP Lender shall have a security interest in and a lien upon the Carve-Out Account, which shall be available to the DIP Lender following satisfaction in cash in full of all the Carve-Out obligations as set forth herein. The amount in the Carve-Out Account shall be reduced on a

dollar-for-dollar basis for amounts included in the Carve-Out that are paid after the delivery of the Carve-Out Trigger Notice, and the Carve-Out Account shall not be replenished for amounts so paid. The failure of the Carve-Out Account to satisfy in full the amount set forth in the Carve-Out shall not affect the priority of the Carve-Out.

(v) **No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees**. The DIP Lender shall not be liable or otherwise responsible for the payment or reimbursement of any fees or disbursements of any estate professionals incurred in connection with the Chapter 11 Case or any Successor Case under any chapter of the Bankruptcy Code. Nothing in this Second Interim DIP Order or otherwise obligates the DIP Lender in any way to pay compensation to or to reimburse expenses of any such professionals, or to guarantee that the Debtor or its estate have sufficient funds to pay such compensation or reimbursement. Nothing herein shall be construed as consent to the allowance of any fees or expenses of any person in the Chapter 11 Case or any Successor Case, or of any other person or entity, or shall affect the right of the Debtor, the DIP Lender or any other party in interest to object to the allowance or payment of any such fees and expenses or amounts incurred or requested.

24. **Approval of DIP Fees**. In consideration for the DIP Facility, the DIP Lender shall be paid all fees, expenses and other amounts payable under the DIP Loan Documents as such become due, including without limitation (collectively, the "DIP Fees"): (i) a commitment fee of 2.00% on undrawn commitments, earned upon entry of the Final DIP Order and payable in kind monthly; (ii) a closing fee of 2.00% of the First Interim DIP Loan, earned upon entry of the

First Interim DIP Order and payable in kind on the Closing Date (as defined in the DIP Credit Agreement); and (iii) an exit fee (the "Exit Fee") of 2.00% of the aggregate commitment, earned and payable in kind on the date of the Final DIP Loan in the event that the Subchapter V Plan does not provide for other treatment of the Exit Fee in accordance with the terms hereof, or the DIP Obligations have not otherwise been indefeasibly paid in full in cash. For the avoidance of doubt, all DIP Fees shall be paid-in-kind by capitalizing the relevant DIP Fee and adding it to (and thereby increasing) the aggregate then-outstanding principal balance of the DIP ~~Loan~~Loans (each, a "PIK Fee"). Each PIK Fee shall be treated as principal and shall itself accrue interest from and after the date it was due, which shall be due and payable on the Maturity Date (as defined in the DIP Credit Agreement).

25. **DIP Lender's Professional Fees.** The professionals retained by the DIP Lender shall provide summary copies of any invoices by email to counsel to the Debtor, counsel to the United States Trustee and the Subchapter V Trustee. Such invoices shall not be required to contain time entries and may be redacted or modified to the extent necessary to delete any privileged or confidential information. The provision of such invoices shall not constitute a waiver of any privilege or of any benefits of the attorney-work-product doctrine. ~~Subject to and in accordance with the Final DIP Order, the~~The Debtor shall promptly pay in full all such invoiced fees and expenses at the conclusion of the Review Period (as defined below) other than any Disputed Invoiced Fees (as defined below). Any objections raised by the Debtor, the United States Trustee, or the Subchapter V Trustee with respect to such invoices (the "Disputed Invoiced Fees") must be in writing and state the grounds therefor and must be submitted to the applicable professional within 10 days of the receipt of such invoice (the "Review Period") (to be followed by the filing with this Court, if necessary, of a motion or other pleading, with at least

10 days' prior written notice by the submitting party of any hearing on such motion or other pleading). The United States Trustee and the Subchapter V Trustee retain the right to seek copies of invoices containing the detailed time entries of any professional and to seek to obtain unredacted copies of any invoices. No professional retained by the DIP Lender shall be required to file an application seeking compensation for services or reimbursement of expenses with this Court. For the avoidance of doubt, in the event that the Debtor repays or refinances the DIP Loans prior to the entry of the Final DIP Order, the Debtor shall pay, in cash, all fees and expenses of the DIP Lender's professionals incurred prior to the date of such repayment of refinancing on such date.

