**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>MVMT LABS, INC.,<br><br>Debtor. | Chapter 11 (Subchapter V)<br><br>Case No. 26-11113 (TMH)<br><br>**Hearing Date: October 1, 2026 at 11:00 am**<br>**Objection Deadline: September 24, 2026 at 4:00 pm**<br><br>**Re: D.I. 19, 169, 170, 171 & 176** |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF**
**METAVERSE TECHNOLOGY COMPANY – FZE**
**TO ENTRY OF THE PROPOSED FINAL DIP ORDER**

Metaverse Technology Company – FZE ("Metaverse"), by and through its undersigned counsel, submits this limited objection and reservation of rights (the "Objection") to final approval of the *Debtor's Motion for Entry of (I) Interim and Final Orders (A) Authorizing the Debtor to (1) Obtain Post-Petition Financing and (2) Grant Liens, Including Senior Secured Liens, and Superpriority Administrative Expense Claims; and (B) Modifying the Automatic Stay; (II) an Order Authorizing the Assumption of the Fenix Agreement with Movement Network Foundation Pursuant to Sections 365 and 363; (III) an Order Approving the Settlement Between the Debtor and the Foundation Parties Pursuant to Bankruptcy Rule 9019; (IV) and Order Scheduling a Final Hearing with Respect to the Foregoing; and (V) an Order Granting Related Relief* [D.I. 19] (the "DIP Motion") and entry of the proposed final order attached to the *Notice of Final Hearing Regarding DIP Motion* [D.I. 170] (the "Proposed Final Order"). In support thereof, Metaverse respectfully states as follows:

## PRELIMINARY STATEMENT

1. Metaverse is a creditor and party in interest. It timely filed Claim No. 16 in the amount of $9,251,270.47 based on the Debtor's breach of an advisory agreement. Metaverse therefore may appear and be heard under 11 U.S.C. § 1109(b).

2. Metaverse does not oppose the Debtor's receipt of necessary postpetition financing, does not seek to disturb funding already authorized on an interim basis, and does not ask the Court to derail the Debtor's reorganization efforts. The financing may preserve value that otherwise would be lost.

3. This Objection concerns the following provisions. The Proposed Final Order would combine financing approval with: (a) a final Rule 9019 settlement; (b) extraordinarily broad estate releases in favor of the DIP Lender and the Foundation Parties; (c) binding effect against all creditors and parties in interest; and (d) plan and litigation trust terms that give the DIP Lender substantial control over the trust, its trustee, its targets, and future releases. Yet material components of Proposed Final Order remain undisclosed or undefined, including the "Manche Settlement" and the schedule of "Contributed Claims" that the DIP Lender and the Debtor will agree later.

4. The asymmetry is material. The Foundation Parties may contribute claims to the Litigation Trust, retain the benefit of those claims as counterclaims if they are sued, and receive 33% of certain trust recoveries. At the same time, the trust is forbidden from investigating or pursuing claims adverse to the Foundation Parties, and the Debtor would release the Foundation Parties and additional persons whom the Debtor and DIP Lender may identify later. The Court and creditors need a sufficient record to evaluate that exchange without knowing the claims, the released parties, the settlement terms, and the basis for the Debtor's valuation and investigation.

5. Metaverse accordingly requests entry of a final financing order only with targeted protections: defer the final releases and Rule 9019 approval until the complete bargain is disclosed and supported; preserve enforcement of the Fenix Agreement by an estate representative with practical authority and resources; state that no plan or litigation trust term is

approved before confirmation; and confirm that no independently owned claim, defense, or remedy of Metaverse or another creditor against a nondebtor is released or adjudicated. Accordingly, Metaverse provides proposed additions to the Proposed Final Order attached as Exhibit A.

## RELEVANT BACKGROUND

6. The Debtor commenced this case on July 15, 2026 ("Petition Date"). The Debtor's DIP Motion states that it has no material operating assets, approximately $60,000 in cash, residual contractual and indemnification rights, and potential litigation assets, including claims against former officers, directors, advisors, consultants, and counterparties. D.I. 19 ¶¶ 28–30.

