# EXHIBIT C

**(Change Page Only Redline Proposed Second Amended Credit Agreement)**

**SECOND AMENDED AND RESTATED DEBTOR-IN-POSSESSION LOAN AND SECURITY AGREEMENT**

**by and between**

**MVMT LABS, INC.**

**as Borrower,**

**and**

**MNF DIP SPV LTD**
**as DIP Lender**

**Dated as of ~~September~~October [_], 2026**

**SECOND AMENDED AND RESTATED SENIOR SECURED, SUPERPRIORITY DEBTOR-IN-POSSESSION LOAN AND SECURITY AGREEMENT**

**THIS SECOND AMENDED AND RESTATED SENIOR SECURED, SUPERPRIORITY DEBTOR-IN-POSSESSION LOAN AND SECURITY AGREEMENT** (as it subsequently may be amended in accordance with its terms, this "Agreement"), is entered into as of ~~September~~October [_], 2026 (the "Closing Date"), by and among **MVMT LABS, INC.**, a Delaware corporation ("MVMT Labs" and the "Borrower"), and **MNF DIP SPV LTD.**, a Cayman Islands exempted company, as lender ("DIP Lender").

**WHEREAS**, on July 15, 2026 (the "Petition Date"), the Borrower filed a voluntary petition for relief under subchapter V of chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (together with any other court of competent jurisdiction exercising authority over the Chapter 11 Case, the "Bankruptcy Court"), which is being administered under Case No. 26-11113 (TMH) (the "Chapter 11 Case");

**WHEREAS**, the Borrower remains in possession of its business and manages its properties as debtor and debtor in possession pursuant to sections 1182 and 1184 of the Bankruptcy Code;

**WHEREAS**, the Borrower has requested that the DIP Lender provide financing to the Borrower consisting of a senior secured superpriority multiple draw term loan in a total aggregate principal amount of up to $5,700,000 (the "DIP Facility") pursuant to sections 363 and 364 of the Bankruptcy Code, subject to compliance with the terms, conditions and covenants described in this Agreement and the DIP Order;

**WHEREAS**, the DIP Lender and the Borrower have agreed that the DIP Lender will extend the DIP Facility to the Borrower on the terms and conditions set forth herein and in the other DIP Loan Documents (as defined in this Agreement), in accordance with sections 363 and 364 of the Bankruptcy Code, and that all of the obligations with respect to the DIP Facility will be (a) secured by first-priority senior secured Liens on the Collateral granted by the Borrower, subject only to the Carve-Out and the Permitted Prior Liens, as provided herein, in the DIP Order and in the other DIP Loan Documents, and (b) given the status of Superpriority Claims against the Borrower's estate, as provided in the DIP Order;

**WHEREAS,** on July 20, 2026, the Bankruptcy Court entered the *Interim Order (I) Authorizing the Debtor to (A) Obtain Postpetition Financing and (B) Grant Liens, Including Senior Secured Liens, and Superpriority Administrative Expense Claims; and (II) Modifying the Automatic Stay* [Docket No. 33] (the "First Interim Order"), which authorized the Debtor's entry into the DIP Loan Documents ~~herein~~, and to borrow $750,000 in accordance with the terms of the First Interim Order (the "First Interim DIP Loan");

**WHEREAS**, on July 24, 2026 (the "Initial Funding Date"), the First Interim DIP Loan was advanced to the Borrower pursuant to the terms of the First Interim Order and the DIP Loan Documents;

**WHEREAS,** on September ~~[ ]~~18, 2026, the Bankruptcy Court entered the *Second Interim Order (I) Authorizing the Debtor to (A) Obtain Postpetition Financing and (B) Grant Liens, Including Senior Secured Liens, and Superpriority Administrative Expense Claims; and (II) Modifying the Automatic Stay* [Docket No. ~~[ ]~~171] (the "Second Interim Order"), which further authorized the Borrower to perform under ~~this Agreement~~the DIP Loan Documents on an interim basis and to borrow $3,450,000 in accordance with the terms of the Second Interim Order (the "Second Interim DIP Loan").

**WHEREAS**, on September ~~[ ]~~23, 2026 (the "Second Funding Date"), the Second Interim DIP Loan was advanced to the Borrower pursuant to the terms of the Second Interim Order and the DIP Loan Documents.

**NOW, THEREFORE**, in consideration of the premises and of the mutual covenants and agreements contained herein, the parties hereto hereby agree as follows:

**1. DEFINITIONS AND CONSTRUCTION.**

1.1 **Definitions**. As used in this Agreement, the following terms shall have the meanings set forth below:

"Account Debtor" means a person obligated on an account, chattel paper or general intangible, as that term is defined in the UCC. This term does not include persons obligated to pay a negotiable instrument, even if the instrument constitutes part of chattel paper.

"Additional Documents" has the meaning set forth in Section 5.10.

