**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>MVMT Labs, Inc.,<br><br>Debtor.[1] | Chapter 11 (Subchapter V)<br><br>Case No. 26-11113 (TMH)<br><br>**Re: Docket No. 19, 33, 170, 171, 180, & 181** |

**DEBTOR'S REPLY IN SUPPORT OF MOTION FOR ENTRY OF (I) INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTOR TO (1) OBTAIN POST-PETITION FINANCING AND (2) GRANT LIENS, INCLUDING SENIOR SECURED LIENS, AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; AND (B) MODIFYING THE AUTOMATIC STAY; (II) AN ORDER AUTHORIZING THE ASSUMPTION OF THE FENIX AGREEMENT WITH MOVEMENT NETWORK FOUNDATION PURSUANT TO SECTION 365 AND 363; (III) AN ORDER APPROVING THE SETTLEMENT BETWEEN THE DEBTOR AND THE FOUNDATION PARTIES PURSUANT TO BANKRUPTCY RULE 9019; (IV) AN ORDER SCHEDULING A FINAL HEARING WITH RESPECT TO THE FOREGOING; AND (V) AN ORDER GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "Debtor"), submits this reply (the "Reply") (i) in support of the *Debtor's Motion for Entry of (I) Interim and Final Orders (A) Authorizing the Debtor to (1) Obtain Post-Petition Financing and (2) Grant Liens, Including Senior Secured Liens, and Superpriority Administrative Expense Claims; and (B) Modifying the Automatic Stay; (II) an Order Authorizing the Assumption of the Fenix Agreement with Movement Network Foundation Pursuant to Sections 365 and 363; (III) an Order Approving the Settlement Between the Debtor and the Foundation Parties Pursuant to Bankruptcy Rule 9019; (IV) an Order Scheduling a Final Hearing with Respect to the Foregoing; and (V) an Order Granting Related Relief* [Docket No. 19] (the "DIP Motion"),[2] and entry of the revised proposed *Final Order*

[1] The last four digits of the Debtor's federal tax identification number are 5217. The Debtor's service address is c/o Legalinc Corporate Services Inc., 131 Continental Drive, Suite 305, Newark, New Castle County, DE 19713.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the DIP Motion, First Day Declaration (defined below), or the Manche 9019 Motion (defined below), as applicable.

*(I) Authorizing the Debtor to (A) Obtain Postpetition Financing and (B) Grant Liens, Including Senior Secured Liens, and Superpriority Administrative Expense Claims; (II) Modifying the Automatic Stay; (III) Approving the Settlement Between the Debtor and the Foundation Parties Pursuant to Bankruptcy Rule 9019; (IV) Authorizing the Assumption of the Fenix Agreement Pursuant to Section 365 and 363 of the Bankruptcy Code; and (V) Granting Related Relief* [Docket No. 207] (the "Final DIP Order") and (ii) in response to the *Limited Objection and Reservation of Rights of Metaverse Technology Company – FZE to Entry of the Proposed Final DIP Order* [Docket No. 180] (the "Metaverse Objection") filed by Metaverse Technology Company – FZE ("Metaverse") and the *Joinder of Mithai Trust and Portico Consulting LLC d/b/a Digital Incubation Group to the Limited Objection and Reservation of Rights of Metaverse Technology Company – FZE to Entry of the Proposed Final DIP Order* [Docket No. 181] (the "Joinder" and together with the Metaverse Objection, the "Objections") filed by Mithai Trust ("Mithai") and Portico Consulting LLC d/b/a Digital Incubation Group ("Portico," and together with Mithai, the "Joining Parties," and, collectively with Metaverse, the "Objecting Parties"). In support of the Reply, the Debtor relies on the *Declaration of Michael Robinson in Support of MVMT Labs, Inc.'s Chapter 11 Petition and First Day Motions* [Docket No. 21] and the *Supplemental Declaration of Michael Robinson, Chief Restructuring Officer of the Debtor, in Support of Chapter 11 Petition and First Day Motions* [Docket No. 204] (together, the "First Day Declaration"); all of which are incorporated by reference herein, and respectfully represents as follows:

