**Exhibit 1**

**(Settlement Agreement)**

# MEDIATED SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") is made and entered into as of the latest date reflected in the signature page(s) of this Agreement (the "Execution Date") by and between MVMT Labs, Inc. (the "Debtor"), Rushikesh Manche ("Manche"), Bedford Crypto L.P. and Bedford Crypto G.P. (together, "Bedford"), Midas Foundation ("Midas" and with Manche and Bedford, the "Manche Parties"), MNF DIP SPV Ltd. (the "DIP Lender"), Movement Limited, and Movement Network Foundation ("Foundation" and, together with the DIP Lender and Movement Limited, the "Foundation Parties" and the Foundation Parties collectively with the Debtor and the Manche Parties, the "Parties"). The Parties acknowledge that this Agreement is subject to Federal Rule of Evidence 408 and all similar rules.

## RECITALS

**WHEREAS**, on July 15, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), entitled *In re MVMT Labs, Inc.*, Case No. 26-11114-TMH (the "Chapter 11 Case").

**WHEREAS**, Manche has objected to certain relief sought by the Debtor in the Chapter 11 Case and has indicated that he may also object to further relief to be sought by the Debtor, including any potential chapter 11 plan of reorganization or liquidation (a "Chapter 11 Plan") that the Debtor might propose.

**WHEREAS**, the Debtor alleges that it may have certain claims and causes of action against the Manche Parties related to the formation and operation of the Debtor and the Foundation Parties, the launch of the $MOVE token, and activities subsequent to such launch (the "Debtor Claims").

**WHEREAS**, the Foundation Parties allege that they may have certain claims and causes of action against the Manche Parties related to the formation and operation of the Debtor and the Foundation Parties, the launch of the $MOVE token, and activities subsequent to such launch (the "Foundation Party Claims").

**WHEREAS**, the Manche Parties allege that they may have certain claims and causes of action against the Debtor and the Foundation Parties (the "Manche Party Claims").

**WHEREAS**, each Party denies allegations that there are valid claims and causes of action against such Party.

**WHEREAS**, the Debtor, the DIP Lender and Manche, along with their counsel, participated in mediation on September 8, 2026, before the Hon. Christopher S. Sontchi (Ret.).

**WHEREAS**, to avoid the risk, expense, and delay associated with litigation and to mutually settle the Debtor Claims, the Foundation Party Claims and the Manche Party Claims, the Parties have agreed as follows: (i) Manche shall pay to the Debtor the sum of $2,875,000 U.S. Dollars (the "Settlement Payment Amount"), (ii) the Debtor and the Foundation Parties shall fully

and finally release the Manche Parties from the Debtor Claims and the Foundation Party Claims, (iii) the Manche Parties shall fully and finally release the Debtor and the Foundation Parties from the Manche Party Claims, and (iv) the Manche Parties shall reasonably cooperate with the Debtor and the Foundation Parties with respect to the prosecution of the Chapter 11 Case and confirmation of a Chapter 11 Plan or any litigation related to the blockchain-based network known as the Movement Network and shall further reasonably cooperate with the efforts of any trustee (a "Plan Trustee") of a trust (a "Plan Trust") established pursuant to a Chapter 11 Plan as set forth herein.

**NOW, THEREFORE**, in consideration of the respective promises, covenants, representations, releases and agreements contained herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties agree as follows:

## SETTLEMENT TERMS

1. Recitals. The recitals set forth in the "Whereas" clauses above are incorporated herein in full by this reference.

2. Withdrawal of DIP Objection. Within two (2) days following the Execution Date, Manche shall withdraw the objection filed at Docket No. 125 in the Chapter 11 Case without prejudice to refile an objection if this Agreement is not approved as set forth below.