26. **Indemnification**. The Debtor and its estate shall indemnify, pay and hold harmless the DIP Lender and each of the Foundation Parties against any and all losses, liabilities, claims, damages, costs and expenses (including reasonable attorney's fees and expenses) incurred in connection with or arising out of the DIP Facility, the DIP Loan Documents, or the use or proposed use of DIP Proceeds, except to the extent resulting from their gross negligence, willful misconduct or bad faith, as determined by a final non-appealable judgment of a court of competent jurisdiction. This indemnification obligation shall (i) constitute an allowed administrative expense claim under section 503(b) of the Bankruptcy Code; (ii) survive the repayment of the DIP Obligations and the termination of the DIP Facility; and (iii) be payable on demand without further order of the Court.

27. **Proofs of Claim**. The DIP Lender shall not be required to file a proof of claim in the above-captioned case in respect of the DIP Obligations, regardless of whether the above-captioned case proceeds under chapter 11 or chapter 7 of the Bankruptcy Code, and the entry of this Second Interim DIP Order shall be deemed to constitute a timely filed proof of

claim. Any order entered by this Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in the above-captioned case, regardless of whether it proceeds under chapter 11 or chapter 7 of the Bankruptcy Code, shall not apply to the DIP Lender. Notwithstanding the foregoing, the DIP Lender may, in its sole discretion, file (and amend or supplement) a proof of claim or aggregate proofs of claim in the Chapter 11 Case for any claim allowed herein.

28. **Limitations on Use of DIP Proceeds and DIP Collateral**. No DIP Proceeds or DIP Collateral shall be used, directly or indirectly, by any of the Debtor, the Subchapter V Trustee, any committee (if one is appointed), any other trustee or estate representative appointed in the above-captioned case, regardless of whether it proceeds under chapter 11 or chapter 7 of the Bankruptcy Code, or any other person or entity: (i) for any purpose that is prohibited under the Bankruptcy Code, the Interim DIP ~~Order~~Orders or the Final DIP Order; or (ii) to investigate, commence, prosecute, join in or finance in any way (or reimburse for expenses incurred or to be incurred in connection with) any action, suit, arbitration, proceeding, application, motion, objection or other litigation adverse to the interests of the DIP Lender or any other Foundation Party, including with respect to or related to: (a) the claims, liens or security interest of the DIP Lender, or its rights and remedies under the Interim DIP ~~Order~~Orders or the Final DIP Order, as the case may be, including to commence or prosecute or join in any action against the DIP Lender seeking (x) to avoid, subordinate or recharacterize the DIP Obligations, (y) any monetary, injunctive or other affirmative relief against the DIP Lender or (z) to prevent or restrict the exercise by the DIP Lender of any of its rights or remedies under the Interim DIP ~~Order~~Orders or the Final DIP Order; (b) any claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness or obligations with respect to matters that otherwise would fall

within the scope of the definition of DIP Releases as used herein; (c) the stipulations made by the Debtor and approved by the Interim DIP ~~Order~~Orders or Final DIP Order; or (d) any other action that with the giving of notice or passing of time would result in an Event of Default.

29. **Waivers**.

(i) **Limitation on Charging Expenses**. Subject to the entry of the Final DIP Order, no costs or expenses of administration of the Chapter 11 Case or any conversion of the Chapter 11 Case to a chapter 7 case shall be charged against or recovered from or against the DIP Lender or the DIP Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Lender.

(ii) **No Marshaling**. Subject to entry of the Final DIP Order, in no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the DIP Obligations and all proceeds shall be received and applied in accordance with this Second Interim DIP Order and the DIP Loan Documents.

30. **No Lender Liability**. In determining to make any loan (whether under the DIP Loan Documents or otherwise) or to permit the use of DIP Cash Collateral, the DIP Lender shall not owe any fiduciary duty to the Debtor or its creditors, shareholders or estate, and the DIP Lender shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor by virtue of making the DIP Loans. Nothing in ~~this~~the Interim DIP ~~Order~~Orders, the DIP Loan Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender of (i) any

liability for any claims arising from the prepetition or postpetition activities of the Debtor or its affiliates (as defined in section 101(2) of the Bankruptcy Code) in the operation of their business, or in connection with their restructuring efforts; or (ii) any liability for any alleged fiduciary duties to the Debtor, its creditors, shareholders or estate. The DIP Lender shall not, in any way or manner, be liable or responsible for (a) the safekeeping of the DIP Collateral, (b) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (c) any diminution in value thereof or (d) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the DIP Collateral shall be borne by the Debtor.