7. The proposed lender, MNF DIP SPV Ltd., is an affiliate of Movement Network Foundation. D.I. 19 ¶ 39. The DIP Motion acknowledges that a broad release of a counterparty at the outset of a case is "unusual" and explains that continued funding was conditioned on a courtapproved postpetition release of the Foundation Parties. *Id.* ¶¶ 7–8.

8. The financing and releases also concern transactions completed shortly before bankruptcy. According to the DIP Motion, the Debtor received $1.2 million from Move Ind. Inc. in a team related transaction and, under the December 2, 2025 Fenix Agreement, transferred its remaining intellectual property and key contracts and gave up token distribution rights in exchange for $6.9 million, including $1 million of loan forgiveness, and other undertakings. *Id.* ¶¶ 6, 21.

9. The Debtor seeks assumption of the Fenix Agreement as part of this financing package. The DIP Motion describes undertakings for certain token obligations, prepetition releases, and remaining potential claims, including fraud or willful misconduct. D.I. 19 ¶¶ 6–8.

The agreement itself is identified as filed under seal. *Id.*, Ex. B. Metaverse relies here on the public disclosures and reserves the right to address restricted material through an authorized procedure.

10. On September 17, 2026, the Debtor reported that it, Rushikesh Manche, the DIP Lender, and Foundation Parties had reached a settlement in principle after mediation. The Debtor represented that it would submit a motion to approve that settlement and a revised interim order. D.I. 169 ¶¶ 4–5.

11. The same day, the Debtor filed the Proposed Final Order. D.I. 170. Proposed paragraph 37 would release the DIP Lender, the Foundation, its affiliates (including Movement Limited), and a broad group of present and future related persons from all estate claims of every type, known or unknown, including avoidance actions and equitable subordination claims. D.I. 170-1 ¶ 37. The only express substantive carveout preserves Debtor rights for breach of the Fenix Agreement. *Id.*

12. Proposed paragraph 38 would approve the "Global Resolution" under Rule 9019 and § 105(a) as fair, reasonable, and in the best interests of the estate and would make its terms binding on the Debtor, the estate, and all parties in interest. *Id.* ¶ 38. Proposed paragraph 34 separately states that the Final DIP Order binds all creditors and parties in interest and their successors and assigns. *Id.* ¶ 34.

13. The Second Amended DIP Credit Agreement defines "Contributed Claims" as claims arising from the $MOVE launch, the September 9, 2024 Tripartite Agreement, the November 26, 2025 Asset Transfer Agreement, and the Fenix Agreement—but leaves those claims to be identified on a schedule "to be mutually agreed by the DIP Lender and the Debtor." D.I. 170-1, Second Amended DIP Credit Agreement § 1.1.

14. The same agreement requires a plan acceptable to the DIP Lender in its sole discretion. Among other things, the plan must: prohibit the Litigation Trust from investigating or financing any litigation adverse to Foundation Parties; use a trust agreement consented to by the DIP Lender; appoint a trustee acceptable to the DIP Lender in its sole discretion; grant full releases to Foundation Parties; allow Foundation Parties to retain defensive use of contributed claims; pay Foundation 33% of trust recoveries above $12.5 million through $33.5 million; and release specified persons plus "additional parties" whom the Debtor and DIP Lender may later agree to release. *Id*. (definition of "Subchapter V Plan," clauses (a), (d)–(h)).

15. The entered Second Interim DIP Order already prevents DIP proceeds or collateral from being used to investigate or pursue litigation adverse to the DIP Lender or Foundation Parties. D.I. 171 ¶ 28. The proposed plan restriction would extend that practical disability to the Litigation Trust, even as proposed paragraph 37 nominally preserves the Debtor's Fenix enforcement rights.

16. As of this Objection, the Proposed Final Order does not attach the Manche Settlement or a completed schedule of Contributed Claims. Nor does it identify the additional parties who may receive plan releases. Those missing terms bear directly on the value, scope, and fairness of the Global Resolution.

## ARGUMENT

### I. FINAL RULE 9019 APPROVAL REQUIRES A COMPLETE RECORD

17. Rule 9019 permits approval of a compromise after notice and a hearing. The Court must balance the value of compromised claims against the settlement's value to the estate, considering: (1) probability of success; (2) collection difficulty; (3) litigation complexity, expense, inconvenience, and delay; and (4) the paramount interests of creditors. *Myers v. Martin*

*(In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). Settlements are favored, but bankruptcy courts must examine them carefully. *In re Nutraquest, Inc.*, 434 F.3d 639, 644–45 (3d Cir. 2006). The record must permit an informed, independent judgment rather than conclusory approval. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968).