"Affiliate" means, as to any Person, any other Person (a) that, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such Person or (b) which, directly or indirectly through one or more intermediaries, is the beneficial or record owner (as defined in Rule 13d-3 of the Securities Exchange Act of 1934, as amended, as the same is in effect on the Petition Date) of ten percent (10%) or more of any class of the outstanding voting equity interests, securities or other equity or ownership interests of such Person. For purposes of this definition, the term "control" (and the correlative terms "controlled by" and "under common control with") shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies, whether through ownership of securities or other interests, by contract or otherwise.

"Agreement" has the meaning set forth in the preamble hereof.

"Approved Budget" means, in each case, once certified by an Authorized Person and approved by the DIP Lender: (a) the Initial Budget; or, as applicable, (b) an amended or otherwise modified budget updated every four weeks on a rolling basis, with reconciliation on a line-item basis of actual results to projections, and with narrative explanation prepared by the Debtor of any material variances exceeding the Permitted Variance.

"Authorized Person" means any of the individuals identified on Schedule A-1, which may be updated from time to time by written notice from the Borrower to the DIP Lender.

"Avoidance Actions" means any and all avoidance, recovery, subordination, derivative or other claims, actions or remedies that may be brought by or on behalf of the Borrower or its estate or other authorized parties in interest under the Bankruptcy Code or other applicable law, including actions or remedies under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code or under similar, related or comparable state or federal statutes or common law, including fraudulent transfer laws, or under other applicable law.

"Bankruptcy Code" has the meaning set forth in the recitals to this Agreement.

"Bankruptcy Court" has the meaning set forth in the recitals to this Agreement.

"Borrowing Notice" has the meaning set forth in Section 2.2.

is assumed; (e) all payment obligations to pay the deferred purchase price of assets (other than trade payables incurred in the ordinary course of business and repayable in accordance with customary trade practices); (f) all indebtedness created or arising under any conditional sale or other title retention agreement, or incurred as financing, in either case with respect to property acquired by such Person; (g) the principal balance outstanding under any synthetic lease, off-balance sheet loan or similar off-balance sheet financing products; or (h) any obligation guaranteeing or intended to guarantee (whether directly or indirectly guaranteed, endorsed, co-made, discounted, or sold with recourse) any obligation of any other Person that constitutes Indebtedness under any of clauses (a) through (h) above. For purposes of this definition, (i) the amount of any Indebtedness represented by a guaranty or other similar instrument shall be the lesser of the principal amount of the obligations guaranteed and still outstanding and the maximum amount for which the guaranteeing Person may be liable pursuant to the terms of the instrument embodying such Indebtedness, and (ii) the amount of any Indebtedness described in clause (d) above shall be the lower of the amount of the obligation and the fair market value of the assets of such Person securing such obligation.

"Information" has the meaning set forth in Section 18.

"Initial Budget" means the initial expense budget for the first four (4) months of the Chapter 11 Case prepared by the Borrower, a copy of which is annexed hereto as Exhibit A.

"Initial Funding Date" has the meaning set forth in the recitals to this Agreement.

"Interest Payment Date" means each March 31st, June 30th, September 30th and December 31st (or if such day is not a Business Day, the immediately preceding Business Day).

"Interim Orders" means, collectively, the First Interim Order and the Second Interim Order.

"Interim DIP Loans" means, collectively, the First Interim DIP Loan and the Second Interim DIP Loan.

"Lien" means any pledge, hypothecation, assignment (which is intended as security), charge, deposit arrangement (which is intended as security), encumbrance, easement, lien (statutory or other), mortgage, security interest, or other security arrangement and any other preference, priority, or preferential arrangement of any kind or nature whatsoever (which is intended as security), including any conditional sale contract or other title retention agreement, the interest of a lessor under a Capital Lease, and any synthetic or other financing lease having substantially the same economic effect as any of the foregoing.

"Litigation Trust" means a post-confirmation litigation trust to be established by the Subchapter V Plan for purposes of prosecuting claims against third parties held by, or assigned to, the Borrower.

"Loan Record" means the loan record maintained by the DIP Lender or its designee, in which shall be recorded the date and amount of each DIP Loan made by the DIP Lender and the amount of each payment in respect thereof.

"Manche" has the meaning set forth in the recitals to this Agreement.

"Manche Settlement" means the settlement, among the Debtor, Rushikesh Manche and certain Foundation Parties, as set forth in the Mediated Settlement Agreement dated as of September ~~__~~28, 2026, to the extent such agreement is approved by the Bankruptcy Court.