**REPLY**

1. The following key facts are ***undisputed***:

- The Debtor is in need of liquidity. Without the liquidity provided by the DIP Facility, the Debtor would be unable to continue to satisfy its obligations, administer the Chapter 11 Case, or confirm a Subchapter V Plan that will create

a litigation trust to pursue recoveries for the Debtor's creditors and stakeholders;

- The Debtor and its advisors ran a rigorous process during which they sought to obtain DIP financing from many sophisticated lenders;
- At the end of that process, no viable alternative to the DIP Facility was presented;
- The DIP Facility was subject to extensive arm's length negotiations during which the DIP Lender and Foundation Parties made a number of concessions involving certain terms of the proposed DIP Facility, which include, among other things, the contribution of the Contributed Claims by the Foundation Parties and DIP Cash Collateral to the Litigation Trust in connection with confirmation of a Subchapter V Plan; and
- The proposed DIP Facility is the only source of new money post-petition financing available to the Debtor.

2. The Objecting Parties do not take issue with those facts. Instead, the Objecting Parties take issue with specific terms of the DIP Facility, primarily (i) the Global Resolution, (ii) the DIP Releases, and (iii) certain provisions that relate to the proposed Litigation Trust to be formed through confirmation of a Subchapter V Plan. As discussed below, however, the Debtor properly exercised its business judgment in agreeing to the overall DIP Facility, especially given the Debtor's need for liquidity without delay and the lack of a viable alternative source of financing. Moreover, each of the objected-to terms is integral to the overall deal reflected in the DIP Facility, and each is consistent with DIP provisions that have previously been approved by courts in this District. Accordingly, for these reasons and those set forth below, the Debtor respectfully requests that the Court approve the DIP Motion on a final basis, overrule the Objections, and enter the Final Order.

3. The Debtor has been in discussions with counsel to Metaverse in an attempt to resolve or narrow the open issues and, as described in more detail in this Reply, believes the Objections have largely been addressed through revisions to the proposed Final DIP Order. .

## I. **APPROVAL OF THE GLOBAL RESOLUTION IS APPROPRIATE AND SUPPORTED BY THE FACTUAL RECORD**

### A. **All Relevant Settlement Terms Have Been Disclosed**.

4. With respect to approval of the Global Resolution, Metaverse first contends that final approval of the Global Resolution pursuant to Bankruptcy Rule 9019 cannot proceed because material components of the Global Resolution described in the DIP Motion and the settlement with the Manche Parties (defined below)—which matter is not presently at issue in connection with the DIP Motion—remain undisclosed. Obj. ¶¶ 3–4, 16–21. With respect to the settlement with the Manche Parties, that concern, which was raised before the Manche 9019 Motion (defined below) was on file, is now substantially addressed.

5. On September 28, 2026, the Debtor filed the *Debtor's Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 for Approval of Settlement Agreement Among Debtors, the Manche Parties, and the Foundation Parties* [Docket No. 193] (the "Manche 9019 Motion"), seeking approval of a settlement among the Debtor, the Foundation Parties, and the Manche Parties pursuant to Bankruptcy Rule 9019, and all parties in interest have received notice and an opportunity to object to the Manche 9019 Motion and the releases contained in the Settlement Agreement on a developed record.

6. None of the Objecting Parties objected to the Manche 9019 Motion. That failure to object permits this Court to infer that the disclosures in the Manche 9019 sufficiently addressed the Objecting Parties' concerns.

7. Accordingly, the terms of the Settlement Agreement, including the releases, have been sufficiently disclosed.

**B. The Identity of the Contributed Claims, the Terms of Contribution, and Releases of Additional Parties Are Confirmation Issues.**

8. Metaverse misapprehends how and when the Foundation Parties will agree to contribute the Contributed Claims. The Court is not approving anything with respect to the Contributed Claims in relation to the Final DIP Order. Rather, the Foundation Parties are agreeing to make that contribution only if the Debtor confirms a Subchapter V Plan (as it is defined in the *Second Amended and Restated Debtor-in-Possession Loan and Security Agreement* (the "Credit Agreement") attached to the Final DIP Order) that is acceptable to the DIP Lender. *See*, Credit Agreement §1.1.