3. Settlement Approval Motion. By September 28, 2026, the Debtor shall file a motion (the "9019 Motion") pursuant to rule 9019 of the Federal Rules of Bankruptcy Procedure seeking an order (the "9019 Order") approving this Agreement. The Parties agree that they shall not take any action inconsistent with this Agreement, and shall act at all times in furtherance of this Agreement, prior to the later of (a) the hearing on the 9019 Motion, and (b) a determination by the Bankruptcy Court to deny the 9019 Motion. The Parties further agree that the Debtor shall seek to schedule a hearing in connection with the 9019 Motion before any further hearing in connection with approval of debtor-in-possession ("DIP") financing on a final basis. The Parties further agree that, should the 9019 Motion be denied, any hearing in connection with approval, on a final basis, of DIP financing shall be continued for an appropriate amount of time to afford Manche a reasonable opportunity to object. Should the 9019 Motion be granted and the 9019 Order entered by the Bankruptcy Court, the Manche Parties agree not to object to any pleadings consistent with this Agreement, including without limitation entry of any interim or final order approving the Debtor's DIP financing or any Chapter 11 Plan proposed by the Debtor.

4. Settlement Effective Date. This Agreement, including the Settlement Payment obligations hereunder, shall become fully effective and binding upon entry of the 9019 Order (the "Effective Date").

5. Payment. Manche Parties shall pay the Settlement Payment Amount in fiat currency by wire transfer, ACH or other immediately available funds to the Debtor within five (5) business days after the Effective Date (the "Settlement Payment Amount Due Date").

6. Manche's Cooperation Obligations. Following the Effective Date and for such time as the Debtor or the Plan Trustee (and any successor entity thereto) may require, the Manche Parties shall provide Reasonable Cooperation, as defined below, with the Debtor, Plan Trustee

(and any successor entity thereto), and the Foundation Parties in the prosecution of the Chapter 11 Case or any other litigation or investigation against parties other than the Manche Parties.

"Reasonable Cooperation" shall consist of the following:

(a) [redacted] the Manche Parties' cooperation obligations shall be limited to the provision of information by counsel for the Manche Parties to the Debtor or Plan Trustee (and any successor thereto) and the Foundation Parties, subject to any applicable privilege or similar protection, provided such information does not relate to a civil litigation against the Manche Parties. [redacted]

(b) [redacted] the Manche Parties shall, voluntarily and without the need for any subpoena or other legal process, make reasonable efforts to cooperate with reasonable requests from the Debtor or Plan Trustee (and any successor thereto) relating to the prosecution of the Chapter 11 Case or any other litigation or investigation against parties other than the Manche Parties as follows:

i. Subject to the limitations of any applicable privilege or similar protection, the Manche Parties shall reasonably cooperate with any requests from the Debtor or Plan Trustee (and any successor thereto) for any documents and other materials as the Debtor or Plan Trustee (and any successor thereto) may reasonably request;

ii. The Manche Parties shall reasonably cooperate (including providing truthful oral or written testimony) to authenticate, establish as business records or establish under any other hearsay exception, documents and/or things Manche Parties provided to the Debtor or Plan Trustee (and any successor thereto) or that are in the Debtor's or Plan Trustee's (and any successor's thereto) possession, custody, or control, as may be necessary; and

iii. Should service be necessary, the Manche Parties agree to voluntarily accept service of any subpoena under Federal Rule of Civil Procedure 45 (or equivalent) served by the Debtor or Plan Trustee (and any successor thereto).

(c) [redacted]

[redacted] If the Debtor, the Foundation Parties, the Plan Trustee (and any successor thereto), or any other trust established pursuant to a confirmed Chapter 11 Plan dispute any determination by the Manche Parties to not provide Reasonable Cooperation pursuant to subsections 6(a) or 6(b)(y), the disputing Parties shall meet and confer in good faith. If the dispute is not resolved, either Party may seek a determination from a court of competent jurisdiction as set forth in Section 25 of this Agreement. To the extent necessary to avoid disclosure of privileged or protected information, the Parties may support their positions through an *in camera* submission. Pending final resolution by a court of competent jurisdiction, the Manche Parties shall not be required to provide the disputed cooperation.