31. **No Third-Party Beneficiaries**. Except as explicitly provided for herein, this Second Interim DIP Order does not create any rights for the benefit of any professional, third party, creditor, landlord, lessor, equity holder or any direct, indirect or incidental beneficiary.

32. **Insurance Proceeds and Policies**. The DIP Lender shall be, and shall be deemed to be, without any further action or notice, named as an additional insured and loss payee on each insurance policy maintained by the Debtor that in any way relates to the DIP Collateral.

33. **No Waivers or Modifications of Second Interim DIP Order**. The Debtor has agreed not to — and shall not — seek any modification or extension of this Second Interim DIP Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Lender.

34. **Binding Effect of this Second Interim DIP Order**. The terms and provisions of this Second Interim DIP Order shall become valid and binding upon (and, as applicable, inure to the benefit of) the Debtor, the DIP Lender, all other creditors of the Debtor, all other parties in interest and their respective successors and assigns, including the Subchapter V Trustee and any

other trustee or other fiduciary hereafter appointed in the Chapter 11 Case, any Successor Case, or upon dismissal of the Chapter 11 Case or any Successor Case; *provided, however*, under no circumstances shall the DIP Lender have any obligation to permit the use of DIP Collateral (including DIP Cash Collateral) by or extend any financing to any chapter 7 trustee, chapter 11 trustee, or similar responsible person appointed for the Debtor's estate.

35. **Discharge**. Except as otherwise agreed in writing by the DIP Lender, the DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization or liquidation in the Chapter 11 Case, notwithstanding the provisions of section 1192 of the Bankruptcy Code, unless the DIP Obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan. Subject to entry of the Final DIP Order, and upon the substantial consummation of the Subchapter V Plan and subject to the terms of the DIP Credit Agreement, all DIP Loans automatically shall convert to the Exit Facility without further notice to or order or other approval of the Court, act or action under applicable law, regulation, order or rule, or the vote, consent, authorization or approval of any person or entity (including the board of directors of the Debtor, except as otherwise required by the DIP Loan Documents). Solely for purposes of this paragraph 35, the DIP Loan Documents as in effect after the occurrence of the Exit Conversion are referred to as the "Exit Facility Documents". Upon the satisfaction or waiver of the conditions to effectiveness set forth in the Exit Facility Documents, the Debtor or its successor under the Subchapter V Plan (the "Litigation Trustee") shall be authorized and directed, in each case to the extent necessary, appropriate or desirable, to (i) enter into any notes, documents or agreements in connection with the Exit Facility, including, without limitation, any documents required in connection with the creation, perfection or continuation of the liens securing the Exit Facility, (ii) grant such liens

and security interests as necessary to provide security for the Exit Facility in accordance with the Exit Facility Documents, (iii) continue to perform all of its obligations under the Exit Facility Documents, and (iv) take all such other actions as are necessary, appropriate or desirable in connection with the consummation of the transactions contemplated by the Exit Facility Documents. The Subchapter V Plan shall provide, among other things, that: (a) the Exit Facility shall continue to accrue interest, which shall be paid-in-kind, at the rates applicable to the DIP Loans, until all amounts owing thereunder are indefeasibly repaid in full; (b) recoveries from any claims prosecuted or settled by the Litigation Trustee shall be distributed according to a waterfall, whereby cash shall be used first, after the payment of current — and reservation for future — reasonable expenses of the Litigation Trustee, to repay the Exit Facility prior to any other distributions to creditors; and (c) all DIP Liens, DIP Superpriority Claims, and other protections in favor of the DIP Lender shall survive confirmation and remain in full force and effect until all obligations under the DIP Loan Documents (including the DIP Loans) and the Exit Facility are indefeasibly paid in full in cash in accordance with the terms of the Subchapter V Plan and the Exit Facility Documents.