18. That analysis cannot be completed on the present record. The Court is asked to approve one "Global Resolution," but the proposed order and incorporated credit agreement leave essential consideration undefined: the Manche Settlement is not attached; the Contributed Claims will be placed on a later schedule; additional release recipients may be selected later; and the revised filing supplies no claim-by-claim account of the value or litigation posture of the claims being contributed, retained, or released. The Debtor asserts that it knows of no viable Foundation claims and emphasizes litigation expense, jurisdictional risks, prepetition releases, and financing benefits. D.I. 19 ¶¶ 89–92. Those positions deserve consideration, but should be tested against the scope and value of the revised bargain.

19. The missing schedule is especially significant to Metaverse and similarly situated creditors. It could include claims against Metaverse arising from the $MOVE launch, the Tripartite Agreement, the Asset Transfer Agreement, or Fenix. The Foundation Parties would receive trust economics from those claims while retaining their defensive use and controlling who may investigate claims against them. Without disclosure, creditors cannot assess either side of that bargain or test whether it serves the estate rather than one financing counterparty.

20. The proximity and scope of the underlying prepetition transactions likewise warrant a developed record. The DIP Motion describes transfers of team value, intellectual property, key contracts, and token distribution rights within approximately eight months of the

Petition Date. That fact alone does not establish avoidability or wrongdoing. It does, however, make it necessary to identify what estate claims were investigated, by whom, on what information, and how their release was valued, particularly where paragraph 37 expressly releases avoidance actions in favor of the lender's affiliate and related parties.

21. The Court should therefore defer final Rule 9019 approval and the DIP Releases unless and until the Debtor discloses the complete settlement, claim schedule, release recipients, and supporting evaluation, and a disinterested estate fiduciary has had a meaningful opportunity to review them.

## II. THE RELEASE AND FENIX CARVEOUT REQUIRE PRACTICAL, INDEPENDENT ENFORCEMENT PROTECTION

22. Paragraph 37 is not limited to lender liability claims arising from the DIP Facility. It reaches all estate claims based on any prior conduct or relationship with any Foundation Party, including unknown claims, avoidance actions, and equitable subordination theories. The release group includes broad categories of current and future personnel and advisors. That breadth may be material consideration for new money, but it also transfers potentially valuable estate rights and must be justified as a settlement under *Martin*.

23. The Debtor's judgment deserves consideration, but the structure creates a potential conflict that calls for independent review: the lender is a Foundation affiliate; the Foundation side is both a source of funding and a beneficiary of the release; and the plan terms give the lender control over the trust's governing agreement, trustee selection, litigation targets, and future release recipients.

24. The stated Fenix carveout does not solve the problem. The proposed order preserves Debtor rights for breach of Fenix, but the interim order restricts use of DIP resources for adverse investigation and the required plan would deprive the Litigation Trust of authority to

investigate or pursue Foundation Parties. A preserved right without an estate representative who has authority, information, and lawful funding to investigate and enforce it may have little practical value.

25. At minimum, the final order should make clear that the Subchapter V trustee, Litigation Trustee, or another Court authorized disinterested estate representative may investigate and enforce Fenix using non-DIP resources, without DIP Lender consent and without violating any adverse litigation restriction. The final order should also preserve access to information necessary for that review.

## III. FINANCING APPROVAL SHOULD NOT PREJUDGE A PLAN OR LITIGATION TRUST GOVERNANCE

26. A lender may condition future advances on acceptable plan treatment. But approval of financing should not itself constitute confirmation of a plan, approval of a litigation trust agreement, selection of a trustee, approval of future releases, or adjudication of the distribution waterfall. Those matters require the notice, disclosure, evidence, and confirmation findings applicable under 11 U.S.C. §§ 1128 and 1191.