"Material Adverse Change" means, any event, condition, circumstance or contingency that, individually or in the aggregate, (a) has had, or would reasonably be expected to have, a material adverse effect on the business, operations, properties, assets, performance or financial condition of the Borrower, taken as a whole, other than any change, event or occurrence, arising individually or in the aggregate, from events leading up to and that could reasonably be expected to result from the filing, commencement or continuation of the Chapter 11 Case or the announcement of the filing or commencement of the Chapter 11 Case, the effects thereof and any action required to be taken under the DIP Loan Documents or the DIP Order, and the Chapter 11 Case itself; (b) has resulted in, or would reasonably be expected to result in, a material adverse effect on the validity or enforceability of, or the rights, remedies or benefits available to the DIP Lender under this Agreement or the DIP Order (other than as permitted hereunder or as a result of an action or failure to take action by the DIP Lender) or of the DIP Lender's ability to enforce the Obligations or realize upon the Collateral; (c) has had or would reasonably be expected to have, a material adverse effect on the ability of the Borrower, taken as a whole, to perform its payment obligations under this Agreement or the DIP Order; or (d) a material impairment of the enforceability or priority of the DIP Lender's Liens with respect to the Collateral, taken as a whole, or the priority of such Liens.

"Material Contract" means each contract or agreement as to which the breach, nonperformance, cancellation, termination, loss, expiration or failure to renew by any party thereto would reasonably be expected to result in a Material Adverse Change.

"Maturity Date" means the earliest of:

(a) the date that is ~~80~~100 days after the Petition Date, unless the Final Order has been entered by the Bankruptcy Court on or prior to such date;

(b) the effective date of any plan of reorganization in the Chapter 11 Case, other than the Subchapter V Plan;

(c) the closing of any sale or other disposition of substantially all of the assets of the Borrower;

(d) the closing of any financing transaction that pays the Obligations in full;

(e) the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;

(f) the dismissal of the Chapter 11 Case by the Bankruptcy Court;

(g) the acceleration of the outstanding Obligations and termination of the Commitment, including as a result of the occurrence and continuation of an Event of Default; and

(h) the date that is 75 days after the entry of the Final Order.

"Maturity Event" means each of the events listed in the definition of "Maturity Date".

"Net Cash Proceeds" means with respect to any sale or disposition of the Collateral, in whole or in part, by any Person, the amount of cash proceeds received (directly or indirectly) from time to time (whether as initial consideration or through the payment of deferred consideration) by or on behalf of such Person, in connection therewith, after deducting therefrom only (a) fees, commissions, and expenses related thereto and required to be paid in connection with such sale or disposition and (b) taxes paid or payable to any taxing authorities in connection with such sale or disposition, in each case, only to the

nor shall any such notification have the effect of amending or modifying this Agreement or any of the Schedules or reports hereto.

5.10 **Further Assurances**. Upon reasonable written notice from the DIP Lender, the Borrower shall promptly execute and deliver to the DIP Lender any and all Security Documents, financing statements, and all other documents (collectively, the "Additional Documents") that the DIP Lender may request in writing, in each case in form and substance satisfactory to the DIP Lender, to create, perfect and continue the DIP Lender's Liens in all the Collateral (whether now owned or hereafter arising or acquired, tangible or intangible, real or personal).

5.11 **Approved Budget**. The Borrower shall comply with the Approved Budget (as updated and supplemented in accordance with this Agreement), subject to the Permitted Variance.

5.12 **[Reserved].**

5.13 **[Reserved].**

5.14 **Deposit Account Control Agreements**. The Borrower shall, and shall use commercially reasonable efforts to cause each relevant financial institution or other person at which each Deposit Account is maintained to, enter into a Deposit Account Control Agreement with respect to such Deposit Account, in each case, promptly and not later than thirty (30) days following the written request of the DIP Lender at any time after the Closing Date.

5.15 **[Reserved].**

5.16 **Material Contracts; Sale Offers**. The Borrower shall deliver to the DIP Lender (a) promptly (but in any event within five (5) Business Days) of the Borrower becoming aware of any default (other than the filing of the Chapter 11 Case) or other material breach under any Material Contract to which the Borrower is a party, notice of such defaults or breaches, and (b) prompt notification of any written offer by a third party to purchase all or substantially all of the assets of the Borrower, or to purchase all or substantially all of the equity interests of the Borrower, or otherwise explore or enter into a material transaction in respect of the Borrower or its assets outside the Ordinary Course.

5.17 **DIP Milestones**. The Borrower shall comply with the following milestones:

(a) No later than September 21, 2026, the Bankruptcy Court shall have entered the Second Interim Order in form and substance acceptable to the DIP Lender in its sole discretion;

(b) No later than October ~~2~~20, 2026, the Bankruptcy Court shall have entered the Final Order in form and substance acceptable to the DIP Lender in its sole discretion;

(c) No later than ~~90~~120 days following the Petition Date, the Borrower shall have filed the Subchapter V Plan;

(d) No later than ~~105~~135 days following the Petition Date, the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the DIP Lender; and

(e) No later than 70 days following entry of the Final Order, the Plan Effective Date shall have occurred.