9. Likewise, Metaverse's issue that the Foundation Parties are improperly sharing in estate recoveries misapprehends what approvals are being sought with respect to the Final DIP Order. Metaverse Obj. ¶ 27. The sharing of litigation recoveries is not being approved now. Instead, it is a feature of what must be included in an acceptable Subchapter V Plan in order to obtain the Exit Financing from the DIP Lender and avoid a default under the DIP Facility. *See*, Credit Agreement §§ 1.1, 8.1.

10. If the Objecting Parties take issue with the scope of the Contributed Claims or the terms on which the Contributed Claims are being contributed, their rights to object are preserved in connection with confirmation of the Subchapter V Plan.

11. Likewise, to the extent the Objecting Parties take issue with the release of additional parties other than the Foundation Parties, those releases are also not being approved at this time.[3]

12. The Credit Agreement definition of Subchapter V Plan makes it clear that those releases are releases that must be included in a Subchapter V Plan acceptable to the DIP Lender

[3] Those additional releasees are (i) Cooper Scanlon, (ii) Joseph Golding-Ochsner, (iii) Ruby Sekhon, (iv) Move Ind. Inc., and all of its officers, directors and employees, including Torab Arya and (v) additional parties as the Debtor and the DIP Lender may agree. *See* DIP Motion, ¶ 45; Credit Agreement, § 1.1.

and that those releases are contingent on the Foundation Parties contributing the Contributed Claims. *See* Credit Agreement §1.1.

13. Again, the Objecting Parties will have a full opportunity to object to the additional releases in connection with confirmation of the Subchapter V Plan.

**C. The *Martin* Factors are Satisfied on the Existing Record and Approval of the Global Resolution is Appropriate.**

14. Approval of the Global Resolution, including the DIP Releases, is appropriate and justified based on the record before the Court. As the DIP Motion sets forth, the Fenix Agreement already granted the Foundation Parties broad releases. DIP Motion ¶ 92. What the Debtor is releasing now in the DIP Releases are: (i) the limited claims carved out of the Fenix Agreement (i.e., fraud and willful misconduct), and (ii) releases for any prior breaches of the Fenix Agreement.

15. As noted in the First Day Declaration, the Debtor conducted an exhaustive investigation into the facts and circumstances surrounding the market-making irregularities associated with the launch of the $MOVE token. Notably, the Foundation Parties were not implicated, and the Fenix Agreement was the culmination of that investigation and the Debtor and Foundation Parties' efforts to preserve the network ecosystem for the benefit of stakeholders in the ecosystem. *See* First Day Declaration, ¶¶ 26-31. While there was a carve-out in the Fenix Agreement for claims of fraud and willful misconduct, that carve-out was in a mutual release paragraph and the carve-out went both ways. Moreover, the Debtor "is not aware of viable claims that it may have against the Foundation Parties, including avoidance actions . . . ." DIP Motion, ¶ 89.

16. The DIP Releases are the negotiated consideration for new financing and were a condition to the DIP Lender's willingness to enter into the Credit Agreement and provide the DIP Facility and must be evaluated as a settlement under *Martin*. *See* First Day Declaration, ¶ 50,

Credit Agreement, §§ 3.1 and 3.2. For the reasons set forth above and in the DIP Motion, the *Martin* factors are satisfied.

17. Metaverse's other concern with respect to the DIP Releases is that the carveout preserving the Debtor's rights for a future breach of the Fenix Agreement should be enforceable in practice by any estate representative with appropriate authority. Metaverse Obj. ¶¶ 24–25.

18. The Debtor agrees that the preservation of the Debtor's rights if there were to be a future breach of the Fenix Agreement is important, which is why there is a specific carveout in paragraph 37 of the Final DIP Order. Nothing in the DIP Motion or the Final DIP Order seeks to eliminate those rights or limit the Litigation Trusts access to information regarding same.