7. No Interference. The Manche Parties agree that they will take no action, directly or indirectly, to assist, advise, communicate, cooperate with, or testify for any third parties or witnesses in defending against investigations, litigations, arbitrations or claims brought by the Debtor, the Foundation Parties, the Plan Trustee, or any other trust established pursuant to a confirmed Chapter 11 Plan, unless compelled by a court order or subpoena, provided that the Manche Parties shall promptly notify the Debtor and the Foundation Parties of any such court order or subpoena upon receipt thereof and prior to any compliance therewith.

8. Return of Company Devices. To the extent any of the Manche Parties possess any electronic device(s) (e.g., laptop, mobile phone, tablet, monitor, flash drive, hardware wallet, etc.) that were issued by, or owned by, the Debtor or the Foundation Parties, the Manche Parties agree (1) to return such device(s) to the Debtor in their present state as of September 10, 2026, within five (5) business days of the Effective Date, in accordance with instructions to be provided by the Debtor, along with login credentials, user names, passwords, PINs, private keys, etc., associated with any returned device(s), and (2) certify in writing under oath that the Manche Parties have not wiped, altered, or destroyed data on those devices. If the Manche Parties possess no such electronic devices, their counsel shall so certify in writing.

9. Preservation of Electronic Devices, Books and Records. At all times while the Manche Parties are bound to the cooperation obligations of Section 6 of this Agreement, the Manche Parties shall preserve all electronic devices, books and records in existence as of the Execution Date, relating to the Debtor, the Foundation Parties, the $MOVE Token and/or any proceeds from transactions in the $MOVE Token, or the Movement Network. For the avoidance of doubt, such books and records include but are not limited to, to the extent in existence as of the Execution Date: (i) documents and communications on messaging apps including but not limited to Telegram, Signal, iMessage, X (Twitter), including direct messaging on such apps; (ii) email platforms such as Gmail, Outlook and including personal, business and pseudonymous accounts; (iii) documents on cloud storage accounts; (iv) hardcopy documents, (v) bank, digital asset exchange, custodial or investment account statements; and (vi) business ledgers or trading records relating to $MOVE tokens and/or any proceeds from transactions in the $MOVE Token.

Should Bedford or Midas dissolve, wind-down, merge, be acquired, sell or transfer all or substantially all of their assets, or otherwise cease to exist while such cooperation obligations exist, (a) the Manche Parties shall take all necessary steps: (i) to ensure all electronic devices, books and records of Bedford or Midas, as the case may be, are preserved and in the possession of Mr.

Manche or his counsel; and (ii) the Manche Parties shall take all necessary steps to ensure that Mr. Manche will be duly authorized to remain the custodian of such documents and to authenticate such documents to the extent required by the Debtor, the Plan Trustee or any successor trustee, and (b) the Manche Parties, or their counsel, shall provide written notice to the Debtor, Plan Trustee (and any successor thereto) and the Foundation Parties that such materials have been preserved.