36. **Survival**. To the extent provided in this Second Interim DIP Order, the provisions of this Second Interim DIP Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (i) confirming any chapter 11 plan in the Chapter 11 Case; (ii) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; (iii) dismissing the Chapter 11 Case or any Successor Case; or (iv) pursuant to which this Court abstains from hearing the Chapter 11 Case or any Successor Case. The terms and provisions of this Second Interim DIP Order, including the claims, liens, security interests and other protections granted to the DIP Lender pursuant to this Second Interim DIP Order and the DIP

Loan Documents, shall continue in the Chapter 11 Case, in any Successor Case, or following dismissal of the Chapter 11 Case or any Successor Case, and shall maintain their priority as provided by this Second Interim DIP Order until, in respect of the DIP Facility, all the DIP Obligations, pursuant to the DIP Loan Documents and this Second Interim DIP Order, have been paid in full (such payment being without prejudice to any terms or provisions contained in the DIP Facility that survive such discharge by their terms). The terms and provisions concerning the indemnification of the DIP Lender shall continue in the Chapter 11 Case, in any Successor Case, following dismissal of the Chapter 11 Case or any Successor Case and following termination of the DIP Facility or the indefeasible repayment of the DIP Obligations.

37. **Necessary Actions**. The Debtor is authorized and directed to take such actions as are reasonable and appropriate to implement the terms of this Second Interim DIP Order and the DIP Loan Documents.

38. **Enforceability**. This Second Interim DIP Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and ~~this Interim DIP Order~~ shall take effect and be enforceable immediately upon entry thereof. Notwithstanding Bankruptcy Rules 4001(a)(~~3~~4), 6004(h), or ~~7062~~any other applicable Bankruptcy Rules, any applicable Local Rules, or Rule 62(a) of the Federal Rules of Civil Procedure, this Second Interim DIP Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Second Interim DIP Order.

39. **Second Interim DIP Order Controls.** In the event of any conflict or inconsistency between or among the terms or provisions of the First Interim DIP Order, this Second Interim DIP Order and any of the DIP Loan Documents, the terms and provisions of this Second Interim DIP Order shall govern and control.

40. **Headings.** All paragraph headings used in this Second Interim DIP Order are for ease of reference only and shall not affect the construction or interpretation hereof.

41. **Service**. The Final Hearing is scheduled for ~~August 27~~October 1, 2026, at ~~11:00 a.m~~__:___.m. (Eastern Time) before the Honorable Thomas M. Horan, in the United States Bankruptcy Court for the District of Delaware. Within two business days following entry of this Second Interim DIP Order, the Debtor shall serve or cause to be served by United States mail, first-class postage prepaid, notice of entry of this Second Interim DIP Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of the Second Interim DIP Order and the Motion, on (i) the parties having been given notice of the Interim ~~Hearing~~Hearings; (ii) any party ~~which~~that has filed prior to such date a request for notices with this Court; (iii) the Subchapter V Trustee; and (iv) all parties as required by Local Rule 2002-1(b). The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final DIP Order shall file written objections with the Court no later than ~~August 20~~September 24, 2026, at ~~4:00 p.m.~~12 noon (Eastern Time), which objections shall be served so as to be actually received on or before such date and time on: (a) counsel to the Debtor, Potter Anderson & Corroon LLP, 1313 N. Market Street, 7th Floor, Wilmington, DE 19801-6108, Attn: Jeremy W. Ryan (jryan@potteranderson.com) and Gregory J. Flasser (gflasser@potteranderson.com); (b) the Subchapter V Trustee, Jeffrey Schwendeman, RPA Advisors, LLC, 45 Eisenhower Drive, Paramus, NJ 07652, (jschwendeman@rpaadvisors.com); (c) counsel to the DIP Lender, Allen Overy Shearman Sterling US LLP, 599 Lexington Avenue, New York, NY 10022, Attn: Fredric Sosnick (fsosnick@aoshearman.com) and William S. Holste (william.holste@aoshearman.com), and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, Attn: Kenneth Enos (kenos@ycst.com); and (d) the Office of the United States Trustee for

Region 3: District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801 (Attn: Joseph James McMahon, Jr., Esq. (joseph.mcmahon@usdoj.gov)). The Final Hearing may be continued from time to time without further notice other than as given in open court.

42. **Retention of Jurisdiction**. This Court shall retain jurisdiction over all matters arising from or related to the DIP Loan Documents or this Second Interim DIP Order.

# Exhibit 1

## DIP Credit Agreement

**Exhibit 2**

**Redline**

**Exhibit 3**

**~~Initial~~ Approved Budget**