27. The required plan terms go well beyond repayment of the exit facility. They allocate control over estate litigation, foreclose investigation of one group, designate an acceptable trustee, authorize releases for persons not yet identified, and share trust recoveries with Foundation. Creditors must retain the right to object when an actual plan and trust agreement are filed.

28. The final order should therefore state expressly that approval of the DIP Facility and Exit Conversion does not approve or bind any party to the plan or trust terms incorporated in the credit agreement, and that all confirmation, claim ownership, standing, governance, release, and distribution objections are preserved.

## IV. THE ORDER SHOULD EXPRESSLY PRESERVE INDEPENDENTLY OWNED CREDITOR CLAIMS AND DEFENSES

29. Paragraph 37, read alone, releases claims of the Debtor and estate. But paragraphs 34 and 38 purport to bind all creditors and parties in interest to the Final DIP Order and Global Resolution. That combination creates avoidable uncertainty about claims or defenses that belong directly to creditors rather than the estate.

30. Claim ownership is a claim specific question. *Emoral* held that generalized successor liability claims belonged to the estate and were subject to its settlement, despite creditors' underlying personal injuries. Whether a claim is estate property depends on its nature and whether the Debtor could assert it under applicable law. *In re Emoral, Inc.*, 740 F.3d 875, 879–82 (3d Cir. 2014). Metaverse does not ask the Court to decide ownership or merits now. It asks the Court not to decide those issues implicitly through an omnibus financing and settlement order.

31. The Supreme Court has likewise confirmed, in the plan context, that the Bankruptcy Code does not authorize a nonconsensual release that effectively discharges claims against a nondebtor. *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 226–27 (2024). *Purdue* expressly framed its holding narrowly, but it underscores the need to distinguish estate claims from direct creditor claims and to avoid ambiguous language that may be asserted as a nondebtor discharge.

32. The final order should accordingly state that nothing in the order, DIP documents, Global Resolution, or Fenix assumption releases, enjoins, impairs, or adjudicates any claim, defense, setoff, recoupment right, or remedy owned solely and directly by Metaverse or another nondebtor, while reserving all parties' positions on ownership and merits. It should likewise

provide that no finding concerning a Contributed Claim has preclusive effect against a target of that claim.

## V. TARGETED RELIEF SHOULD PRESERVE CREDITOR RIGHTS AND AVAILABLE FINANCING

33. Metaverse requests that the Court approve the financing relief that is presently necessary while deferring paragraphs 37 and 38 and any incorporated term that grants final releases, approves the Global Resolution, or binds creditors to a future plan, unless the complete settlement package is disclosed and supported. The lender has expressly conditioned further funding on release approval. D.I. 170-1, finding I. Metaverse therefore requests a conforming, agreed financing order if attainable, or a prompt further hearing and such consensual interim funding as is available; it does not ask the Court to compel uncommitted lending.

34. Alternatively, Metaverse requests entry of the Proposed Final Order with the protective language in Exhibit A, together with such additional reporting, consultation, and information access safeguards as the Court finds appropriate.

35. Metaverse further requests leave to supplement this Objection after disclosure of the Manche Settlement, the Contributed Claims schedule, any additional release recipients, and the Debtor's supporting valuation and investigation materials.

36. Nothing in this Objection challenges the validity or amount of interim funding already authorized, waives any right concerning Metaverse's proof of claim, the pending JAMS arbitration, the related Southern District of New York action, or any claim, defense, setoff, recoupment right, or remedy, all of which are expressly reserved subject to applicable bankruptcy law and orders.

## CONCLUSION

For these reasons, Metaverse respectfully requests that the Court sustain this limited Objection, grant the targeted relief described above, and award such other and further relief as the Court deems just and proper.

Dated: September 24, 2026

**WHITEFORD, TAYLOR & PRESTON LLC**

*/s/ Marc J. Phillips*

Marc J. Phillips (No. 4445)
600 North King Street, Suite 300
Wilmington, Delaware 19801
Telephone: (302) 295-5675
Email: mphillips@whitefordlaw.com

-and-

Federico Salinas, Esq. (*pro hac vice* admission pending)
**NOUS EVOLUTION LEGAL DAO**
418 Broadway #5041
Albany, New York 12207
Telephone: (917) 920-2305
Email: fed@nousevolution.com

*Counsel to Metaverse Technology Company – FZE*