19. If there were to be a breach, nothing in the Final DIP Order prevents, the Subchapter V Trustee, the Litigation Trustee, or another duly authorized estate representative from enforcing the Debtor's rights with respect to such a breach. Further, as reflected in the DIP Motion, the Debtor believes that the Foundation Parties have fully performed their obligations under the Fenix Agreement and that no claims exist for breach of the Fenix Agreement. DIP Motion, ¶ 8.

20. The request for advance approval of financing for such enforcement activities is not appropriate. The restriction on use of DIP Proceeds to investigate the DIP Lender in the Final DIP Order is a customary provision included in DIP financing orders in this District, was negotiated at arms' length, and was a requirement of the DIP Lender's willingness to provide the DIP Facility. That provision reflects the practical reality that financing providers are simply unwilling to provide financing that will be used to investigate and sue the financing provider.

21. Thus, the Metaverse Objection with respect to the Global Resolution should be denied and the Global Resolution should be approved. Further, as noted repeatedly above, there

is nothing in the Final DIP Order or the Credit Agreement which prevents the Objecting Parties from raising issues at confirmation with respect to the Subchapter V Plan.

## II. INDEPENDENTLY OWNED CREDITOR CLAIMS ARE PRESERVED

22. Finally, the Objecting Parties ask the Court to confirm that the Final DIP Order does not release or adjudicate claims, defenses, or remedies owned solely and directly by a creditor against a non-debtor. Metaverse Obj. ¶¶ 29–32. This is not a point of dispute. The DIP Releases in the proposed Final DIP Order, and the additional releases to be contained in the Subchapter V Plan, release claims of the Debtor and its estate; they are not intended to, and do not, release direct claims belonging to creditors. Questions of claim ownership, allowance, and treatment will be addressed through the claims reconciliation process under the Plan, on notice and with an opportunity to be heard, and nothing in the Final DIP Order is intended to prejudge those matters or restrict the claims of third parties against the released parties. The Debtor has revised the Final Order to include language further clarifying this point.

## III. THE FINAL DIP ORDER HAS BEEN REVISED TO ADDRESS THE POINTS IN EXHIBIT A TO THE METAVERSE OBJECTION

23. Exhibit A to the Metaverse Objection sets out five (5) points of clarification that Metaverse requests to resolve the Metaverse Objection.

24. Paragraph A seeks confirmation that Metaverse's direct claims against non-debtors and Metaverse's defenses to claims are preserved. While the Debtor believes nothing in the Final DIP Order alters any such rights, the additional language in paragraph 37 makes it clear that the DIP Releases do not affect the rights of Metaverse or other third party against a non-debtor.

25. Paragraph B requests language that there be no preclusive effect in the DIP Order with respect to the Contributed Claims to be contributed pursuant to the Subchapter V Plan.

Additional language has been added in paragraph 35 of the Final DIP Order that expressly provides nothing in the Final DIP Order has any preclusive effect with respect to the Subchapter V Plan.

26. The Debtor does not believe the request in Paragraph C with respect to the carve-out of the release for future breaches of the Fenix Agreement requires any further language other than what is set out in revised paragraph 37 of the Final DIP Order.

27. The request in Paragraph D that the Final DIP Order does not constitute confirmation or approval of the terms of the Subchapter V Plan is addressed in the revisions to paragraph 35 of the Final DIP Order.

28. The request to defer the DIP Releases in Paragraph E is not appropriate is not acceptable to the Debtor or the DIP Lender. Further, as set forth above, the DIP Releases should be approved based on the record in this Chapter 11 Case.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein and in the DIP Motion, the Debtor submits that the Court should overrule the Objections and enter the Final DIP Order.

Dated: October 15, 2026
Wilmington, Delaware

Respectfully submitted,

*/s/ Gregory J. Flasser*
Jeremy W. Ryan (No. 4057)
Gregory J. Flasser (No. 6154)
Sameen Rizvi (No. 6902)
Wenting Wu (No. 7679)
**POTTER ANDERSON & CORROON LLP**
1313 North Market Street, Sixth Floor
P.O. Box 951
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email: jryan@potteranderson.com
gflasser@potteranderson.com
srizvi@potteranderson.com
wwu@potteranderson.com

*Counsel to the Debtor and Debtor in Possession*