10. Releases by Debtor and Foundation Parties. Except for the rights, duties, and obligations created by this Agreement, effective upon the Debtor's receipt of the Settlement Payment Amount, the Debtor and the Foundation Parties forever release, waive, disclaim and discharge the Manche Parties from any and all claims, counterclaims, remedies, rights, obligations, promises, agreements, debts, losses, controversies, causes of action, demands, liabilities, damages, relief and/or expenses of any kind, nature or description, whether known or unknown, liquidated or unliquidated, vested or contingent, based in law or equity, that the Debtor or any Foundation Party ever had, now has, or may have as of the Effective Date against the Manche Parties, including, without limitation, claims arising out of (i) the formation, funding and operation of the Debtor or the Foundation Parties, (ii) Manche's employment with the Debtor, (iii) Manche's service as a director of the Debtor, (iv) the launch of the $MOVE token, (v) Manche's status as a stockholder of the Debtor, and (vi) any assets or property the Manche Parties may have obtained from the Debtor or Foundation Parties, provided, however, that, notwithstanding anything to the contrary in this Agreement, the foregoing releases in favor of the Manche Parties shall not extend to any other person or entity, including any employee, agent, officer, director, contractor, representative, or any other person or entity associated with or affiliated with the Manche Parties, or to any Excluded Parties (as such term may be defined in the Debtor's Chapter 11 Plan and which term the Debtor retains sole discretion to define so long as it does not include any Manche Party). For the avoidance of doubt, the foregoing releases extend to Bedford Crypto L.P. and Bedford Crypto G.P. notwithstanding the dissolution, winding up, strike-off, deregistration or termination of either such entity, whether occurring before or after the Execution Date, and shall apply to each such entity if it is restored or reinstated to the register of companies or the register of exempted limited partnerships, as applicable. [redacted]

11. Releases by the Manche Parties. Except for the rights, duties, and obligations created by this Agreement, effective upon the Effective Date, the Manche Parties forever release, waive, disclaim and discharge the Debtor and the Foundation Parties from any and all claims, claims for advancement or indemnity, counterclaims, remedies, rights, obligations, promises, agreements, debts, losses, controversies, causes of action, demands, liabilities, damages, relief and/or expenses of any kind, nature or description, whether known or unknown, liquidated or unliquidated, vested or contingent, based in law or equity, any Manche Party ever had, now has, or may have as of the Effective Date against the Debtor or any Foundation Party including, without limitation, claims arising out of (i) the formation, funding and operation of the Debtor or the Foundation Parties, (ii) Manche's employment with the Debtor, (iii) Manche's service as a director of the Debtor, (iv) the launch of the $MOVE token, (v) Manche's status as a stockholder of the Debtor, and (vi) any assets or property the Manche Parties may have obtained from the Debtor or

Foundation Parties. Manche further relinquishes any rights he may have as a creditor or stockholder of the Debtor, including any rights with respect to the governance of the Debtor and the initiation and prosecution of the Debtor's Chapter 11 Case.

12. California Civil Code § 1542. Without suggesting that California law is applicable, each Party expressly waives and relinquishes any and all provisions, rights and benefits conferred by California Civil Code § 1542 or any similar law of any state or territory of the United States or any principle of common law that is similar, comparable or equivalent to California Civil Code § 1542 with respect to rights, claims, and interests released pursuant to this Agreement. Section 1542 provides that:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

13. Dismissal of Chancery Court Action. Within five (5) days of the Effective Date, the applicable Parties shall jointly submit a stipulation and proposed order dismissing with prejudice the action pending in the Delaware Court of Chancery docketed as *Rushikesh Manche v. MVMT Labs, Inc.*, C.A. 2025-1407-CDW.

14. Press Releases. No Party shall issue any press release, social media post or other widely disseminated public commentary, concerning this Agreement or the settlement set forth herein, unless that Party receives the prior written consent of all other Parties to the language of such press release, which consent shall not be unreasonably withheld.

15. Withdrawal of Advancement Demand. The Manche Parties agree that they withdraw the demand and claim for advancement and indemnification submitted to the Debtor on or about February 18, 2026 in connection with the action in the U.S. District Court for the District of Delaware docketed as *Metaverse Technology Company FZE v. Manche and Scanlon, et al.*, Civil Action No. 1:26-cv-00108-RGA (D. Del. 2026) (the "Metaverse Litigation"), and any subsequent claims and demands for advancement and indemnification submitted by the Manche Parties to the Debtor in connection with the Metaverse Litigation. The Manche Parties further agree that they will not pursue any claim for advancement or indemnification in connection with the Metaverse Litigation and waive and relinquish any rights or entitlement to advancement and indemnification from the Debtor.

16. Attorney's Fees, Costs, and Expenses. The Parties agree that all Parties shall be solely responsible for their own litigation fees, attorneys' fees, expenses, and costs incurred in connection with the Chapter 11 Case and this Agreement, except as may be provided for otherwise in any Court-authorized DIP financing agreement between the Debtor and the DIP Lender.

17. Acknowledgement of Mutual Compromise and Valuable Consideration. The Parties hereby acknowledge and agree that the exchanges set forth in this Agreement reflect a mutual compromise and constitute an exchange of valuable consideration.

18. Representations and Warranties by the Parties. Each Party hereby represents and warrants that such Party: (i) is not relying upon any statements, understandings, representations, covenants, expectations, inducements, or agreements of any kind made by the Debtor, the Foundation Parties or the Manche Parties, or any agent or counsel thereof, other than those expressly set forth in this Agreement; (ii) has been provided the opportunity to be represented and advised by counsel in connection with this Agreement and the releases contained herein; (iii) has entered into this Agreement voluntarily and of his, her, or its own choice and not under coercion or duress; (iv) has made his, her, or its own investigation of the facts and is relying upon his, her, or its own knowledge and the advice of his, her, or its own counsel, as applicable; (v) has the full right and authority to enter into this Agreement and to grant the releases contained herein, and the person or agent executing this Agreement on his, her, or its behalf has the full right and authority to do so, and fully commit and bind such Party to this Agreement, and (vi) has not assigned or transferred any of the claims or rights released hereunder.

19. Tax Treatment. Each Party shall be solely responsible for its own tax obligations, if any, arising from or relating to this Agreement and the Settlement Payment Amount.

20. Survival. The Parties agree that the terms of this Agreement shall survive and continue beyond the Effective Date, the closing of the Chapter 11 Case, any conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, and the confirmation of any Chapter 11 Plan, and shall inure to the benefit of any Plan Trust or other trust established pursuant to a confirmed Chapter 11 Plan.

21. Entire Agreement. This Agreement sets forth the entire agreement between the Parties and fully supersedes all prior agreements and understandings, written or oral, between the Parties pertaining to the subject matter hereof. The Parties agree that no rule of construction shall apply to this Agreement construing its provisions in favor of or against either of the Parties.

22. Modifications. No modification of this Agreement shall be binding or enforceable unless in writing and signed by all Parties hereto.

23. Binding on Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors, administrators, and assigns.

24. Non-Binding on Third Parties. The Parties agree that this Agreement specifically does not apply to, bind, or restrict the United States of America, any agency branch, division, or component thereof (including the U.S. Department of Justice), or any other state, locality, government agency or regulatory authority.

25. Governing Law and Venue. This Agreement shall be interpreted and construed in accordance with the provisions of the Bankruptcy Code and, where not inconsistent, the laws of the State of Delaware, without regard to the conflict of laws principles of the State of Delaware. Each Party, other than Foundation and Movement Limited, hereby consents and agrees that the Bankruptcy Court shall have the authority and jurisdiction to hear and determine, on a final basis, any claims or disputes between the Parties (other than Foundation and Movement Limited) pertaining to this Agreement or any related documentation or to any matter arising out of or relating to this Agreement or any related documentation.

Each Party hereby waives, to the fullest extent permitted by applicable law, any right to jury trial with respect to any claim, demand, action or cause of action arising under this Agreement and the related documentation or in any way connected with or related to the dealings in respect hereof or thereof, in each case whether now existing or hereafter arising, and whether in contract, tort, equity or otherwise.

26. Multiple Counterparts. This Agreement may be executed in one or more counterparts, including by email or facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

27. Interpretation. The Parties acknowledge and agree that the terms of this Agreement have been mutually negotiated and the Parties hereby waive the rule or principle of contract construction which provides that any ambiguity in any term or provision of contract will be interpreted or resolved against the party which drafted such term or provision. To the extent of any conflict between this Agreement and the 9019 Order, the terms of the 9019 Order shall govern.

28. Notices. Any notices required hereunder or relating to this Agreement and/or the obligations owed hereunder, shall be sent as follows:

(i) If to the Debtor, by email to:

Michael Robinson, Chief Restructuring Officer
c/o Province LLC
41 West Putnam Ave, Ste. 103
Greenwich, CT 06830
Telephone: (702) 685-5555
Email: mrobinson@provincefirm.com

with copies by email to:

Jeremy W. Ryan, Esq.
Gregory J. Flasser, Esq.
Potter Anderson & Corroon LLP
jryan@potteranderson.com
gflasser@potteranderson.com

(ii) If to Foundation or Movement Limited, to:

Movement Network Foundation
71 Fort Street
P.O. Box 10035
George Town
Grand Cayman KY1-1001
Cayman Islands

and

Movement Limited
Trinity Chambers
P.O. Box 4301
Road Town, Tortola
British Virgin Islands

with copies by email to:

Daniel Laguardia
Patrick Hein
Paul Hastings LLP
daniellaguardia@paulhastings.com
patrickhein@paulhastings.com

(iii) If to the DIP Lender, to:

MNF DIP SPV Ltd
c/o CO Services Cayman Limited
P.O. Box 10008
Pavilion East, Cricket Square
Grand Cayman KY1-1001
Cayman Islands

with copies by email to:

Fredric Sosnick
Grace Lee
William S. Holste
Allen Overy Shearman Sterling US LLP
fsosnick@aoshearman.com
grace.lee@aoshearman.com
william.holste@aoshearman.com

(iv) If to Manche or Bedford, by email to:

Rushikesh Manche
[redacted]

with copies by email to:

Ladan Stewart
ladan.stewart@whitecase.com

and

Rushmi Bhaskaran
bhaskaranr@ballardspahr.com

and

Dave Rodman
dave@therodmanlawgroup.com

(v) If to Midas:

c/o MetaBase58 Cayman Limited
3rd Floor, Genesis House, Genesis
Close, PO Box 10035, George Town,
Grand Cayman KY1-1001, Cayman
Islands

with copies by email to:

Dave Rodman
dave@therodmanlawgroup.com

**THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT AND THAT COURT APPROVAL IS REQUIRED, AND SIGN THE SAME AS HIS, HER, OR ITS OWN FREE ACT**

**IN WITNESS WHEREOF**, the Parties have each caused this Agreement to be executed by themselves, or by their respective authorized agent, as of the date hereof.

**MVMT LABS, INC.**

Signed by:

By: Michael Robinson
92AC12E9DCA44AE...

Date: 9/24/2026

**RUSHIKESH MANCHE**

Signed by:
By: Rushikesh Manche
6643C73991FF4FE...
Rushikesh Manche

Date: 9/28/2026

**BEDFORD CRYPTO L.P**

Signed by:
By: Rushikesh Manche
6643C73991FF4FE...
Rushikesh Manche, Director

Date: 9/28/2026

**BEDFORD CRYPTO G.P**

Signed by:

By: Rushikesh Manche
6643C73991FF4FE...

Rushikesh Manche, Director

Date: 9/28/2026

**MIDAS FOUNDATION**

Signed by:

By: Frank Baleramos
3877D59A37CC474...

Date: 9/28/2026

**MNF DIP SPV LTD.**

By: Signed by: Wayne Flanagan
3DC9CBE2DD31484...

Date: 9/25/2026

Docusign Envelope ID: B9733945-5A87-8426-80D4-5D875C5B2945


**MOVEMENT NETWORK FOUNDATION**

Signed by:

By: Marc Piano
43A1DDF150E2431...

Date: 9/25/2026

**MOVEMENT LIMITED**

By: Signed by: Marc Piano 43A1DDF150E2431...

Date: 9/25/2026